**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

# NO. 22-20434
_____

**TIMOTHY KLICK; WILTON CHAMBERS; MALIK ALEEM;
JOHN POTTER; ANTHONY D. WOODS,**
**Plaintiffs – Appellees,**
v.
**CENIKOR FOUNDATION,**
**Defendant – Appellant**

_____

**On Appeal from the United States District Court
For the Southern District of Texas, Houston Division**

_____

**REPLY BRIEF OF APPELLANT CENIKOR FOUNDATION**
_____

David M. Gregory
Chris Dove
Andrew W. Reed
Kathleen Grossman
600 Travis Street, Suite 2800
Houston, Texas 77002
dgregory@lockelord.com
cdove@lockelord.com
andrew.reed@lockelord.com
kathleen.grossman@lockelord.com
Tel: (713) 226-1344
Fax: (713) 223-3717

**ATTORNEYS FOR DEFENDANT/
PETITIONER**

Frank Sommerville
Weycer, Kaplan, Pulaski
& Zuber, P.C.
3030 Matlock Rd., Suite 201
Arlington, Texas 76015
fsommerville@wkpz.com
Tel: (817) 795-5046
Fax: (800) 556-1869

**OF COUNSEL FOR DEFENDANT/
PETITIONER**

# Table of Contents

Page

Introduction ...................................................................................6

Argument in Reply .........................................................................7

I. Under The Proper "Employee" Test, The Proposed Collective
Is Not "Similarly Situated." ....................................................7

A. *Alamo* Teaches That "Employee" Status Requires A Quid Pro
Quo Relationship ................................................................8

1. What *Alamo* holds: FLSA "employee" status depends on
economic reality, and specifically whether the individual
worked in exchange for compensation or for some other
purpose. ....................................................................9

2. What *Alamo* does not address: FLSA collective actions,
independent contractors, or drug-rehab patients. .....................11

a. *Alamo* is not an FLSA collective-action case. ...........................11

b. *Alamo* is not about independent contractors. .........................13

c. *Alamo* is not about a licensed drug-rehabilitation
facility. .................................................................14

B. Circuit Courts Recognize That Drug-Rehab Patients Are Not
FLSA "Employees" .............................................................15

1. *Williams* found no "employee" status under similar
circumstances. ..................................................................15

2. *Acosta* held that expectation of compensation is a
threshold inquiry. ..........................................................16

3. Primary-beneficiary cases demonstrate that Cenikor's
patients are not "employees." ......................................16

a. *Vaughn* reasoned drug-rehab patients were the
primary beneficiaries of the treatment relationship. ..............18

b. *Armento* held that veterans were the primary
beneficiaries of a rehabilitation program ................................18

c. *Fochtman* held "drug offenders" were not employees. .........19

C. The proper test applies *Alamo* by asking whether the individual worked in exchange for compensation, or instead for his or her own personal benefit. ..................................................20

D. Under the correct test, the proposed members of the collective are not similarly situated. ..................................................22

    1. Cenikor did not provide benefits in exchange for vocational therapy; it provided benefits as part of the therapeutic relationship. ..................................................22

    2. Because Cenikor does not provide benefits in exchange for its patients' vocational therapy, the patients are not "similarly situated." ..................................................25

II. Cenikor's Affirmative Defenses Prove The Collective Is Not "Similarly Situated." ..................................................26

A. Cenikor properly asserted its offset defense, which applies to Plaintiffs' allegations. ..................................................27

B. Cenikor's MCA defense prevents certification. ..................................................28

C. The *Rooker-Feldman* defense prevents certification. ..................................................30

III. The District Court Erred By Ordering That Cenikor Must Violate Federal Privacy Statutes So That It Can Order Discretionary Notice To Potential Members Of The Collective. .....30

A. Plaintiffs' purported "consent" fails to meet the requirements of federal regulations. ..................................................32

B. Statutory requirements cannot be ignored as "unnecessary." ....33

C. The record evidence demonstrates Plaintiffs did not carry their burden of showing "good cause." ..................................................35

D. Good cause findings by other district courts in dissimilar circumstances are not relevant. ..................................................37

Conclusion And Prayer ..................................................39

Certificate of Service ..................................................41

Certificate of Compliance ..................................................42

# Table of Authorities

**Page(s)**

**Cases**

*Acosta v. Cathedral Buffet, Inc.,*
887 F.3d 761 (6th Cir. 2018)................................................................16

*Armento v. Asheville Buncombe Cmty. Christian Ministry, Inc.,*
856 F. App'x 445 (4th Cir. 2021) .................................... 14, 18-19, 25

*Brock v. Mr. W Fireworks, Inc.,*
814 F.2d 1042 (5th Cir. 1987)............................................................13

*Donovan v. Am. Airlines, Inc.,*
686 F.2d 267 (5th Cir. 1982).........................................................14, 17

*In re Employment Records of John Does Employed By Sharpe
Holding, Inc.,* No. 417MC238-RLW, 2017 WL 6547738 (E.D.
Mo. Dec. 20, 2017) .................................................................... 38-39

*Fannon v. Johnston,*
88 F. Supp. 2d 753 (E.D. Mich. 2000) .............................................35

*Fochtman v. Hendren Plastics, Inc.,*
47 F.4th 638 (8th Cir. 2022)..............................................................19

*Frying Home Services, Inc. v. Ohio Security Ins. Co.,*
12 F.4th 467 (5th Cir. 2021)..............................................................17

*Ginest v. Bd. Of Cty. Comm'rs of Carbon Cty.,*
306 F. Supp. 2d 1158 (D. Wyo. 2004) .............................................38

*Heredia v. Tate,*
No. 3:19-cv-00338-jdp (W.D. Wisc., Dec. 22, 2020)......................38

*Melder v. Allstate Corp.,*
404 F.3d 328 (5th Cir. 2005)..............................................................28

*In re Suboxone (Buprenorphine Hydrochloride & Nalaxone)
Antitrust Litig.,* MDL No. 2445, No. 13-MD-2445, Civ. A. No.
16-5073 (E.D. Pa. Dec. 3, 2021), 2021 WL 5758896 .......................37

*Swales v. KLLM Transp. Servs., LLC,*
985 F.3d 430 (5th Cir. 2021)....................................................*passim*

*Tony and Susan Alamo Found. v. Sec'y of Labor*,
  471 U.S. 290 (1985).....................................................................*passim*

*Vaughn v. Phoenix House Found., Inc.*,
  957 F.3d 141 (2d Cir. 2020) ..............................................................18

*Walling v. Portland Terminal Co.*,
  330 U.S. 148 (1947)......................................................................*passim*

*Williams v. Strickland*,
  87 F.3d 1064 (9th Cir. 1996) .............................................................15

## Statutes and Rules

42 C.F.R. § 2.13 .................................................................................31, 33

42 C.F.R. § 2.64 ............................................................................. 33-35, 37

42 U.S.C § 290dd............................................................................. 31-35, 37

Texas Adm. Code tit. 25, Pt I, Chapter 448......................................................23

Louisiana Adm. Code tit. 48, Pt I, Subpart 3, Chapter 56 ...............................23

**Introduction**

Plaintiffs' Response Brief ("Response") adds little to the district court's analysis and does nothing to legitimize it. Often, Plaintiffs ignore the district court's holding and the cases that refute their arguments. Sometimes, Plaintiffs parrot the court's reasoning without addressing Cenikor's arguments, preferring to battle straw men instead. Never do Plaintiffs justify the district court's conclusion that Cenikor's patients were similarly situated.

This Court should clarify the district court's confused order. The circuit courts uniformly hold that drug-rehabilitation patients, interns, and volunteers are not *Alamo* "employees" because they work for personal purposes like sobriety instead of laboring in exchange for room and board. Likewise, Cenikor's patients do not participate in vocational therapy in exchange for benefits, so they cannot be collectively adjudicated to be "employees." Instead, the Plaintiffs' own varying testimony proves they are not "similarly situated" on this threshold question.

Certification was also improper because Plaintiffs and the district court misplaced the burden of proving that Cenikor's affirmative defenses will not present individualized inquiries. Because the district court must separately evaluate each potential plaintiff, they are not "similarly situated."

Finally, even if this Court affirms the certification decision, this Court must reverse the district court's order compelling Cenikor to use or disclose patient information that is strictly protected by statute. Courts may not discard mandatory laws to facilitate an optional notice process. Plaintiffs say these privacy protections seem unnecessary, but their complaints belong in a Capitol Hill suggestion box and not a court of law.

## **Argument in Reply**

### I.  **Under The Proper "Employee" Test, The Proposed Collective Is Not "Similarly Situated."**

This Court should begin with the roadmap it drafted in *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430 (5th Cir. 2021). Plaintiffs may pursue collective action only if the potential members of the collective are "similarly situated" on the question of FLSA "employee" status, and this determination must be made at the outset of the litigation. *Id*. at 443. *Swales* poses two questions here:

(1) What legal test determines whether Cenikor's patients are "employees" under the FLSA?

(2) Are the potential members of the collective "similarly situated," such that the claims and defenses can be tried collectively?

The district court fumbled the first question, causing it to stumble when answering the second. Plaintiffs magnify those errors in their Response.

This Court should explain the correct legal test, then apply it to the "similarly situated" analysis.

### A.    *Alamo* Teaches That "Employee" Status Requires A Quid Pro Quo Relationship

The test no doubt begins with *Tony and Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 (1985). Cenikor embraces *Alamo*, then draws from the many circuit court cases that applied *Alamo* to the specific context of drug-rehabilitation patients, interns, trainees, volunteers, and others who are not within the scope of the FLSA. *See* Brief at 36-57. Cenikor's analysis culminates with a proposed test for drug-rehab patients that entwines these circuit cases around *Alamo*'s core. *Id.* at 55-56.

In contrast, Plaintiffs base their argument *solely* on a misinterpretation of *Alamo*. Response at 11-25. Plaintiffs conspicuously cite no case that supports their interpretation of *Alamo*, and ignore the circuit court cases that uniformly reject their interpretation. *Id.*

Accordingly, this Court should examine what *Alamo* does and does not hold, then consider other circuits' interpretations.

   1.    <u>**What Alamo holds**</u>*: FLSA "employee" status depends on economic reality, and specifically whether the individual worked in exchange for compensation or for some other purpose.*

*Alamo* embraces and reaffirms the Supreme Court's longstanding test for who is not an FLSA "employee": "An individual who, *'without promise or expectation of compensation,* but solely for his *personal purpose or pleasure,* worked in activities carried on by other persons either for their pleasure or profit,' is outside the sweep of the [FLSA]." *Alamo*, 471 U.S. at 295 (quoting *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947)) (emphasis added). This threshold test "is one of 'economic reality'" and "does not depend on [] isolated factors, but rather upon the circumstances of the whole activity." *Id*. at 301.

That is, to discern "economic reality," *Alamo* contrasts "expectation of compensation" with an individual's pursuit of "personal purpose or pleasure." *Id*. So does Cenikor, and so do the circuit courts.

*Alamo* applied this test to associates of a religious commune who worked for no wages at various for-profit, commercial businesses owned or operated by the Foundation. *Id*. at 292, 295. Plaintiffs overlook the primary factor emphasized in the district and Supreme Court opinions—the

associates worked *in exchange for* the room and board provided by the Foundation. Response at 14-15. The *Alamo* district court found the associates depended on the Foundation for all of their worldly needs with no end in sight, and expected to receive room and board "as a result of" their work at the commercial businesses; the Supreme Court held this fact-finding was not "clearly erroneous" because (*inter alia*) the Foundation would not let these associates eat if they did not work as well as other circumstances establishing a quid pro quo. *Alamo*, 471 U.S. at 301 & n.22; *see* Brief at 39-40.

The Supreme Court distinguished the *Alamo* associates' situation from *Walling*, which held that railroad trainees were not FLSA "employees" despite working without pay. *Id*. at 300. *Walling* teaches that the FLSA was "obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another." *Id*. (quoting *Walling*, 330 U.S. at 152). *Walling* represents another point on the FLSA "employee" continuum, and provides useful guidance for cases that lack the flagrant quid pro quo that compelled the "employee" finding in *Alamo*.

Plaintiffs cite *Alamo*'s holding that "the fact that the compensation was received primarily in the form of benefits rather than cash is in this context

immaterial." Response at 16 (citing *Alamo*, 471 U.S. at 301). The district court likewise thought this observation defeated Cenikor's argument. *See* ROA.1462. But Cenikor agrees that either money or in-kind compensation can be "compensation" under *Alamo*. *Cf. id*. The real question is whether the individual expected that his work would be performed *in exchange for* that compensation, or instead that he would be working for some other "personal purpose or pleasure." *Alamo*, 471 U.S. at 295 (quoting *Walling*, 330 U.S. 152). Nothing could be more individualized.

2.    <u>**What *Alamo* does not address**</u>: **FLSA collective actions, independent contractors, or drug-rehab patients.**

This Court can see that *Alamo* provides an important start—but *every single circuit court decision* recognizes that *Alamo* is not the end. *See infra*. *Alamo* had no reason to address many issues in this case.

a.    *Alamo is not an FLSA collective-action case.*

First, *Alamo* is not an FLSA collective-action case, and it has nothing to say about the "similarly situated" analysis. *Alamo* involved many plaintiffs only because the Secretary of Labor sued directly on behalf of three hundred of the Foundation's associates (some of whom objected). *Alamo*, 471 U.S. at

293. Nothing in *Alamo* purports to address the "similarly situated" standard. *See Swales*, 985 F.3d at 440-43.

Plaintiffs invite error by dressing *Alamo* in the clothes of an FLSA collective action. They assert that *Alamo* teaches "the employment question may be determined on a group-wide basis" and that *Alamo* did not require the district court to "parse out, worker-by-worker, who was an employee and who was not an employee." Response at 15. *Alamo* said *none* of this. *See Alamo*, 471 at 300-01.

It is true that the Supreme Court found no clear error in a fact-finding that *all* of the associates expected room and board in exchange for their labor, but those were the sad facts of that case. *Id*. The *Alamo* courts did not analyze "employee" status collectively; rather, individualized analysis resulted in the same conclusion for all associates. Plaintiffs argue "there was disagreement and contention among the affidavits," but the *Alamo* Court particularly noted the *uniformity* of the past associates' testimony—even the associates who opposed "employee" status conceded that all associates "went out and worked for" the benefits they received. *Id*. at 301 n.22. Plaintiffs claim it is "implicit" in *Alamo* that courts should look to "broader organizational policies" rather than "the specific beliefs of the individual

workers." Response at 15. But *Alamo* cites individual associate testimony about their expectations of compensation, not broad policies—and ultimately affirms a fact-finding instead of a bright-line legal rule. *Alamo*, 471 U.S. at 301 n.22.

### b.     *Alamo is not about independent contractors.*

Second, *Alamo* says nothing about independent contractors, and this case does not involve them either. Yet the district court held "it is appropriate to apply the Fifth Circuit's economic realities test" for independent contractors. ROA.1464. Plaintiffs assert this Court can apply no other test and cite only cases involving independent contractors or joint employment. Response at 12, 23-24.

*Alamo* requires a flexible test, but did not create or apply any particular test. *Alamo*, 471 U.S. at 300. As Cenikor explained (Brief at 36-38 & 52), in cases arising in a traditional employment context this Court most often applies a five-part test to determine whether a plaintiff is an FLSA "employee" or an independent contractor. *See, e.g.*, *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042 (5th Cir. 1987). However, none of the five factors sensibly apply to cases involving patients, trainees, or others who never expected

compensation.[1] Brief at 52. Indeed, when this Court held that airline trainees were not "employees," it applied a version of the primary-beneficiary test—it did *not* apply the independent-contractor test. *Donovan v. Am. Airlines, Inc.*, 686 F.2d 267, 273 (5th Cir. 1982). Plaintiffs ignore *Donovan*. *See generally* Response.

       *c.*     *Alamo is not about a licensed drug-rehabilitation facility.*

Third, *Alamo* says nothing about the "economic reality" of patients who enroll in drug-rehabilitation treatment programs searching for sobriety, not a job. Even if most of the Foundation's associates "were drug addicts, derelicts, or criminals before their conversion and rehabilitation by the Foundation," the Foundation was not a drug-treatment facility and *Alamo* is not a drug-treatment case. *Alamo*, 471 U.S. at 292-95; *compare* Response at 16, 24. Instead, this Court should look to the cases that *do* involve drug-rehabilitation programs, all of which reject Plaintiffs' misinterpretation of *Alamo*. *See infra*.

---

[1] The distinction between "traditional" and "non-traditional" employment contexts arises from *Alamo* and its progeny. Brief at 37; *see, e.g.*, *Armento v. Asheville Buncombe Cmty. Christian Ministry, Inc.*, 856 F. App'x 445, 451 (4th Cir. 2021) (expressly drawing this distinction). It is not "made up out of thin air." *Cf.* Response at 12.

### B.   Circuit Courts Recognize That Drug-Rehab Patients Are Not FLSA "Employees"

The circuit courts interpreting *Alamo* speak with one voice—rehabilitation patients, volunteers, and trainees are not FLSA "employees." *See* Brief at 44-54. Plaintiffs downplay these cases because they refute Plaintiffs' arguments. Response at 20-25.

### 1.   **Williams** *found no "employee" status under similar circumstances.*

In 1996, the Ninth Circuit held in *Williams v. Strickland* that a participant in a drug-rehabilitation program was not an "employee" of the Salvation Army, based on: (1) a disclosure form that uses identical language to Cenikor's, and (2) the patient's obligation to assign his public benefits, as Cenikor does also. 87 F.3d 1064 (9th Cir. 1996); *compare id. with* ROA.1747 (form uses identical words); ROA.1463.

*Williams* plainly guides this case, so Plaintiffs claim it violates *Alamo*'s holding that FLSA "employees" may not waive their rights. Response at 21. But *Williams* applies no "waiver" logic. Instead, *Williams* held the individual was never an "employee" because he did not work in exchange for services, but rather, worked "to give him a sense of self-worth, accomplishment, and enabled him to overcome his drinking problems and reenter the economic

15

marketplace." *Williams*, 87 F.3d at 1067-68. This holding expressly applies *Alamo* and *Walling*'s test of "personal purpose or pleasure." *Alamo*, 471 U.S. at 295 (quoting *Walling*, 330 U.S. at 152). Cenikor presented similar testimony from the Plaintiffs, but the district court ignored it. ROA.1786; ROA.1836-37; ROA.2500.

### 2. *Acosta held that expectation of compensation is a threshold inquiry.*

In 2018, the Sixth Circuit held that a plaintiff's expectation of compensation is a threshold inquiry, and volunteers at a for-profit business were not "employees." *Acosta v. Cathedral Buffet, Inc.*, 887 F.3d 761 (6th Cir. 2018); Brief at 46-47. Contrary to Plaintiffs' mistaken characterization of *Acosta* as involving "a sort of food kitchen," the Cathedral Buffet was a for-profit restaurant where unpaid church members volunteered alongside paid employees—just like the vocational therapy performed by Cenikor's patients. *Acosta*, 887 F.3d at 763; *cf.* Response at 22-23. *Acosta* explains that personal purpose *matters*; it is not "irrelevant," as the district court held.

### 3. *Primary-beneficiary cases demonstrate that Cenikor's patients are not "employees."*

Cenikor cited several other circuit cases that applied a "primary beneficiary" test in holding that rehabilitation patients do not become

"employees" by performing work as therapy. Brief at 48-53. This test is nothing new, but comes straight from *Alamo*'s and *Walling's* test of "personal purpose or pleasure." *Alamo*, 471 U.S. at 295. "Primary beneficiary" discerns "economic reality" by asking who really benefits from the relationship—the worker or the alleged employer? *See infra*. This Court employed that reasoning when applying a similar test in *Donovan*, where trainees also received room and board. *Donovan*, 686 F.2d at 272-73.

Plaintiffs assert this Court *cannot* apply the "primary beneficiary" test because "the rule of orderliness" chains this panel to the five-part independent contractor test. Response at 23. That is incorrect for two reasons. First, the primary beneficiary test is not new to this Circuit. *See Donovan*, 686 F.2d at 272-73. Second, panels may distinguish the case at bar from prior precedents. *See, e.g., Frying Home Services, Inc. v. Ohio Security Ins. Co.*, 12 F.4th 467, 472 n.4 (5th Cir. 2021). This Court can and should distinguish drug-rehabilitation patients from independent contractors, as they are significantly different.

Accordingly, this Court should find guidance from those circuits that joined *Donovan* in applying a now modified primary-beneficiary test:

     *a.*    Vaughn *reasoned drug-rehab patients were the primary beneficiaries of the treatment relationship.*

In 2020, the Second Circuit looked to "unpaid intern" cases as guidance when it held patients in a residential substance abuse program were not FLSA "employees." *Vaughn v. Phoenix House Found., Inc.*, 957 F.3d 141 (2d Cir. 2020); Brief at 49-50. Vaughn received food, housing, and therapy, but for his own purposes and not as an implied compensation agreement. *Id*. at 145-46. Plaintiffs say nothing about *Vaughn.*

     *b.*    Armento *held that veterans were the primary beneficiaries of a rehabilitation program*

In 2021, the Fourth Circuit held that residents of a transitional program for homeless veterans were not employees under an FLSA-equivalent state law. *Armento*, 856 F. App'x at 452-53; Brief at 51-52. The residents worked "not to turn profits for their supposed employer, but rather as a means of rehabilitation and job training." *Id.* at 453.

Plaintiffs completely ignore *Armento* because it refutes all their arguments. *See generally* Response. *Armento*: (1) looks to "expectation of compensation" when applying *Alamo*, as well as who benefits from the work (the "primary beneficiary"); (2) rejects the independent-contractor test as irrelevant; and (3) holds that the program did not provide room and board

to the homeless participants "in exchange for" their work but rather as a consequence of the "overall rehabilitative relationship"—just as Cenikor does as a licensed, regulated drug treatment facility. *Id*. at 453-54.

        *c.*     *Fochtman held that "drug offenders" were not employees.*

Finally, in 2022, the Eighth Circuit held that "drug offenders" referred to a court-ordered drug treatment program were not "employees" of either the treatment program or the for-profit businesses where they worked. *Fochtman v. Hendren Plastics, Inc.*, 47 F.4th 638, 644-46 (8th Cir. 2022). The participants undertook the program for their own purposes—to avoid imprisonment—and received room and board for participating in the program, not as in-kind compensation for work performed. *Id*. at 646.

Having *no* authority for their current position (because the Eighth Circuit overturned the district court case upon which they relied), Plaintiffs argue *Fochtman* was wrong. Response at 24-25. *Fochtman* applies the *Walling* and *Alamo* holdings, subsequent cases applying the "primary beneficiary" test, and *Williams* and *Vaughn* (discussed above). *Fochtman*, 47 F.4th at 644-45. *Fochtman* rightly guides this Court.

**C.    The proper test applies *Alamo* by asking whether the individual worked in exchange for compensation, or instead for his or her own personal benefit.**

Cenikor's Brief culminates in a proposed test for drug-rehab patients. Brief at 55-56. Plaintiffs deride this test as "new," Response at 12, but it gathers *existing* holdings for this Court to consider.

In contrast, Plaintiffs claim this Court must follow *Alamo* and *Alamo* alone, *id*. at 23-24, but *Alamo* offers no specific test for how to discern the "economic reality" of this particular situation. Plaintiffs advocate the five-part independent-contractor test, *id*. at 23, though they do not quote it, because its words prove its irrelevance here. Meanwhile, Plaintiffs assert this Court must reject all authorities that do not involve drug treatment, *id*. at 23-24—yet the independent-contractor test has nothing to do with drug treatment. Plaintiffs do not want clarity, they want the confusion they wrought in the district court.

This Court will find many errors in the district court's order. <u>First</u>, the district court held it would apply the independent-contractor test to determine "employee" status, ROA.1464, but that test is inapplicable here. *See supra*.

Second, the district court held the potential collective members' expectation of compensation was "subjective" and thus "irrelevant." ROA.1465. Plaintiffs claim the court meant to say that expectation-of-compensation was not "dispositive," because they cannot defend the actual holding that it is "irrelevant." Response at 21. *Alamo* expressly instructs courts to examine the individual's "expectation of compensation" and their "personal purpose or pleasure," which are inherently subjective; moreover, the circuit courts above all looked to the individual's subjective intent. *See supra*. The district court should have followed these opinions' guidance instead of expressly rejecting it. ROA.1463-65.

Third, the district court wrongly declared that receiving in-kind benefits made the patients FLSA "employees." ROA.1462-63. This holding omits *Alamo*'s actual requirement of work *in exchange for* compensation. *Id*. Plaintiffs contend the district court made "no such expansive holding," but the order demonstrates the court's confusion. Response at 16. It asserted that in-kind benefits were sufficient "compensation" to satisfy *Alamo*, noted that all proposed members of the collective received room and board from Cenikor, and then held the collective was "similarly situated." ROA.1462. Further, despite the district court's reference to the Consent for Services

21

form, a close read of it does not reveal an agreement that work was in exchange for in-kind benefits—it provides the exact opposite. ROA.2184-85. *Alamo* requires an "in exchange for" quid pro quo, whereas here, patients do not perform vocational therapy *in exchange for* anything. *Alamo*, 471 U.S. at 295, 300-01. The district court did not meaningfully apply this test because it had already rejected expectation-of-compensation as "irrelevant." *See* ROA.1462. In contrast, the circuit courts applied the correct analysis and found that drug-rehabilitation patients, interns, and volunteers were *not* "employees" because they worked for their own purposes instead of working in exchange for compensation. *See supra*. The district court's facile application of a broken test led it to the wrong conclusion.

**D.    Under the correct test, the proposed members of the collective are not similarly situated.**

Applying the correct test reveals that the proposed members of the collective are not "similarly situated" as to their FLSA "employee" status.

**1.    *Cenikor did not provide benefits in exchange for vocational therapy; it provided benefits as part of the therapeutic relationship.***

Plaintiffs contend the district court could easily decide FLSA "employee" status for all members of the potential collective because Cenikor's general policies prove that all of its residential patients work in

exchange for benefits. Response at 19. The record contradicts this claim. As a licensed drug-treatment facility, Cenikor was required to provide food, clothing, shelter, medical care, counseling, and all other services and benefits *regardless* of whether the patients performed vocational services for outside businesses. Brief at 43; *see generally*, Tᴇx. Aᴅм. Cᴏᴅᴇ tit. 25, Pt I, Chapter 448; Lᴀ. Aᴅм. Cᴏᴅᴇ tit. 48, Pt I, Subpart 3, Chapter 56. Three categories of evidence prove the point:

- <u>Benefits during orientation</u>. All Plaintiffs testified they received food, housing, clothing, and counseling during the orientation phase of Cenikor's program, *when they do not participate in vocational therapy*.[2] Others received benefits even though they left the program before the primary phase.[3] Plaintiffs and the district court have no response to this, so they focus on the primary phase of the program, deeming the rest irrelevant. Response at 2.

- <u>Benefits while ill or injured</u>. Certain Plaintiffs admitted they received benefits when illness or injury prevented them from

---

[2] *See* ROA.1872-73; ROA.1791; ROA.1847-48; ROA.1982-83; ROA.1987; ROA.1821-23; ROA.1865; ROA.1996; ROA.1901-02.

[3] ROA.1791; ROA.1863; ROA.1903.

participating in vocational services.[4] The record shows that patients received benefits over *weeks* of inability to work, not just "when they took a sick day," as Plaintiffs dismissively claim. *Cf.* Response at 17-18; *see, e.g.*, ROA.1908-09.

- Benefits while performing in-house work. When patients held in-house roles at Cenikor, they received the same benefits.[5] The district court claimed this was "irrelevant" because Plaintiffs defined the collective to exclude in-house workers, ROA.1463, but Plaintiffs cannot avoid contrary evidence by redefining the scope of their proposed collective. These patients' testimony proves that *all* of Cenikor's patients receive *all* their benefits regardless of whether they perform vocational therapy, and these witnesses (which include some plaintiffs) are a part of this collective action.[6]

Plaintiffs cannot point to any policy proving that Cenikor provides benefits in exchange for vocational therapy, so the district court must individually inquire about each potential plaintiff's expectation of compensation.

---

[4] ROA.1880-83; ROA.1908-09; ROA.1982; ROA.1987; ROA.2007-11.

[5] ROA.1983-88.

[6] *Id.*

Elsewhere, Plaintiffs make unsupported allegations to make it seem as though Cenikor used benefits as a threat, but this Court should follow the record, not the rhetoric. *Cf.* Response at 7. *Nothing* in the record suggests Cenikor ever "kicked out" a patient for not participating in vocational therapy for a business partner. In reality, patients come to Cenikor knowing their treatment requires vocational therapy. Importantly, *Armento* specifically refutes Plaintiffs' attempt to convert a mandatory policy into a threat. *Armento* held "generally mandatory" policies were "part of the overall rehabilitative relationship," which meant "benefits are not directly premised upon participation." *Armento*, 856 F. App'x at 454.

Unlike *Alamo,* Cenikor does not condition any food, lodging or benefits on performance. Cenikor is a licensed treatment facility that provides benefits as a part of its rehabilitative relationship.

### 2. *Because Cenikor does not provide benefits in exchange for its patients' vocational therapy, the patients are not "similarly situated."*

FLSA "employee" status cannot be decided on the phantom promise that uniform policies will lead to a uniform conclusion. *See supra*. Instead, the analysis must weigh each prospective plaintiff's explanation for why he expected that his vocational therapy would be performed *in exchange for*

25

compensation instead of his own personal goals. Certainly, the deposed plaintiffs each answered that question differently. Brief at 25-26. Some knew they would receive no compensation; others claimed that despite their Consent for Services forms to the contrary, they would be paid wages later; others claim they worked for benefits but admitted they received those benefits regardless of whether they did vocational therapy. *Id*. Such varying testimony demonstrates the Plaintiffs' folly in trying to make this case seem like *Alamo*, and the district court's error in holding they were "similarly situated." This Court should reverse.

## II. Cenikor's Affirmative Defenses Prove The Collective Is Not "Similarly Situated."

Cenikor also demonstrated why its affirmative defenses prevent certification of a collective action. Brief at 58-67. Each presents complexities that require individualized examination, so the Plaintiffs have not proven the members of the collective are similarly situated. *Id*.

Plaintiffs follow the district court's fundamental misapplication of *Swales* by arguing they never had the burden of proof and that Cenikor should have provided more evidence to defeat the motion to certify. *See* Response at 25-38; ROA.1466-67. *Swales* reveals the error in this rhetoric.

*Plaintiffs* must prove that Cenikor's defenses require no individualized inquiry; Cenikor need not conclusively prove the merits of those defenses. *Swales*, 985 F.3d at 443.

Moreover, courts may not postpone the question of whether the case can be tried collectively, as the district court did. ROA.1466-67; *Swales*, 985 F.3d at 441. Plaintiffs do not even *try* to defend the district court's decision to postpone its rulings on Cenikor's defenses. *See generally* Response. *Swales* will not allow it.

In addition to these general errors, the district court erred in its specific analysis of each defense because Plaintiffs did not carry their burden of proving they can be decided collectively. *See Swales*, 985 F.3d at 443.

### A. Cenikor properly asserted its offset defense, which applies to Plaintiffs' allegations.

First, the district court held it was "premature" to calculate the offset of weekly benefits given against weekly wages owed. ROA.1467. Plaintiffs do not even try to defend this inexplicable violation of *Swales*. *Id*.; *Swales*, 985 F.3d at 441. Whether this can be done collectively must be established *now*.

Instead, Plaintiffs argue that Cenikor waived this defense by raising it orally at the hearing. Response at 26-27; *see* ROA.1692-93; ROA.1701. False.

This Court considers arguments made orally. *Melder v. Allstate Corp.*, 404 F.3d 328, 330-31 (5th Cir. 2005). Moreover, the district court addressed the offset defense in its order. ROA.1467. Plaintiffs did not complain of waiver at the hearing; they argued the calculation could be performed easily, though they now abandon that contention in this Court. ROA.1703.

Plaintiffs also assert that the offset defense applies only to their minimum wage claims, not their overtime claims. Response at 26-28. Even if this were true, Plaintiffs assert minimum-wage claims, so their distinction makes no difference. *See* ROA.283. Plaintiffs also fault Cenikor for not making these individualized calculations in response to their motion to certify. Response at 28. It is not Cenikor's burden to prove the merits of its defense at this early stage, but rather, Plaintiffs' burden to show that the calculation can be performed collectively instead of individually. *Swales*, 985 F.3d at 443. They failed to carry that burden.

### B.    Cenikor's MCA defense prevents certification.

Second, Cenikor demonstrated that the obligation to investigate potential exemptions under the Motor Carrier Act prevents the proposed collective from being "similarly situated." Brief at 63-65. Here too, the district court erroneously shifted the burden of proof onto Cenikor.

ROA.1466-67; *Swales*, 985 F.3d at 443. Plaintiffs' Response repeats this error. Response at 28-31. Plaintiffs must prove the district court can collectively determine whether the defense applies, but it is highly situation-specific.

In a strange inversion of their offset argument, Plaintiffs argue this Court can ignore the defense because it applies only to overtime claims and not to minimum-wage claims. Response at 28-29; ROA.1466 (making same observation). Plaintiffs assert overtime claims, however, so once again this distinction makes no difference. *See* ROA.283.

Plaintiffs sweep aside the testimony of plaintiff Pouncy (as did the district court) because his case was deconsolidated. Response at 30; ROA.1467. However, Pouncy remains within the definition of the proposed collective, making his testimony highly relevant to the "similarly situated" analysis. As for Woods, the other plaintiff cited by Cenikor, the district court held his testimony "raises questions" about whether the MCA applies, and Plaintiffs claim his testimony was equivocal. ROA.1466; Response at 30. If the defense may or may not apply to Woods, that simply proves that *Plaintiffs* failed to carry *their* burden of proving that the defense can definitely be adjudicated collectively. *Swales*, 985 F.3d at 443. Other plaintiffs will have different facts that require individual attention.

**C.     The *Rooker-Feldman* defense prevents certification.**

Cenikor's third affirmative defense arises because some of the Plaintiffs requested court orders allowing them to participate in Cenikor's program to reduce their pending criminal charges or avoid prison time. ROA.1811-14; ROA.1876-79. A judgment that these criminal defendants be paid wages might conflict with those state-court orders, and *Rooker-Feldman* prohibits such conflict. Brief at 65-66.  The district court once again placed the burden of proof on Cenikor and postponed its consideration of the issue—both of which violate *Swales*. ROA.1467. Plaintiffs have no answer.

The district court held that the *Rooker-Feldman* doctrine was not a valid defense as to *these particular Plaintiffs* (though it was a "close call," ROA.2055-56), and Plaintiffs defend that decision at great length. Response at 31-38. They miss the point. Plaintiffs have not proven that the district court's analysis of these particular Plaintiffs will be identical for every other court-referred collective member. The plaintiffs are not "similarly situated."

**III.   The District Court Erred By Ordering That Cenikor Must Violate Federal Privacy Statutes So That It Can Order Discretionary Notice To Potential Members Of The Collective.**

If this Court reverses the district court's certification order, it can end its analysis. But if the certification order stands, this Court must reverse the

district court's troubling refusal to enforce the federal laws protecting the privacy of patients in drug-rehabilitation programs. Brief at 67-80.

Plaintiffs concede these statutes apply and do not contest that the names and identifying information of Cenikor's patients are protected. Brief at 67-71; Response at 38-40. Plaintiffs also recognize the critical importance of these protections. *See* Brief at 69.

Nevertheless, Cenikor's assertion that names and identifying information may not be used or disclosed in any civil proceedings is anything but "unsupported." *Cf.* Response at 38. This instruction comes directly out of the statute and regulations. 42 U.S.C. § 290dd-2(c) (stating that without patient's written consent or court order, protected identifying information "may not be disclosed or used in any civil . . . proceeding. . . ."); 42 C.F.R. § 2.13(a) (stating that protected identifying information "may not otherwise be disclosed or used in any civil . . . proceedings. . . .").

This Court must reverse the district court's order because: (1) no putative plaintiff gave effective written consent; and (2) the district court refused to comply with the statutory requirements to issue compliant court order or to find "good cause."

## A.    Plaintiffs' purported "consent" fails to meet the requirements of federal regulations.

The entirety of the alleged consent proffered by Plaintiffs is found in Cenikor's LTC Consent for Services form, which concludes:

> I, [name of patient], hereby give permission for Cenikor Foundation to contact me via phone and/or email for all phone numbers and email addresses provided during admission for a period of up to three (3) years following discharge in order to collect follow up data.

ROA.2185. Other than quoting this language, Plaintiffs conduct no analysis regarding whether the document meets any applicable standard for valid consent. *See* Response at 40.

Cenikor's form only provides consent to contact for the limited purpose to "collect follow up data" related to the patient's treatment. ROA.2185. Additionally, the statute itself only contemplates written consents being obtained "for purposes of *treatment*, payment, and health care operations as permitted by the HIPAA regulations." 42 U.S.C § 290dd-2(b)(1)(B) (emphasis added). Nothing within the statute or the form indicates a patient may consent to receive unsolicited communications about a pending lawsuit.

In any event, use and disclosure of patient identifying information could only be done in accordance with a consent. 42 U.S.C § 290dd-2(a). The consent form only allows contact by telephone and email for three years after discharge from Cenikor. The district court's order allows use and disclosure of patients' confidential identifying information from "May 2016 to the present," and exceeds any possible authority conferred by the form.

### B.    Statutory requirements cannot be ignored as "unnecessary."

Without a valid consent, protected identifying information can only be used or disclosed if Plaintiffs obtain an appropriate court order. 42 U.S.C § 290dd-2(b)(2)(C); 42 C.F.R. § 2.13(a)-(b). Courts may issue such orders only "after an application showing good cause therefor…." 42 U.S.C § 290dd-2(b)(2)(C).

The regulations require that, prior to any order, "[t]he patient . . . *must be provided*" with (1) adequate notice, and (2) an opportunity to file a written response or appear in person to provide evidence necessary to find good cause. 42 C.F.R. § 2.64(b) (emphasis added). Consequently, *before the court issues the order to disclose*, the court must give each substance-abuse patient the chance to provide evidence regarding the public interest in disclosure compared with potential injury to the patient, the physician-patient

relationship and the treatment services. 42 C.F.R. § 2.64(d)(1)-(2). The district court's order fails at each step.

Notice. The district court describes the notice requirement as "redundant" and "unnecessary." ROA.1470. Plaintiffs agree, arguing the district court's order to disclose provides that "the class members *are* receiving notice directly from Cenikor." Response at 41 (emphasis in original). Plaintiffs' argument violates the regulation's requirement that patients receive notice *prior to* issuance of any order to disclose information. While federal district courts have many powers, they cannot issue a paper that travels backwards in time to give prior notice of itself.

Opportunity to give evidence. The district court and Plaintiffs also contend that the requirement that patients be given an opportunity to give evidence is "unnecessary because none of the class members' information will be disclosed to anyone unless they choose to opt into the suit." Response at 41; *see also* ROA.1470. No authority permits a court to ignore federal law. The putative plaintiffs must be given a chance to provide the very reasons for nondisclosure that Plaintiffs cannot seem to think up on their own.

Other options. Cenikor offered other notice options. ROA.1488-89. But neither the district court nor Plaintiffs analyze whether other ways of

obtaining the protected information are available or effective. Yet the district court "must" make this finding to issue a valid order. 42 C.F.R. § 2.64(d)(1).

In sum, because the district court's order was made prior to providing notice and opportunity to be heard, and because the order contains no findings regarding availability of the information or the public interest, it violates the Public Health Service Act and related regulations.

## C. The record evidence demonstrates Plaintiffs did not carry their burden of showing "good cause."

Finally, the mandatory "good cause" holding remains absent from Plaintiffs' analysis and the district court's order. A district court can only issue an order to disclose and use protected information after it "determines that good cause exists." 42 C.F.R. § 2.64(d). Within its order, the district court merely recognized that in dissimilar circumstances, other courts have ordered disclosure of records, but made no findings of its own. ROA.1470.

Plaintiffs admit it is their burden to establish that (1) good cause exists and (2) that the public interest in disclosure outweighs potential injury to those seeking substance abuse treatment. *See* 42 U.S.C. § 290dd-2(b)(2)(C); *Fannon v. Johnston*, 88 F. Supp. 2d 753, 757 (E.D. Mich. 2000). However, despite their conclusory position that "the 'good cause' standard was

35

unquestionably met," Plaintiffs made no effort to satisfy their burden. In fact, in the entire good cause section of their brief, Plaintiffs cite *no* evidence from any named or putative plaintiff. Response at 44-47.

Instead, the record demonstrates the absence of good cause. Multiple named Plaintiffs testified about their own desire, and the desire of others, to keep their participation in substance abuse treatment private—and that if they knew their attendance could be uncovered, it would dissuade them from seeking treatment:

- "Q: So if you were receiving correspondence or other messages about your time at rehab, you wouldn't want that? A: No." ROA.1778.

- "Q: Was it important to you that Cenikor not contact others and let them know that you re-enrolled in the program? A: Yes." ROA.1826.

- "Q: And so, you want to respect [unnamed putative plaintiff's] confidentiality? A: Yes." ROA.1904.

- "Q: Did you want your information about your attendance at Cenikor to remain private, by Cenikor? A: Of course." ROA.1972-73.

Similar privacy concerns motivated Congress to enact these protections. If an individual struggling with substance abuse thinks their information could one day be used or disclosed in civil litigation, without consent, it could dissuade them from seeking the help they desperately need. *See* Brief at 69. Because the only evidence in the record demonstrates the absence of good cause, the district court did not have the authority to order use and disclosure of protected information.

### D.   Good cause findings by other district courts in dissimilar circumstances are not relevant.

While district courts faced with dissimilar facts have rarely issued orders under 42 U.S.C. § 290dd-2(b)(2)(C), *this* district court did not follow the requirements necessary to issue such an order. Moreover, Plaintiffs' cases are distinguishable and none involves a claim of unpaid wages as a justification for good cause:

- In *In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*, MDL No. 2445, No. 13-MD-2445, Civ. A. No. 16-5073 (E.D. Pa. Dec. 3, 2021) the only issue presented was the form of the notice to be given and whether the notice adequately protected patient privacy. 2021 WL 5758896, at *1-2; *see also* 42 C.F.R. § 2.64(e). As a

result, the issues of notice, opportunity to be heard, good cause, and availability of information were not at issue.

- *Heredia* confirmed that "notice has been provided by the regulation," and the parties stipulated to the form and distribution of notice to the class members. *Heredia v. Tate*, No. 3:19-cv-00338-jdp (W.D. Wisc., Dec. 22, 2020).

- *Ginest* involved Constitutional challenges brought under the Eighth Amendment and did not mention or analyze Part 2. *Ginest v. Bd. Of Cty. Comm'rs of Carbon Cty.*, 306 F. Supp. 2d 1158 (D. Wyo. 2004).

If anything, Plaintiffs' cases *support* Cenikor's position. In each case that analyzed Part 2, the court ensured the required privacy protections were honored, notice was sent, and specific findings were made. Here, the district court did not.

Only one case is on point, and the district court ignored it. *In re Employment Records of John Does Employed By Sharpe Holding, Inc.*, No. 417MC238-RLW, 2017 WL 6547738 (E.D. Mo. Dec. 20, 2017) ("*Doe*"). Plaintiffs attempt to distinguish *Doe* by citing dicta and making assumptions why the court noted that "no FLSA case [had] been filed." *Id.* at *2. The fact that the DOL's request for use and disclosure of protected information was

made in an administrative investigation and not an FLSA lawsuit played no part in the court's analysis. Instead, the court specifically held the DOL "failed to demonstrate that the [Wage and Hour Division's] need for the identities of past and present Recovery Program patients outweighs the injury of violating patient privacy." *Id.* (citing 42 C.F.R. § 2.64(d)). The same is true here.

In FLSA collective actions, notice to potential plaintiffs is *optional*, not guaranteed. *Swales*, 985 F.3d at 436. Obedience of federal privacy laws is compulsory. This Court should reverse the order that Cenikor must provide or use protected patient information.

## Conclusion And Prayer

This Court should reverse the district court's orders granting certification of the FLSA collective action and ordering Cenikor to use and disclose patient identifying information, and order that collective action is improper.

Respectfully submitted,

By: /s/ Chris Dove
David M. Gregory
Chris Dove
Andrew W. Reed
Kathleen Grossman
LOCKE LORD LLP
600 Travis Street, Suite 2800
Houston, Texas 77002
dgregory@lockelord.com
cdove@lockelord.com
andrew.reed@lockelord.com
kathleen.grossman@lockelord.com
Tel: (713) 226-1344
Fax: (713) 223-3717
**COUNSEL FOR PETITIONER**

Frank Sommerville
Texas State Bar No. 18842700
WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
3030 Matlock Rd., Suite 201
Arlington, Texas 76015
Telephone (817) 795-5046
Facsimile (800) 556-1869
fsommerville@wkpz.com
**OF COUNSEL FOR PETITIONER**

<u>**Certificate Of Service**</u>

The undersigned hereby certifies that a true and correct copy of the foregoing Reply Brief of Appellant was served on all counsel of record on January 13, 2023 via CM/ECF filing:

<u>**Representing All Plaintiffs/Appellees:**</u>
**Josh Borsellino**
Borsellino, P.C.
3267 Bee Cave Rd., Ste. 107, PMB # 201
Austin, TX 78746
Email: josh@dfwcounsel.com

<u>**Representing Malik Aleem, John Potter, and Anthony Woods:**</u>
**Charles Stiegler**
Stiegler Law Firm
318 Harrison Ave., Suite 104
New Orleans, LA 70124
Email: charles@stieglerlawfirm.com

<u>**Representing John Potter and Anthony Woods:**</u>
**James R Bullman**
Blackwell & Bullman, LLC
8322 One Calais Ave
Baton Rouge, LA 70809
Email: james@estesdavislaw.com

<u>**Representing Anthony Woods:**</u>
**Josh Sanford**
Sanford Law Firm, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, AR 72211
Email: josh@sanfordlawfirm.com

*/s/ Chris Dove*
Chris Dove

## <u>Certificate Of Compliance With Type-Volume Limitation, Typeface Requirements, And Type-Style Requirements</u>

1.  This Petition complies with the type-volume limitation of Fed. R. App. P. 5(c)(1) because it contains **6,497** words, excluding the parts exempted by Fed. R. App. P. 5(c) and 32(a)(7)(B)(iii), and Fifth Circuit Rule 5.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 pt. Book Antiqua.

/s/ Chris Dove
Chris Dove
*Attorney for Appellant*