# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 16, 2023

Lyle W. Cayce
Clerk

No. 22-20434

———

Timothy Klick; Wilton Chambers; Malik Aleem; John Potter; Anthony D. Woods,

*Plaintiffs—Appellees,*

*versus*

Cenikor Foundation,

*Defendant—Appellant.*

———

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-1583

———

Before Graves, Higginson, and Douglas, *Circuit Judges.*

Dana M. Douglas, *Circuit Judge*:

Cenikor Foundation brings this interlocutory appeal challenging the district court's determination that a collective action of its drug rehabilitation patients may proceed under the Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. § 201, *et seq.* Finding that the district court applied the correct legal standards and did not abuse its discretion in certifying a collective action, we AFFIRM.

No. 22-20434

## I.

## A.

Cenikor Foundation is a 501(c)(3) nonprofit rehabilitation center assisting individuals with alcohol and/or drug addiction, as well as behavioral health issues, with locations throughout Texas and Louisiana. At issue in this lawsuit is an adult long-term inpatient treatment program ("the Program" throughout) run by Cenikor, in which patients were assigned jobs and required to work.[1]

Cenikor describes the Program in therapeutic language, calling it "vocational therapy" which involves a "highly regulated regimen with clearly stated expectations for behavior and psychological and behavioral rewards," including "morning and evening house meetings, job assignments, group sessions, seminars, personal time, recreation, and individual counseling." Appellees describe Cenikor as a "staffing agency" who has "outsourced its patients through its Work Program to work for various private companies" to its benefit.

The Program included three specific phases: orientation, primary treatment, and reentry. During the orientation phase, lasting up to 60 days, patients "learned the rules of the program, participated in group and individual therapy, and worked with counselors to develop an individualized treatment plan." When patients entered the primary treatment phase, lasting 16 to 18 months, Cenikor added "vocational therapy and training to the patients' program." The "vocational therapy" took place either in Cenikor's own facilities[2] or with one of the "community businesses" that

---

[1] Since the summer of 2021, Cenikor had discontinued the Program.

[2] The patients who worked within Cenikor's facilities are not a part of the proposed collective.

No. 22-20434

partnered with Cenikor, and patients did not keep any of the money from their work. If patients reached the reentry phase, they were required to find full-time employment and arrange for a permanent residence and reliable transportation to complete the Program. It was only during this phase that patients began earning wages from their employer directly.

Many long-term patients received treatment for free or at a reduced rate. All patients received access to room, board, food, clothing, security, counseling, transportation, and medical care during their tenure. Every patient signed a form explaining that Cenikor's "comprehensive therapeutic treatment program includes work assignments as part of rehabilitation" and "[r]esidents receive no monetary compensation for assigned responsibilities in the facility, or any on-the-job training during the primary treatment phase." By signing, the patients attested that "I further understand that under no circumstances can Cenikor be under any obligation to me; that I am a beneficiary and not an employee." Instead of making money off their "vocational therapy," patients attested that they understood that the funds paid to Cenikor "go directly back to the Foundation to help offset the cost of treatment services." To further offset costs, Cenikor also required patients to apply for government assistance, such as food stamps, and assign those benefits to Cenikor.

As part of the Program, Cenikor had contracts with community business partners ("outside businesses" throughout) to provide Program participants for particular jobs. These outside businesses were then billed by Cenikor for the hours worked by the Program participants. In 2017, Cenikor billed these outside businesses more than $7 million dollars for the labor of the Program participants. In 2018, Cenikor invoiced $6.9 million dollars to these outside businesses. Cenikor was paid directly for the labor provided by the Program participants at rates contractually agreed upon between Cenikor and the outside businesses. In accordance with labor laws governing

overtime pay, Cenikor also charged outside businesses an overtime premium of 1.5 times the regular hourly rate when participants worked more than 40 hours a week.[3]

Cenikor paid for workers' compensation insurance for all Program participants and marketed this benefit to potential outside business partners. The Program did not vary across locations. Cenikor decided which outside businesses its patients were assigned to, and if an outside business wished to change the job duties of a patient, it was required to first obtain Cenikor's permission to do so.

If a patient refused a work assignment, they would be disciplined by Cenikor, up to and including termination from the Program and removal from the facilities. Cenikor's intake forms specifically stated that if "unable to particulate" in the Program, participants would "be subject to termination from Cenikor."

**B.**

In 2019, after the Center for Investigative Reporting published a series of podcasts and articles "reporting that Cenikor had sent thousands of individuals in Louisiana and Texas to work without monetary compensation at major companies such as Walmart, Shell, and ExxonMobil," various plaintiffs filed six different lawsuits against Cenikor in three different federal district courts. Named plaintiff Klick filed the first suit in the Southern

---

[3] The contract with the outside businesses regarding overtime pay provided: "Vocational workers are presumed to be *nonexempt from laws requiring premium pay for overtime and holiday work*, or weekend work." (emphasis added). Although the contract clearly identified Cenikor's patients as "nonexempt" from laws requiring premium pay, its CFO testified that it was intended to mean the patients were considered "volunteers." However, Cenikor could and did bill these outside businesses overtime whenever a patient worked more than 40 hours in a week.

No. 22-20434

District of Texas, and all lawsuits were transferred to that court and consolidated on February 25, 2020. Shortly after the case was filed, the plaintiffs filed motions for conditional certification under the then-widely used framework for conditional certification established in *Lusardi v. Xerox Corp.*, 118 F.R.D. 341 (D.N.J. 1987). Following this court's decision in *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 434 (5th Cir. 2021), which rejected the *Lusardi* framework, and because Plaintiffs indicated that they would file an amended motion for certification following pre-certification discovery, the district court found the pending motions were moot and denied them without prejudice.

The parties then exchanged written discovery and held depositions of the named plaintiffs and a 30(b)(6) corporate representative of Cenikor. A total of 226 individuals consented to join the lawsuit as plaintiffs of the 2,736 individuals that had participated in the Program since May of 2016.

Following a renewed motion for certification, the district court certified a collective action under the FLSA. Specifically, the district court certified a "proposed class of individuals who participated in the primary phase of Cenikor's long-term residential program from May 2016 to the present and performed work for outside businesses or individuals without monetary compensation." Cenikor filed this interlocutory appeal pursuant to 28 U.S.C. § 1292 and now asks this court to reverse the district court's decision to certify a collective action.

## II.

This court reviews *de novo* the appropriate legal standard to apply when determining whether an individual is an employee under the FLSA. *Swales*, 985 F.3d at 439. Once the correct legal standard is ascertained, we review the district court's decision certifying a collective action for abuse of discretion. *Id.* "A district court abuses its discretion if it bases its decision on

No. 22-20434

an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005).

## III.

The Fair Labor Standards Act of 1983 created "a comprehensive federal wage-and-hour scheme." *Aldridge v. Miss. Dept. of Corrs.*, 990 F.3d 868, 871 (5th Cir. 2021). Congress enacted the FLSA to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general wellbeing of workers." *Id.* The principal purpose of the Act is "to protect all covered workers from substandard wages and oppressive working hours." *Id.* (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). Workers covered under the Act are entitled to a minimum wage and overtime compensation. 29 U.S.C. §§ 206-07.

"The FLSA protects employees (not independent contractors) ...." *Swales*, 985 F.3d at 434. Moreover, collective actions may only proceed under the FLSA so long as the potential members are "similarly situated." *Id.* at 433. "District courts should 'rigorously enforce [the FLSA's similarity requirement] at the outset of the litigation." *Id.* at 443. In determining whether "employees" are "similarly situated," district courts must scrutinize all facts and legal considerations material to determining such status, including merits questions. *Id.* at 434, 441-42. Here, where a merits question is wrapped up in a threshold determination—whether the rehabilitation patients are considered employees entitled to compensation under the FLSA—the dispositive threshold issue must be resolved before a collective can be certified and notice can be sent. *See id.* at 441 ("The fact that a threshold question is intertwined with a merits question does not itself justify deferring those questions until after notice is sent out.").

No. 22-20434

## A.

Cenikor argues that the district court applied the wrong legal standard to determine whether Cenikor's patients were FLSA "employees." Appellees argue that the district court properly applied binding Supreme Court precedent to the facts of this case in finding that the employment question may be decided on a collective-wide basis.

Collective actions can be certified as to the very question of whether a specific group of individuals qualify as "employees" under the FLSA. *See Hobbs v. Petroplex Pipe and Const., Inc.*, 946 F.3d 824, 828-29 (5th Cir. 2020). While the determination of whether an individual is an "employee" is a matter of law, there are often associated factual inquiries required before such a determination can be made. The ultimate determination turns on the "economic reality" of the relationship between the parties involved. *See Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 301 (1985). While a finding of "whether a worker is an employee for FLSA purposes is a question of law," *Parrish v. Premier Directional Drilling, LP*, 917 F.3d 369, 377 (5th Cir. 2019), the "economic-reality" test requires the application of facts that may be in dispute, as they are here. *See Hopkins v. Cornerstone Am.*, 545 F.3d 338, 346 (5th Cir. 2008).

Both parties agree that central to this analysis—whether Cenikor's rehabilitation program participants are employees under the FLSA—is the Supreme Court decision in *Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290 (1985). We agree with the parties that *Alamo* should guide this determination. The Tony and Susan Alamo Foundation was a nonprofit religious organization that derived its income largely from the operation of commercial businesses staffed by the Foundation's "associates," most of whom were "drug addicts, derelicts, or criminals" before their rehabilitation at the Foundation. *Id.* at 292. These workers received no cash salaries, but

were provided with food, clothing, shelter, and other benefits. *Id.* The Secretary of Labor filed an action against the Foundation alleging violations of the minimum wage, overtime, and record keeping provisions of the FLSA. *Id.* at 293.

The Supreme Court held that "[A]n individual who, *without promise or expectation of compensation*, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit, is outside the sweep of the act." *Id.* at 295 (internal quotation omitted) (emphasis added). Although the associates themselves protested coverage under the Act, the Supreme Court determined this was not dispositive, since the test of employment under the Act is one of "economic reality." *Id.* at 301. The fact that the compensation was primarily in the form of benefits rather than cash was "immaterial" in this context, "such benefits being wages in another form." *Id.* Since the associates received in-kind benefits and were dependent on the Foundation for long periods of time, the Supreme Court held that the district court did not clearly err in finding they were "employees" within the meaning of the Act. *Id.*

Contrary to Cenikor's arguments, the district court properly relied on *Alamo* in answering the threshold question of whether the patients are "employees" under the Act by certifying a collective that seeks to answer that question on the merits through ongoing litigation The district court noted that although the rehabilitation patients may have known they would not be monetarily compensated during the Program, "they nonetheless understood they would be provided with in-kind benefits." It pointed to the Consent for Services agreement where program participants agreed to work for outside businesses and receive in-kind benefits, such as housing, food, medical care, and clothing. The district court thus found that the Program participants worked "in exchange" for in-kind benefits. The fact that the Program participants who made it to the reentry phase had to pay Cenikor

for rent and transportation fees provided additional support for the district court's determination. The district court went on to distinguish this case from others relied upon by Cenikor, emphasizing that Cenikor collected nearly $14 million dollars from outside businesses for the labor of its Program participants within two years, that participants were required to work at risk of termination from the Program, could not possess money, and were economically dependent on Cenikor for 16 to 18 months.

Cenikor relies on *Williams v. Strickland*, 87 F.3d 1064 (9th Cir. 1995), claiming that it modeled the language in its Consent for Services agreement after the language there. In *Williams*, a participant of the Salvation Army Rehabilitation Center brought claims that he was an employee under the FLSA during his six-month stay, in which he was offered room, board, work therapy, and spiritual counseling and engaged in a treatment plan in-house refinishing furniture sold through Salvation Army's thrift stores. *Id*. at 1065. Williams signed a "Beneficiary's Admittance Statement" that indicated the Salvation army was under no obligation to him and that he was a beneficiary, not an employee. *Id.* A majority of the Ninth Circuit held that he was not an employee because he had "neither an express nor an implied agreement for compensation with the Salvation Army and thus was not an employee." *Id.* at 1067. However, we do not find *Williams* persuasive. *Alamo* and its predecessor cases explicitly hold that rights under the FLSA cannot be waived, *see e.g., Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704-05 (1945), and any forms patients sign indicating that they are beneficiaries and not employees do not control this analysis.

Because the district court utilized *Alamo* in reaching its decision, it relied on the appropriate legal standard. Its *threshold* determination that the rehabilitation patients constitute "employees" under the Act because they worked in expectation of compensation was not an abuse of discretion. "[T]he district court needed to consider the evidence relating to this

threshold question in order to determine whether the economic-realities test could be applied on a collective basis." *Swales*, 985 F.3d at 442. It properly did so here and found the merits question could be answered collectively based on ample evidence in the record from preliminary discovery.

## B.

Cenikor also takes issue with the district court's finding that the rehabilitation patients were "similarly situated" to each other for purposes of certifying a collective action. As noted, plaintiffs bear the burden of proving a collective is similarly situated. *Swales*, 985 F.3d at 442-43. The statute, however, does not define "similarly situated." *Id.* at 435. As this court explained in *Swales*, "to determine if and when to send notice to potential opt-in plaintiffs," "a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *Id.* at 441.

A showing that members of a collective action are similarly situated does not require members to be identically situated but requires plaintiffs to show a demonstrated similarity between the purported collective, such as a factual nexus that binds the claims together so that hearing all claims in one proceeding is fair to all parties and not beset with individual inquiries. *See id.* at 443. This necessarily requires a consideration of proposed defenses to determine whether they are so individualized that denial of certification is required.

After the completion of preliminary discovery, the district court determined that the evidence and testimony showed that the key aspects in determining the ultimate merits question of whether an employer/employee relationship exists may be determined on a collective-wide basis because: (1) all patients signed the same paperwork disclaiming employee status and stating they would not be paid during the primary phase; (2) the paperwork

promised that Cenikor would provide all basic personal needs including housing, food, emergency medical care, and clothing; (3) all plaintiffs agreed to perform work to receive these in-kind benefits; (4) all program participants received their work assignments and schedules from Cenikor; and (5) all plaintiffs were subject to the same organization-wide policies and procedures irrespective of location. The district court ultimately concluded that it could determine collectively the central question whether the primary phase participants were employees under the FLSA because all proposed members were subject to a company-wide policy in which they performed labor without monetary compensation.

## C.

Cenikor next argues that its rehabilitation patients are not similarly situated because the district court handled its defenses in a way that contravenes *Swales*. Appellees argue that the district court correctly determined that these defenses could be addressed collectively.

Turning to Cenikor's three proposed defenses — the Motor Carrier Act ("MCA") exemption, the offset defense, and the *Rooker-Feldman* doctrine — the district court properly concluded that these defenses were either inapplicable or that Cenikor had not, at this stage, demonstrated they would require individualized inquiries.

To qualify for the MCA exemption, a loader aka "an employee of a carrier" must have duties that include, "among other things, the proper loading of his *employer's* motor vehicles." 29 C.F.R. § 782.5(a) (emphasis added). Here, there is no allegation that any of the outside businesses were the patients' employer. Instead, Cenikor is the sole employer defendant. Accordingly, the MCA defense does not apply to any individual patient.

Regarding the offset defense, the district court noted plaintiffs' argument that the calculations could be completed on a class-wide basis – "by

subtracting aggregate costs from aggregate payments and dividing by the number of participants to determine an average." Because these benefits could be deducted in a uniform manner, they should not warrant individualized inquiries.

Finally, as to the *Rooker-Feldman* doctrine, the Fifth Circuit recognizes, in conformity with the Supreme Court, that *Rooker-Feldman* is a narrow jurisdictional bar. *See Truong v. Bank of America, N.A.*, 717 F.3d 377, 381-82 (5th Cir. 2013) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The doctrine applies only "where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Lance v. Dennis*, 546 U.S. 459, 466 (2006). Here, this doctrine has no bearing on the alleged FLSA claims. Appellees are not "state court losers" who are challenging state court decisions that require them to attend Cenikor's rehabilitation treatment center in lieu of serving jailtime. Rather, they are challenging Cenikor's decision not to pay them for their labor in violation of federal law.

Here, the claims and defenses largely turn on the same question: whether the rehabilitation patients are employees under the FLSA. The district court applied the correct legal standard to determine if plaintiffs were similarly situated in applying *Swales*. Furthermore, the district court did not abuse its discretion in considering Cenikor's defenses and determining that merits determinations could be considered collectively.

## D.

Finally, Cenikor argues that the district court erred in requiring it to provide the contact information of patients to provide notice of the lawsuit because federal privacy laws strictly forbid such disclosure without good cause. Appellees counter that they have satisfied the good cause standard required to permit disclosure of patients' names and contact information.

No. 22-20434

Disclosure of patient records in federally funded drug and alcohol abuse treatment programs is governed by the Substance Abuse and Mental Health Services Act ("SAMHSA"). Cenikor is correct that federal law prevents disclosure of records containing the identity of patients maintained in connection with the performance of any program or activity relating to substance abuse treatment. *See* 42 U.S.C. § 290dd-2(a); 42 C.F.R. §§ 2.11-13. However, § 290dd-2 permits disclosure of patient identifying information if authorized by "an appropriate order of a court." 42 U.S.C. § 290dd-2(b)(2)(C). A party seeking disclosure must establish good cause by showing that: (1) other ways of obtaining the information are not available or would not be effective; and (2) the public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship, and the treatment services. 42 C.F.R. § 2.64(d).

Good cause for notice is satisfied here. As the district court found, although Cenikor points to "publicized news articles and social media posts" as alternatives to obtain the names and contact information, these attempts previously only yielded 226 out of 2,736 individuals who participated in the Program, and thus have not been particularly effective. Additionally, the public interest in enforcing federal labor laws against employers who violate them outweighs potential injury to the patient and/or physician-patient relationship, especially where the Program no longer exists as of 2021 for such relationships to exist. The district court also imposed appropriate safeguards to protect against unauthorized disclosures by entering a protective order. Accordingly, the district court did not err in requiring Cenikor to send notice to potential opt-in plaintiffs.

## IV.

Here, the district court applied the correct legal standards to this case in its reliance on *Alamo* and *Swales* and appropriately concluded that it could

No. 22-20434

decide the central question of whether the Program participants were employees under the FLSA who were entitled to compensation collectively. We find no abuse of discretion.

     AFFIRMED.