# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

# NO. 22-20434

_____

**TIMOTHY KLICK; WILTON CHAMBERS; MALIK ALEEM;
JOHN POTTER; ANTHONY D. WOODS,**
**Plaintiffs – Appellees,**
v.
**CENIKOR FOUNDATION,**
**Defendant – Appellant**

_____

**On Appeal from the United States District Court
For the Southern District of Texas, Houston Division**

_____

**PETITION FOR REHEARING EN BANC**

_____

David M. Gregory
Chris Dove
Andrew W. Reed
Kathleen Grossman
600 Travis Street, Suite 2800
Houston, Texas 77002
dgregory@lockelord.com
cdove@lockelord.com
andrew.reed@lockelord.com
kathleen.grossman@lockelord.com
Tel: (713) 226-1344
Fax: (713) 223-3717

**ATTORNEYS FOR DEFENDANT/
PETITIONER**

Frank Sommerville
WEYCER, KAPLAN, PULASKI
& ZUBER, P.C.
3030 Matlock Rd., Suite 201
Arlington, Texas 76015
fsommerville@wkpz.com
Tel: (817) 795-5046
Fax: (800) 556-1869

**OF COUNSEL FOR DEFENDANT/
PETITIONER**

## Certificate Of Interested Persons

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1.     The Defendant / Appellant is:

Cenikor Foundation

2.     The original Plaintiffs / Appellees in the consolidated cases are:
Timothy Klick
Malik Aleem
John Potter
Anthony Woods
Wilton Chambers[1]

Within the consolidated cases (No. 4:19-cv-3031, 4:19-cv-3032, 4:19-cv-3033, and 4:19-cv-4569) approximately 226 individuals have filed notices of consent to join this action as putative opt-in plaintiffs. The names of these putative opt-in plaintiffs, as reflected in PACER and publicly filed documents, are listed on Exhibit A to this Brief.

3.     Appellant is represented by:

David M. Gregory
Chris Dove

---

[1] Gregory Sorey was the original named plaintiff in Case No. 4:19-cv-3033. On November 1, 2021, the district court dismissed Sorey and substituted Chambers as the named plaintiff. ROA.28.

Andrew W. Reed
Kathleen Grossman
**Locke Lord LLP**

Frank Sommerville
**Weycer, Kaplan, Pulaski & Zuber, P.C.**

5.    Appellees are represented by:

<u>For All Appellees</u>:
Josh Borsellino
**Borsellino, P.C.**

<u>For Malik Aleem, John Potter, and Anthony Woods</u>:
Charles Stiegler
**Stiegler Law Firm, LLC**

<u>For John Potter and Anthony Woods</u>:
John Bullman
**Blackwell & Bullman, LLC**

<u>For Anthony Woods</u>:
Josh Sanford
**The Sanford Law Firm**

<u>/s/ Chris Dove</u>
Chris Dove

## Statement Regarding En Banc Determination

This Court should hear this case en banc for two reasons:

New Circuit Split. First, the panel's opinion presents a question of exceptional importance because it creates a circuit split. Before this case, *every circuit court* that addressed the question held that drug-rehabilitation patients are not "employees" under the Fair Labor Standards Act. *Williams v. Strickland*, 87 F.3d 1064 (9th Cir. 1996); *Vaughn v. Phoenix House Found., Inc.*, 957 F.3d 141 (2d Cir. 2020); *Armento v. Asheville Buncombe Cmty. Christian Ministry, Inc.*, 856 F. App'x 445 (4th Cir. 2021); *Fochtman v. Hendren Plastics, Inc.*, 47 F.4th 638 (8th Cir. 2022). They apply the Supreme Court's test for FLSA "employee" status in *Tony and Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290 (1985) and hold that patients work for their own pleasure or purpose—sobriety—instead of in exchange for compensation. Courts apply the same analysis to volunteers, interns, and trainees. *Donovan v. Am. Airlines, Inc.*, 686 F.2d 267 (5th Cir. 1982); *see also, e.g.*, *Acosta v. Cathedral Buffet, Inc.*, 887 F.3d 761 (6th Cir. 2018); *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947).

But the panel disagreed with *Williams*, ignored the other circuit opinions, and affirmed the district court's decision to use the test this Circuit

intended for independent contractors. This new minority position misconstrues *Alamo* and will create widespread confusion in FLSA litigation.

The panel also wrongly affirmed the district court's disregard of federal privacy statutes when sending notice to potential plaintiffs. This Court must hold that federal mandates never yield to optional practices.

Conflict with precedent from this Court and the Supreme Court. Second, the panel opinion's application of FLSA collective-action rules conflicts with *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430 (5th Cir. 2021), *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500–02 (5th Cir. 2019), and *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

Because *Hoffman-LaRoche* and *JPMorgan* hold that courts must not "signal approval of the merits," *Swales* explains that courts must consider the merits of legal issues at the certification stage *but not decide them*. However, the panel held that *Swales* requires courts to actually decide threshold issues of law on the merits, which creates a new and direct conflict. The panel decision also violates *Swales* by misplacing the burden of proof, and then makes legal errors when holding that Cenikor's affirmative defenses can be collectively decided. This Court should grant en banc review to defend *Swales* from the panel's results-oriented interpretation.

# Table Of Contents

Page

Certificate of Interested Persons .......................................................................2

Statement Regarding En Banc Determination ....................................................4

Table of Contents ..............................................................................................6

Index of Authorities...........................................................................................7

Issues That Merit En Banc Consideration .........................................................9

Statement of the Course of Proceedings...........................................................10

Statement of Facts ...........................................................................................11

Argument .........................................................................................................14

    I.    This Court should grant en banc review and adopt a test for "employee" status that properly applies *Alamo*. ...................14

    II.    The panel contradicts *Swales* and other published decisions............................................................................19

        A.    The panel decided the merits, which the Supreme Court and this Court expressly forbids. .............................19

        B.    The panel misapplies the *Swales* burden of proof and misconstrues the law to hide the effects of that error. ........................................................................21

    III.    The opinion misconstrues federal privacy regulations and deprives patients of their rights. ...................................23

Conclusion.......................................................................................................27

Signature.........................................................................................................27

Certificate Of Service ......................................................................................28

Certificate Of Compliance With Type-Volume Limitation, Typeface Requirements, And Type-Style Requirements ................................................29

Exhibit A:  List of Opt-In Plaintiffs...................................................................30

Panel Opinion ......................................................................................Following

## Index Of Authorities

**Page(s)**

**Cases**

*Acosta v. Cathedral Buffet, Inc.,*
   887 F.3d 761 (6th Cir. 2018)............................................................4 ,17

*Armento v. Asheville Buncombe Cmty. Christian Ministry, Inc.,*
   856 F. App'x 445 (4th Cir. 2021) ....................................................4, 16

*Donovan v. Am. Airlines, Inc.,*
   686 F.2d 267 (5th Cir. 1982)...........................................................4, 17

*In re Employment Records of John Does Employed By Sharpe
   Holding, Inc.,*
   No. 417MC238-RLW, 2017 WL 6547738 (E.D. Mo. Dec. 20,
   2017) ..............................................................................................24

*Fochtman v. Hendren Plastics, Inc.,*
   47 F.4th 638 (8th Cir. 2022)............................................................4, 16

*Hoffmann-La Roche Inc. v. Sperling,*
   493 U.S. 165 (1989)................................................................. 5, 19-21

*In re JPMorgan Chase & Co.,*
   916 F.3d 494 (5th Cir. 2019)...................................................... 5, 19-20

*Parrish v. Premier Directional Drilling, L.P.,*
   917 F.3d 369 (5th Cir. 2019) ..................................................... 7, 15-16

*Songer v. Dillon Res., Inc.,*
   618 F.3d 467 (5th Cir. 2010)...........................................................23

*Swales v. KLLM Transp. Servs., LLC,*
   985 F.3d 430 (5th Cir. 2021).......................................................*passim*

*Tony and Susan Alamo Found. v. Sec'y of Labor,*
   471 U.S. 290 (1985)....................................................................*passim*

*Vaughn v. Phoenix House Found., Inc.,*
957 F.3d 141 (2d Cir. 2020) ........................................................................4, 16

*Walling v. Portland Terminal Co.,*
330 U.S. 148 (1947)....................................................................................4, 15

*Whyte v. Connecticut Mut. Life Ins. Co.,*
818 F.2d 1005 (1st Cir. 1987) ...........................................................................24

*Williams v. Strickland,*
87 F.3d 1064 (9th Cir. 1996)....................................................................*passim*

**Statutes and Rules**

Fair Labor Standards Act, 29 U.S.C. § 201 et seq.......................................*passim*

42 C.F.R. § 2.64..................................................................................................24

42 U.S.C. § 290dd-2(b)(2)(C) ...........................................................................24

**Other Authorities**

Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification,
and Wage Law Enforcement in the Federal Courts*, 29 BERKELEY J.
EMP. & LAB. L. 269, 291 (2008)........................................................................26

Charlotte S. Alexander, *Would an Opt-In Requirement Fix the
Class Action Settlement? Evidence from the Fair Labor Standards
Act*, 80 MISS. L.J. 443, 467-68 (2010)..............................................................26

## **Issues That Merit En Banc Consideration**

1.    What test should courts use to determine FLSA "employee" status when the plaintiff is a former drug-rehabilitation patient, volunteer, intern, or trainee? How should courts apply that test to a proposed collective of drug-rehabilitation patients to determine whether they are "similarly situated," when they testified they had different expectations about working in exchange for compensation (including no expectation at all)? Should this Court continue as the lone court in a new circuit split on these issues?

2.    Did the panel correctly hold that courts must decide the merits of threshold legal issues at the FLSA certification stage, when this Court and the Supreme Court held that courts must never opine on the merits? Did the panel misplace the burden of proof? And did the panel correctly describe the law governing Cenikor's defenses?

3.    Does a court's interest in sending optional notice to potential collective members supersede mandatory federal regulations protecting drug-rehabilitation patients' privacy rights?

## Statement of the Course of Proceedings

Plaintiffs allege that Cenikor owes them wages under the FLSA because they participated in work therapy as part of Cenikor's residential drug-rehabiliation program. *See, e.g.*, ROA.276. Plaintiffs sought to certify a collective action. ROA.2189.

After initial discovery, the district court certified the collective. The court held it could collectively decide whether the patients were FLSA "employees." ROA.1462-65. The court then ordered Cenikor to provide notice of the litigation to its former patients, without following the procedures mandated by federal statutes governing substance-abuse patients. ROA.1470. The district court certified its orders for immediate interlocutory review, and this Court accepted the appeal. ROA.1567; ROA.1572.

On August 16, 2023, this Court issued its published opinion written by Judge Douglas and joined by Judges Graves and Higginson. The opinion affirmed the district court's orders, provided no analysis of the contrary circuit cases, and held the members of this proposed collective were FLSA "employees." *See* Slip op.

**Statement of Facts**

The nonprofit Cenikor Foundation operated a residential drug-treatment program that followed the widely accepted "Therapeutic Community" model, a highly regimented system used worldwide. ROA.1740; ROA.1751-65. Because lasting sobriety requires patients to develop job skills and a strong work ethic, Cenikor's program required patients to participate in work therapy as part of a group that monitors and encourages each other. ROA.1754; ROA.1740; ROA.1747. Patients' work therapy could be either in-house at Cenikor or at any of several third-party business partners, based on the patient's individual goals. Cenikor provided patients with food, shelter, emergency medical care, and clothing, even when they were not participating in work therapy. *See* Brief at 42-43.

Though patients must participate in work therapy if they are able, no one comes to Cenikor for a *job*—patients come to get *sober*. All prospective patients signed forms containing multiple notices that they were not "employees" and would not be paid compensation. ROA.1744; ROA.1747; ROA.1749. Cenikor used the same disclosure language the Ninth Circuit relied upon when it held a drug-rehabilitation patient did not expect

compensation and thus was not an FLSA "employee." *Compare id*. *with Williams*, 87 F.3d at 1065.

Most of Cenikor's patients paid either nothing or a very modest fee to enter the program. ROA.1741. Nevertheless, this residential program was enormously expensive to operate. Cenikor partially funded it by billing the third-party partners for the work performed by the patients,[2] and made up the remaining treatment costs through charitable donations and other sources. *Id*.; *cf*. Slip op. at 3 & 9 (emphasizing Cenikor collects millions in revenue, while omitting that Cenikor spent even more to provide therapy).

As the panel opinion highlights, a progressive news site published an article in 2019 attacking Cenikor for "sen[ding] thousands of individuals to work without monetary compensation at major companies." Slip op. at 4. Around this time, plaintiffs across the country sued drug-rehabilitation programs that use work therapy as part of their methodology. This case consolidated six such lawsuits, all of which generally portray Cenikor as operating a mere "staffing agency" masquerading as a drug-rehab program.

---

[2]  As a nonprofit, Cenikor cannot unfairly compete with for-profit businesses—but receiving such payments does not mean Cenikor's patients were its "employees." *Cf*. Slip op. at 3.

*Id*. Plaintiffs allege the FLSA entitles them to wages for alleged work they performed for third parties,[3] and sought to certify a collective action of former patients. *Id*.

Cenikor opposed certification because the former patients were not "similarly situated" on the threshold question of whether they were FLSA "employees." The touchstone of the Supreme Court's *Alamo* test is whether the plaintiff believed his work was in exchange for compensation. *See infra*. Some Plaintiffs admitted they knew they would not be paid compensation; some testified they thought they would be paid wages for overtime or at the end of the program; and others testified they thought that room and board were the compensation (but received it even when they did not work). *See* Brief at 25-26. None complained at the time.

The district court certified the class but rejected an expectation-of-compensation test to determine FLSA "employee" status, by holding that because the patients joined a residential treatment program that provided room and board, they all expected to work in exchange for those benefits. ROA.1462-65. The court then held it will use this Circuit's test for

---

[3] Plaintiffs' damage claim excludes work performed in-house, presumably because it contradicts Plaintiffs' contention that Cenikor is a mere "staffing agency." *See* ROA.1463.

independent contractors, under which the collective would be "similarly situated" because they were subject to a uniform set of Cenikor policies. ROA.1464-67. The district court then ordered Cenikor to provide notice to all the program's former patients, holding that the public's interest in sending this discretionary notice superseded mandatory federal regulations protecting patient privacy. ROA.1468-70; ROA.1567.

The panel affirmed, adopting some of the district court's errors while making new errors of its own. *See* Slip op.

## Argument

## I.    This Court should grant en banc review and adopt a test for "employee" status that properly applies *Alamo*.

First, this Court should grant en banc review to undo the circuit split caused by the panel's opinion, and to describe and apply a test that correctly applies *Alamo* to non-traditional workers like volunteers, trainees, interns, and drug-rehabilitation patients. Such people work for their own purposes, not a paycheck.

Because the FLSA does not meaningfully define "employee," *Alamo* explains that "[a]n individual who, *'without promise or expectation of compensation*, but solely for his *personal purpose or pleasure*, worked in

activities carried on by other persons either for their pleasure or profit,' is outside the sweep of the [FLSA]." *Alamo*, 471 U.S. at 295 (1985) (quoting *Walling*, 330 U.S. at 152) (emphasis added). This "test of employment under the [FLSA] is one of 'economic reality.'" *Id*. *Walling* held that railroad trainees were not FLSA "employees" because they worked for their own purpose (vocational training) instead of wages. 330 U.S. at 152-53. In *Alamo*, however, the Supreme Court found no clear error in the district court's finding that members of a dismal religious "commune" worked at for-profit businesses in a quid-pro-quo exchange for room and board. *Alamo*, 471 U.S. at 301 & n.22. They were dependent on the commune, were heavily "fined" for poor job performance, and were not allowed to eat if they did not work for *any reason*—even injury or inclement weather. *Id*. Accordingly, *Alamo* affirmed the conclusion they were FLSA "employees." *Id*.

Meanwhile, this Court implemented a five-part "economic reality" test for distinguishing employees from independent contractors, which is an issue in many FLSA "employee" disputes. *See, e.g.*, *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379-80 (5th Cir. 2019). The district court felt constrained to apply this test because it erroneously believed this Court had approved none other, ROA.1465, and the panel likewise cites this

Court's decisions applying this "economic reality" test. Slip op. at 7 (citing independent-contractor opinions of *Hobbs*, *Parrish*, and *Hopkins*). But this test makes no sense when applied to people outside the traditional employment context, like trainees or rehab patients, because it focuses on inapposite issues such as personal investment in the enterprise or the provision of tools and equipment. *Parrish*, 917 F.3d at 379-80; *compare Armento*, 856 F. App'x at 453 (drawing this distinction).

For its part, the panel discusses *Alamo* and agrees that the fact that Cenikor provides room and board in its residential treatment program necessarily proves that the patients worked "in exchange for" those benefits. Slip op. at 8-9. The panel allows no analysis of the patients' "pleasure or purpose" in working, that patients came to Cenikor seeking sobriety (not a job), or the lack of any quid-pro-quo relationship between work and benefits.

No other circuit takes the panel's approach. *Every circuit to address the issue* held that drug-rehabilitation patients are not FLSA "employees" because they work for their own pleasure or purpose—sobriety—instead of in exchange for compensation. *Williams*, 87 F.3d at 1065 (Ninth); *Vaughn*, 957 F.3d at 144-46 (Second); *Fochtman*, 47 F.4th at 645-46 (Eighth); *Armento*, 856 F. App'x at 452-54 (Fourth). The Sixth Circuit adopted this analysis for

volunteers at a church-run for-profit restaurant. *Acosta*, 887 F.3d at 766-67. And in 1982, this Court adopted a similar analysis for job trainees. *Donovan*, 686 F.2d at 283. Generally speaking, these courts implement a "primary beneficiary" test to ascertain whether the plaintiff is working for his or her own "pleasure or purpose." *See* Brief at 44-56. Under this test, the collective cannot be similarly situated because existing evidence shows differing answers to the critical question—did you come to Cenikor expecting to work in exchange for compensation, or did you work at Cenikor to get sober? *Id*. at 56-58. The test used by *every other circuit* compels this Court to reverse. *Id*.

Plaintiffs had no answer for these circuit decisions, and the panel opinion *ignores* them. The panel addresses only *Williams*, which it rejects because FLSA rights cannot be waived. Slip op. at 9. This misconstrues both *Williams* and *Alamo*. Once a plaintiff has been adjudicated to be an FLSA "employee" she cannot waive her rights, that is true—but *Alamo* holds that the plaintiff's "expectation of compensation" nevertheless determines whether she is an FLSA "employee" in the first place. *Alamo*, 471 U.S. at 295. *Williams* applies that rule. *Williams*, 87 F.3d at 1067-68.

The panel also emphasizes that certain elements of the program support certification, while overlooking the many contradictory facts. Slip

op. at 9. The panel emphasizes that Cenikor collected money from third-party partners, required patients to work while they were in the treatment program's primary phase, did not allow patients to possess money, and operated a program that lasted for 16-18 months. *Id*. However, if the panel had discussed the other circuits' opinions, it would have had to admit those courts addressed very similar facts. These are the common features of residential drug-rehabilitation programs, yet every other circuit nevertheless concluded that the patients' primary purpose was not to exchange their labor for room and board, but to achieve *sobriety* by building vocational skills and work ethic.

This new circuit split will not go unnoticed just because the panel declines to acknowledge the opposing cases. This Circuit now stands alone in rejecting the conclusions and analysis of all other circuits that addressed FLSA claims by drug-rehabilitation patients, volunteers, interns, or trainees. This Court should grant en banc review and rigorously analyze the case law to eliminate this unjustified circuit split. It should explain the proper test, apply that test to the record evidence, and reverse.

## II.    The panel contradicts *Swales* and other published decisions.

Second, the panel openly violates the procedure for FLSA collective certification this Court created in *Swales*, which then spurred the panel to make additional legal errors. *Swales*, 985 F.3d at 440-42.

### A.    The panel decided the merits, which the Supreme Court and this Court expressly forbids.

*Swales* explains that the Supreme Court's decision in *Hoffman-LaRoche* "strictly forbids district courts from appearing to endorse the merits of the litigation by means of facilitating notice" at the FLSA certification stage. *Id*. at 440.[4] *Swales* rejected *Lusardi*, in which the district court first provisionally certifies the collective, sends notice to prospective litigants, and reserves all consideration of the merits for a second stage of the litigation. *Id*. at 440-41. *Swales* teaches that a court must consider *all* the legal issues before deciding whether to certify the collective, to ensure that sending notice does not unnecessarily stir up litigation. *Id*. at 442. But the district court *must not actually decide the merits*. *Id*. This Court reiterated, "[c]onsidering, early in the case, whether merits questions can be answered collectively has nothing to do with endorsing the merits." *Id*.

---

[4] *Citing JPMorgan*, 916 F.3d at 501; *see Hoffman-LaRoche*, 493 U.S. at 174.

But the panel held that *Swales* requires courts to *actually decide* threshold merits questions. Slip op. at 6. The opinion states, "…the dispositive threshold issue must be resolved before a collective can be certified and notice can be sent." *Id*. (citing *Swales*, 985 F.3d at 441). The panel later affirms the district court's "*threshold* determination that the rehabilitation patients constitute 'employees' under the Act because they worked in expectation of compensation." *Id*. at 9-10 (emphasis in original). Yet *Swales, JPMorgan*, and *Hoffman-LaRoche* forbid courts to decide a merits issue at the certification stage. *Swales*, 985 F.3d at 440; *JPMorgan*, 916 F.3d at 501; *Hoffman-LaRoche*, 493 U.S. at 174.

One might wonder whether the panel intended the words "*threshold* determination" to mean a merely "preliminary" determination. *Compare* Slip op. at 9-10 (emphasis in original) *with id*. at 8. If so, that would be no less erroneous. *Swales*, 985 F.3d at 441-42. *Swales* has only one step: decide whether the proposed collective is "similarly situated" on all legal issues that will be decided at trial. *Id.* That analysis must *never* opine on the merits. *Id.*

The panel claims to "affirm" the district court, but it has actually gone further. Slip op. at 9-10. Because the district court wrongly held that all patients expected compensation in exchange for work, it announced it will

20

apply this Court's independent-contractor test at trial to determine FLSA "employee" status. ROA.1462-64, ROA.1468. The order conspicuously refuses to apply that test *now*. *Id*. The panel is the first to declare that courts must decide merits issues during certification. Slip op. at 9-10.

This Court should grant en banc review to prevent this misunderstanding of *Swales* from confusing other courts. Otherwise, the panel's opinion compels the district courts of the Fifth Circuit to defy *Hoffman-LaRoche*'s command "to avoid even the appearance of judicial endorsement on the merits of the action." *Hoffman-LaRoche*, 493 U.S. at 174.

## B. The panel misapplies the *Swales* burden of proof and misconstrues the law to moderate the effects of that error.

Additionally, this Court must enforce *Swales*'s holding about the burden of proof, and reject the panel's ensuing misinterpretation of federal law governing Cenikor's defenses.

First, the panel affirmed the district court's decision to place the burden of proof on *Cenikor* to show the collective was *not* similarly situated on Cenikor's affirmative defenses. Slip op. at 11 ("…Cenikor had not, at this stage, demonstrated they would require individualized inquiries…"). Instead, *Swales* places the burden of proof on the plaintiff to prove the

collective is "similarly situated" on all legal issues. *Swales*, 985 F.3d at 443 & n.65. The panel's published decision effectively repudiates *Swales*.

Second, because it misplaced the burden of proof, the panel then misinterpreted the law to assert that Cenikor's defenses presented no certification problems:

- <u>Offset</u>. The panel held the court can uniformly calculate any offset by aggregating the collective. Slip op. at 11-12; ROA.1467. This creates new legal errors. *Cf. id*. The district court expressly refused to consider this issue. ROA.1467 ("…damage calculations are premature at this certification stage..."). Instead of reversing this misinterpreation of *Swales* (delaying consideration of merits issues), the panel accepts *Plaintiff's argument* as if it were the district court's fact-finding. Slip op. at 11-12. Accordingly, no court has yet considered Cenikor's case law explaining why the court must calculate the offset in this case person-by-person and week-by-week, meaning the collective is not "similarly situated." Brief at 61-63. The panel's opinion both violates *Swales* and unthinkingly creates a difficult new precedent.

- <u>The Motor Carrier Act</u>. The MCA requires separate calculations for every patient that loaded 18-wheelers. Brief at 63-65. The panel holds the MCA does not apply because patients worked for Cenikor, not the third parties. Slip op. at 11. Plaintiffs did not brief this purported distinction in their Response,[5] and the panel's pronouncement creates a new conflict of law. This Court held a staffing company can assert the MCA defense. *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 472-73 (5th Cir. 2010).

Accordingly, this Court must grant en banc review to protect *Swales* and the integrity of the collective-certification process.

## III.  The opinion misconstrues federal privacy regulations and deprives patients of their rights.

Finally, this Court should grant en banc review because the panel's misapplication of federal privacy regulations strips rehabilitation patients of their rights.

The FLSA gives the district court discretion to send notice to potential members of a collective. *Swales*, 985 F.3d at 435-36. In this matter of first

---

[5] *See* Response Brief at 28-31.

impression for the circuit courts,[6] sending discretionary notice requires using and disclosing the identities of former substance-abuse patients, thereby pitting mandatory federal privacy laws against the Plaintiffs' interest in recruiting more litigants.

By enacting the Substance Abuse and Mental Health Services Act ("SAMHSA"), "Congress recognized that absolute confidentiality is … necessary to ensure successful alcoholism treatment." *Whyte v. Connecticut Mut. Life Ins. Co.,* 818 F.2d 1005, 1010 (1st Cir. 1987). Indeed, the Plaintiffs agreed they would not want to receive unsolicited communications about their time at Cenikor. ROA.1778; ROA.1826; ROA.1904; ROA.1972-73.

For that reason, SAMHSA prevents courts from disclosing "patient identifying information" (including names and contact information) unless courts find "good cause," which is a term of art.[7] 42 U.S.C. § 290dd-2(b)(2)(C); 42 C.F.R. § 2.64. Courts can only find statutory "good cause" after

---

[6] In the only case on point, a federal district court refused to order discovery from drug-rehabilitation patients because federal privacy concerns were too great. *See In re Employment Records of John Does Employed By Sharpe Holding, Inc.*, No. 417MC238-RLW, 2017 WL 6547738 (E.D. Mo. Dec. 20, 2017). The panel does not address this opinion.

[7] Other SAMHSA exceptions do not apply.

following specified procedures, and by making specified findings. *Id*.; *see* Brief at 67-71.

The panel affirms the district court's order without addressing the district court's disregard for these requirements, while discounting the long-lasting harm that sending notice will have on individuals seeking substance-abuse treatment privately. Slip op. at 13.

First, the district court chose not to give the patients notice and an opportunity to be heard before using their identifying information, as the statute requires, because it felt the mandate "redundant" and it would be "more sensible" to just send the former patients notice of the lawsuit. ROA.1470. District courts may not override Congress's mandatory procedures with their own value judgments, and this Court should not turn a blind eye when they do.

Second, the district court made only two of the four findings necessary to establish a statutory "good cause", which was conspicuous because Plaintiffs cannot prove the other two elements. ROA.1470. The opinion tries to fill in the missing findings for the first time on appeal, and creates new problems. Slip op. at 13. The panel holds that other ways of obtaining the patients' information would not be effective (the first requirement) because

Plaintiffs' outreach efforts on social media "only yielded 226 out of 2,736 individuals who participated in the Program." *Id*. This holding creates two new problems:

1. Empirical studies show the average opt-in rate after a court sends FLSA notice is about 15%,[8] so a pre-notice 226/2,736 response rate was effective. This *disproves* the panel's finding that there is "good cause" to send another notice that will destroy privacy protections.

2. The response rate might reflect patients' widespread *satisfaction* with Cenikor's program. Of course, in yet another comment on the merits, the panel holds the public has an interest in "enforcing labor laws against employers *who violate them*," so perhaps the panel already decided that Cenikor's patients must be dissatisfied. Slip op. at 13 (emphasis added).

The panel should never have tried to do its own fact-finding; it should have simply noted the district court's order was legally deficient and reversed.

---

[8] *See, e.g.*, Charlotte S. Alexander, *Would an Opt-In Requirement Fix the Class Action Settlement? Evidence from the Fair Labor Standards Act*, 80 Miss. L.J. 443, 467-68 (2010); Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 291 (2008).

## Conclusion

This Court should grant en banc review and reverse.

Respectfully submitted,

By: /s/ Chris Dove
David M. Gregory
Chris Dove
Andrew W. Reed
Kathleen Grossman
LOCKE LORD LLP
600 Travis Street, Suite 2800
Houston, Texas 77002
dgregory@lockelord.com
cdove@lockelord.com
andrew.reed@lockelord.com
kathleen.grossman@lockelord.com
Tel: (713) 226-1344
Fax: (713) 223-3717
**COUNSEL FOR PETITIONER**

Frank Sommerville
Texas State Bar No. 18842700
WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
3030 Matlock Rd., Suite 201
Arlington, Texas 76015
Telephone (817) 795-5046
Facsimile (800) 556-1869
fsommerville@wkpz.com
**OF COUNSEL FOR PETITIONER**

## Certificate Of Service

The undersigned hereby certifies that a true and correct copy of the foregoing Petition for Rehearing En Banc was served on all counsel of record on August 30, 2023 via CM/ECF filing:

**Representing All Plaintiffs/Appellees:**
**Josh Borsellino**
Borsellino, P.C.
3267 Bee Cave Rd., Ste. 107, PMB # 201
Austin, TX 78746
Email: josh@dfwcounsel.com

**Representing Malik Aleem, John Potter, and Anthony Woods:**
**Charles Stiegler**
Stiegler Law Firm
318 Harrison Ave., Suite 104
New Orleans, LA 70124
Email: charles@stieglerlawfirm.com

**Representing John Potter and Anthony Woods:**
**James R Bullman**
Blackwell & Bullman, LLC
8322 One Calais Ave
Baton Rouge, LA 70809
Email: james@estesdavislaw.com

**Representing Anthony Woods:**
**Josh Sanford**
Sanford Law Firm, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, AR 72211
Email: josh@sanfordlawfirm.com

*/s/ Chris Dove*
Chris Dove

## Certificate Of Compliance With Type-Volume Limitation, Typeface Requirements, And Type-Style Requirements

1.  This Petition complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) and 5th Cir. R. 35.5 because it contains **3,893** words, excluding the parts exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 pt. Book Antiqua.

/s/ Chris Dove
Chris Dove
*Attorney for Appellant*

# Exhibit A:  List of Opt-In Plaintiffs

The names of the individuals – as reflected in PACER and/or in the periodically filed consent forms – who have filed notices of consent in one of the consolidated cases (No. 4:19-cv-1583, No. 4:19-cv-3031, 4:19-cv-3032, 4:19-cv-3033, and 4:19-cv-4569) to join as a putative opt-in plaintiff are listed below:

1.      Adams, Candice
2.      Adhosy, Dwight
3.      Alaniz, Cody
4.      Allen, Clarence
5.      Almand, Kara
6.      Anuario, Vincent
7.      Archer, II, William Edward
8.      Arnold, Colby
9.      Arrizola, Nicholas Corey
10.     Ayo, Corey
11.     Babin, Suzanne
12.     Baker, Daniel Craig
13.     Ballard, Jason Evert
14.     Barnett, Delories Kay
15.     Barnett, Jacquelin
16.     Bartholomew, Michael F.
17.     Battiste, Sean S.
18.     Baye, Stuart
19.     Belk, Timothy Wayne
20.     Bennett, Brent
21.     Berger, Alexa
22.     Bergfeld, Amber
23.     Bergfeld, Boone Blair
24.     Bergman, Christopher M.
25.     Bourgeois, Cory
26.     Bragg, Ashley
27.     Brin, Charlie
28.     Brinkley, Edward
29.     Brousseau, John Patrick
30.     Brown, Austen P.

31.     Brown, Roderic
32.     Broyles, Lucas
33.     Buchanan, Gregory
34.     Burgess, Cory
35.     Burnette, Jennifer
36.     Busby, Ethan
37.     Butler, Jason
38.     Cabrera, Brennan
39.     Campbell, James Edward
40.     Campbell, Jordan Elaine
41.     Campbell, Joshua
42.     Caperton, Matthew
43.     Cardenas, Brittney Kaye
44.     Carlson, Rodney
45.     Carroll, Christian Alice
46.     Carroll, Dustin D.
47.     Carrow, Christopher
48.     Cavness, Renee
49.     Cenkus, Ethan
50.     Cerda, Francisco
51.     Chauvin, Dorna
52.     Cheatham, Stephen
53.     Chouest, Avia
54.     Circello, Jamies
55.     Clark, Christian
56.     Clark, Daunte Darre
57.     Cloyd, Brian
58.     Cofer, Hershal
59.     Collins, Esteban
60.     Conner, Chelsea
61.     Conrad, Charles Glen
62.     Cook, Connnie
63.     Cortello, Amanda
64.     Covington, Jerry Allen
65.     Cross, Christopher
66.     Cutrer, Samuel Wayne
67.     Daniels, Mattie

68.    Dansereau, Chase
69.    Davis, III, Escar Wayne
70.    Davis-Alvarez, Wendy
71.    Decuier, Byron
72.    Delesma, Mark
73.    Demas, Jr., Donald Ralph
74.    Devlin, Josh
75.    Dobbs, Malerie Martinez
76.    Duckworth, Myra
77.    Dunn, Corey
78.    Dunn, Dwayne
79.    Dunn, Shelbey
80.    Duplaisir, Daniel
81.    Dupuis, David
82.    Dyer, James
83.    Dyer, James Andrew
84.    Ellis, Vanessa
85.    Ellison, Adam Joseph
86.    Engle, Hiram Edward
87.    Escareno, Josue
88.    Eskine, Andrew J.
89.    Evans, Charles
90.    Fairris, Jessica
91.    Featherton, Adam
92.    Fiddling, Stacey
93.    Fisher, Chloe
94.    Fletcher, Brandon Nicholas
95.    Flowers, Jesse
96.    Flowers, Robert
97.    Ford, Gerald
98.    Forrester, Daniel
99.    Franklin, Grant
100.   Franklin, Ronald
101.   Fraser, Lecretia
102.   Freeman, Brandi
103.   Fremin, Ryan
104.   French, Trevor

105.     Frontz, Matthew Brady
106.     Fruge, Tina
107.     Galloway, David
108.     Gilmore, Nicole
109.     Gilpin, Dustin Cole
110.     Goodman, James
111.     Govea, Luis Rogelio
112.     Granger, Jacob Ryan
113.     Green, Calvin
114.     Green, Christopher
115.     Greenfield,  Theresa Lynn
116.     Greenshields, Theresa Lynn
117.     Guillard, Wesley
118.     Guiterrez, Andrew
119.     Handy, Ivery
120.     Harmon, Alicia Sherriff
121.     Harris, Aaron
122.     Harrison, Christopher
123.     Harrison, Jeremiah J.
124.     Hawkins, Cedric
125.     Haydel, Russell
126.     Horton, Debra Nicole
127.     Houk, Samuel W.
128.     Hyatt, Mark Richard
129.     Jackson, James Lee
130.     Jackson, Krystle
131.     Janner, Coe
132.     Jenkins, Adrian
133.     Johnson, Adam Ross
134.     Johnson, Russell
135.     Kiebach, Grace
136.     Koon, Christopher B.
137.     Lance, Mark Anthony
138.     Langford, Kaleb
139.     Lawson, Jared Scot
140.     LeBouf, Shaon Ren'ee
141.     Lirette, Beau Luke

142.    Logan, Samantha
143.    London, John Eugene
144.    Lucio, Kimberly
145.    Madden, Kevin
146.    Marino, Paul Lee
147.    Martin, Ernie
148.    Martinez, Erica
149.    Martinez, Jose
150.    Mashburn, Michael
151.    Mason, Jonathan James
152.    Mauldin, Emmanuel
153.    Mays, Shane
154.    McDonald, Austin Rayce
155.    McDonald, Jacob
156.    McKinley, Daron James
157.    McKinney, Ivan
158.    Mendow, Chris
159.    Miles, Mark
160.    Miller, Terri Rena
161.    Minshew, Eric Shane
162.    Montilla, Sanderson
163.    Mouret, Jared
164.    Nickens,  Jeramy
165.    Ostendorf, George
166.    Payne, Christopher
167.    Perez, Jim
168.    Perry, Jameson Robert
169.    Porche, Ian
170.    Porretto, Brandi
171.    Pouralifazrl,  Tiffany
172.    Prejean, Jay Arthur
173.    Primeaux, Joey
174.    Rainwater, James
175.    Ralls, Michael Hunter
176.    Rauda, Erik
177.    Renfro, Bryce Daniel
178.    Rhone, Ronald

179.    Rivas-Mcquery, Michael
180.    Rodriguez, Emmanuel
181.    Rogers, Ashley
182.    Roots, Phillip
183.    Samudio-Penick, Ginamarie
184.    Sepulvado, Hillary
185.    Smith, Douglas William
186.    Smith, Jr., William R.
187.    Smith, Timothy R.
188.    Sorrell, Jacob
189.    Spagna-Mans, Mary Ann
190.    Spanos, Jeffrey William
191.    Stephney, Christopher
192.    Stidham, Tameka
193.    Strecker, Deborah
194.    Sullivan, Brandon L.
195.    Sullivan, Joy
196.    Swink, Jeremy Wayne
197.    Sykes, James
198.    Szabo, Brandon
199.    Teran, Ricardo
200.    Thedford, Michael
201.    Thomas, Arthur
202.    Thompson, Brandon Keith
203.    Urrutia, Corey O'Keith
204.    Velasquez, Joan Manuel
205.    Veuleman, Donald
206.    Vincent, Matthew
207.    Vreeland, Michael Hayden
208.    Wachs, Dustin
209.    Walton, II, Richard Byron
210.    Ward, Jennifer Ellen
211.    Weiser, Blake Nicholas
212.    Whatley, Alana
213.    White, Katrina
214.    Williams, Alester
215.    Williams, Ronnie

216.     Williams, Shelby
217.     Williams, Vincent Cody
218.     Wilson (Tabak), Jennifer
219.     Wilson, Jeremy Logan
220.     Wilson, Jr., Charles E.
221.     Woods, James
222.     Woods, Marlon
223.     Wright, Adam Wayne
224.     Ybarra, Gregory
225.     Yongue, Shane
226.     Zimmerman, Ryan

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 16, 2023

Lyle W. Cayce
Clerk

---

No. 22-20434

---

TIMOTHY KLICK; WILTON CHAMBERS; MALIK ALEEM; JOHN POTTER; ANTHONY D. WOODS,

*Plaintiffs—Appellees*,

*versus*

CENIKOR FOUNDATION,

*Defendant—Appellant.*

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-1583

---

Before GRAVES, HIGGINSON, and DOUGLAS, *Circuit Judges*.

DANA M. DOUGLAS, *Circuit Judge*:

Cenikor Foundation brings this interlocutory appeal challenging the district court's determination that a collective action of its drug rehabilitation patients may proceed under the Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. § 201, *et seq.* Finding that the district court applied the correct legal standards and did not abuse its discretion in certifying a collective action, we AFFIRM.

No. 22-20434

## I.

### A.

Cenikor Foundation is a 501(c)(3) nonprofit rehabilitation center assisting individuals with alcohol and/or drug addiction, as well as behavioral health issues, with locations throughout Texas and Louisiana.  At issue in this lawsuit is an adult long-term inpatient treatment program ("the Program" throughout) run by Cenikor, in which patients were assigned jobs and required to work.[1]

Cenikor describes the Program in therapeutic language, calling it "vocational therapy" which involves a "highly regulated regimen with clearly stated expectations for behavior and psychological and behavioral rewards," including "morning and evening house meetings, job assignments, group sessions, seminars, personal time, recreation, and individual counseling."  Appellees describe Cenikor as a "staffing agency" who has "outsourced its patients through its Work Program to work for various private companies" to its benefit.

The Program included three specific phases: orientation, primary treatment, and reentry.  During the orientation phase, lasting up to 60 days, patients "learned the rules of the program, participated in group and individual therapy, and worked with counselors to develop an individualized treatment plan."  When patients entered the primary treatment phase, lasting 16 to 18 months, Cenikor added "vocational therapy and training to the patients' program."  The "vocational therapy" took place either in Cenikor's own facilities[2] or with one of the "community businesses" that

---

[1] Since the summer of 2021, Cenikor had discontinued the Program.

[2] The patients who worked within Cenikor's facilities are not a part of the proposed collective.

partnered with Cenikor, and patients did not keep any of the money from their work. If patients reached the reentry phase, they were required to find full-time employment and arrange for a permanent residence and reliable transportation to complete the Program. It was only during this phase that patients began earning wages from their employer directly.

Many long-term patients received treatment for free or at a reduced rate. All patients received access to room, board, food, clothing, security, counseling, transportation, and medical care during their tenure. Every patient signed a form explaining that Cenikor's "comprehensive therapeutic treatment program includes work assignments as part of rehabilitation" and "[r]esidents receive no monetary compensation for assigned responsibilities in the facility, or any on-the-job training during the primary treatment phase." By signing, the patients attested that "I further understand that under no circumstances can Cenikor be under any obligation to me; that I am a beneficiary and not an employee." Instead of making money off their "vocational therapy," patients attested that they understood that the funds paid to Cenikor "go directly back to the Foundation to help offset the cost of treatment services." To further offset costs, Cenikor also required patients to apply for government assistance, such as food stamps, and assign those benefits to Cenikor.

As part of the Program, Cenikor had contracts with community business partners ("outside businesses" throughout) to provide Program participants for particular jobs. These outside businesses were then billed by Cenikor for the hours worked by the Program participants. In 2017, Cenikor billed these outside businesses more than $7 million dollars for the labor of the Program participants. In 2018, Cenikor invoiced $6.9 million dollars to these outside businesses. Cenikor was paid directly for the labor provided by the Program participants at rates contractually agreed upon between Cenikor and the outside businesses. In accordance with labor laws governing

overtime pay, Cenikor also charged outside businesses an overtime premium of 1.5 times the regular hourly rate when participants worked more than 40 hours a week.[3]

Cenikor paid for workers' compensation insurance for all Program participants and marketed this benefit to potential outside business partners. The Program did not vary across locations. Cenikor decided which outside businesses its patients were assigned to, and if an outside business wished to change the job duties of a patient, it was required to first obtain Cenikor's permission to do so.

If a patient refused a work assignment, they would be disciplined by Cenikor, up to and including termination from the Program and removal from the facilities. Cenikor's intake forms specifically stated that if "unable to particulate" in the Program, participants would "be subject to termination from Cenikor."

**B.**

In 2019, after the Center for Investigative Reporting published a series of podcasts and articles "reporting that Cenikor had sent thousands of individuals in Louisiana and Texas to work without monetary compensation at major companies such as Walmart, Shell, and ExxonMobil," various plaintiffs filed six different lawsuits against Cenikor in three different federal district courts. Named plaintiff Klick filed the first suit in the Southern

---

[3] The contract with the outside businesses regarding overtime pay provided: "Vocational workers are presumed to be *nonexempt from laws requiring premium pay for overtime and holiday work*, or weekend work." (emphasis added). Although the contract clearly identified Cenikor's patients as "nonexempt" from laws requiring premium pay, its CFO testified that it was intended to mean the patients were considered "volunteers." However, Cenikor could and did bill these outside businesses overtime whenever a patient worked more than 40 hours in a week.

District of Texas, and all lawsuits were transferred to that court and consolidated on February 25, 2020. Shortly after the case was filed, the plaintiffs filed motions for conditional certification under the then-widely used framework for conditional certification established in *Lusardi v. Xerox Corp.*, 118 F.R.D. 341 (D.N.J. 1987). Following this court's decision in *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 434 (5th Cir. 2021), which rejected the *Lusardi* framework, and because Plaintiffs indicated that they would file an amended motion for certification following pre-certification discovery, the district court found the pending motions were moot and denied them without prejudice.

The parties then exchanged written discovery and held depositions of the named plaintiffs and a 30(b)(6) corporate representative of Cenikor. A total of 226 individuals consented to join the lawsuit as plaintiffs of the 2,736 individuals that had participated in the Program since May of 2016.

Following a renewed motion for certification, the district court certified a collective action under the FLSA. Specifically, the district court certified a "proposed class of individuals who participated in the primary phase of Cenikor's long-term residential program from May 2016 to the present and performed work for outside businesses or individuals without monetary compensation." Cenikor filed this interlocutory appeal pursuant to 28 U.S.C. § 1292 and now asks this court to reverse the district court's decision to certify a collective action.

## II.

This court reviews *de novo* the appropriate legal standard to apply when determining whether an individual is an employee under the FLSA. *Swales*, 985 F.3d at 439. Once the correct legal standard is ascertained, we review the district court's decision certifying a collective action for abuse of discretion. *Id.* "A district court abuses its discretion if it bases its decision on

an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005).

## III.

The Fair Labor Standards Act of 1983 created "a comprehensive federal wage-and-hour scheme." *Aldridge v. Miss. Dept. of Corrs.*, 990 F.3d 868, 871 (5th Cir. 2021). Congress enacted the FLSA to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general wellbeing of workers." *Id.* The principal purpose of the Act is "to protect all covered workers from substandard wages and oppressive working hours." *Id.* (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). Workers covered under the Act are entitled to a minimum wage and overtime compensation. 29 U.S.C. §§ 206-07.

"The FLSA protects employees (not independent contractors) ...." *Swales*, 985 F.3d at 434. Moreover, collective actions may only proceed under the FLSA so long as the potential members are "similarly situated." *Id.* at 433. "District courts should 'rigorously enforce [the FLSA's similarity requirement] at the outset of the litigation." *Id.* at 443. In determining whether "employees" are "similarly situated," district courts must scrutinize all facts and legal considerations material to determining such status, including merits questions. *Id.* at 434, 441-42. Here, where a merits question is wrapped up in a threshold determination—whether the rehabilitation patients are considered employees entitled to compensation under the FLSA—the dispositive threshold issue must be resolved before a collective can be certified and notice can be sent. *See id.* at 441 ("The fact that a threshold question is intertwined with a merits question does not itself justify deferring those questions until after notice is sent out.").

**A.**

Cenikor argues that the district court applied the wrong legal standard to determine whether Cenikor's patients were FLSA "employees." Appellees argue that the district court properly applied binding Supreme Court precedent to the facts of this case in finding that the employment question may be decided on a collective-wide basis.

Collective actions can be certified as to the very question of whether a specific group of individuals qualify as "employees" under the FLSA. *See Hobbs v. Petroplex Pipe and Const., Inc.*, 946 F.3d 824, 828-29 (5th Cir. 2020). While the determination of whether an individual is an "employee" is a matter of law, there are often associated factual inquiries required before such a determination can be made. The ultimate determination turns on the "economic reality" of the relationship between the parties involved. *See Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 301 (1985). While a finding of "whether a worker is an employee for FLSA purposes is a question of law," *Parrish v. Premier Directional Drilling, LP*, 917 F.3d 369, 377 (5th Cir. 2019), the "economic-reality" test requires the application of facts that may be in dispute, as they are here. *See Hopkins v. Cornerstone Am.*, 545 F.3d 338, 346 (5th Cir. 2008).

Both parties agree that central to this analysis—whether Cenikor's rehabilitation program participants are employees under the FLSA—is the Supreme Court decision in *Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290 (1985). We agree with the parties that *Alamo* should guide this determination. The Tony and Susan Alamo Foundation was a nonprofit religious organization that derived its income largely from the operation of commercial businesses staffed by the Foundation's "associates," most of whom were "drug addicts, derelicts, or criminals" before their rehabilitation at the Foundation. *Id.* at 292. These workers received no cash salaries, but

were provided with food, clothing, shelter, and other benefits. *Id.* The Secretary of Labor filed an action against the Foundation alleging violations of the minimum wage, overtime, and record keeping provisions of the FLSA. *Id.* at 293.

The Supreme Court held that "[A]n individual who, *without promise or expectation of compensation*, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit, is outside the sweep of the act." *Id.* at 295 (internal quotation omitted) (emphasis added). Although the associates themselves protested coverage under the Act, the Supreme Court determined this was not dispositive, since the test of employment under the Act is one of "economic reality." *Id.* at 301. The fact that the compensation was primarily in the form of benefits rather than cash was "immaterial" in this context, "such benefits being wages in another form." *Id.* Since the associates received in-kind benefits and were dependent on the Foundation for long periods of time, the Supreme Court held that the district court did not clearly err in finding they were "employees" within the meaning of the Act. *Id.*

Contrary to Cenikor's arguments, the district court properly relied on *Alamo* in answering the threshold question of whether the patients are "employees" under the Act by certifying a collective that seeks to answer that question on the merits through ongoing litigation The district court noted that although the rehabilitation patients may have known they would not be monetarily compensated during the Program, "they nonetheless understood they would be provided with in-kind benefits." It pointed to the Consent for Services agreement where program participants agreed to work for outside businesses and receive in-kind benefits, such as housing, food, medical care, and clothing. The district court thus found that the Program participants worked "in exchange" for in-kind benefits. The fact that the Program participants who made it to the reentry phase had to pay Cenikor

No. 22-20434

for rent and transportation fees provided additional support for the district court's determination. The district court went on to distinguish this case from others relied upon by Cenikor, emphasizing that Cenikor collected nearly $14 million dollars from outside businesses for the labor of its Program participants within two years, that participants were required to work at risk of termination from the Program, could not possess money, and were economically dependent on Cenikor for 16 to 18 months.

Cenikor relies on *Williams v. Strickland*, 87 F.3d 1064 (9th Cir. 1995), claiming that it modeled the language in its Consent for Services agreement after the language there. In *Williams*, a participant of the Salvation Army Rehabilitation Center brought claims that he was an employee under the FLSA during his six-month stay, in which he was offered room, board, work therapy, and spiritual counseling and engaged in a treatment plan in-house refinishing furniture sold through Salvation Army's thrift stores. *Id.* at 1065. Williams signed a "Beneficiary's Admittance Statement" that indicated the Salvation army was under no obligation to him and that he was a beneficiary, not an employee. *Id.* A majority of the Ninth Circuit held that he was not an employee because he had "neither an express nor an implied agreement for compensation with the Salvation Army and thus was not an employee." *Id.* at 1067. However, we do not find *Williams* persuasive. *Alamo* and its predecessor cases explicitly hold that rights under the FLSA cannot be waived, *see e.g., Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704-05 (1945), and any forms patients sign indicating that they are beneficiaries and not employees do not control this analysis.

Because the district court utilized *Alamo* in reaching its decision, it relied on the appropriate legal standard. Its *threshold* determination that the rehabilitation patients constitute "employees" under the Act because they worked in expectation of compensation was not an abuse of discretion. "[T]he district court needed to consider the evidence relating to this

threshold question in order to determine whether the economic-realities test could be applied on a collective basis." *Swales*, 985 F.3d at 442. It properly did so here and found the merits question could be answered collectively based on ample evidence in the record from preliminary discovery.

## B.

Cenikor also takes issue with the district court's finding that the rehabilitation patients were "similarly situated" to each other for purposes of certifying a collective action. As noted, plaintiffs bear the burden of proving a collective is similarly situated. *Swales*, 985 F.3d at 442-43. The statute, however, does not define "similarly situated." *Id.* at 435. As this court explained in *Swales*, "to determine if and when to send notice to potential opt-in plaintiffs," "a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *Id.* at 441.

A showing that members of a collective action are similarly situated does not require members to be identically situated but requires plaintiffs to show a demonstrated similarity between the purported collective, such as a factual nexus that binds the claims together so that hearing all claims in one proceeding is fair to all parties and not beset with individual inquiries. *See id.* at 443. This necessarily requires a consideration of proposed defenses to determine whether they are so individualized that denial of certification is required.

After the completion of preliminary discovery, the district court determined that the evidence and testimony showed that the key aspects in determining the ultimate merits question of whether an employer/employee relationship exists may be determined on a collective-wide basis because: (1) all patients signed the same paperwork disclaiming employee status and stating they would not be paid during the primary phase; (2) the paperwork

promised that Cenikor would provide all basic personal needs including housing, food, emergency medical care, and clothing; (3) all plaintiffs agreed to perform work to receive these in-kind benefits; (4) all program participants received their work assignments and schedules from Cenikor; and (5) all plaintiffs were subject to the same organization-wide policies and procedures irrespective of location. The district court ultimately concluded that it could determine collectively the central question whether the primary phase participants were employees under the FLSA because all proposed members were subject to a company-wide policy in which they performed labor without monetary compensation.

## C.

Cenikor next argues that its rehabilitation patients are not similarly situated because the district court handled its defenses in a way that contravenes *Swales*. Appellees argue that the district court correctly determined that these defenses could be addressed collectively.

Turning to Cenikor's three proposed defenses — the Motor Carrier Act ("MCA") exemption, the offset defense, and the *Rooker-Feldman* doctrine — the district court properly concluded that these defenses were either inapplicable or that Cenikor had not, at this stage, demonstrated they would require individualized inquiries.

To qualify for the MCA exemption, a loader aka "an employee of a carrier" must have duties that include, "among other things, the proper loading of his *employer's* motor vehicles." 29 C.F.R. § 782.5(a) (emphasis added). Here, there is no allegation that any of the outside businesses were the patients' employer. Instead, Cenikor is the sole employer defendant. Accordingly, the MCA defense does not apply to any individual patient.

Regarding the offset defense, the district court noted plaintiffs' argument that the calculations could be completed on a class-wide basis – "by

subtracting aggregate costs from aggregate payments and dividing by the number of participants to determine an average." Because these benefits could be deducted in a uniform manner, they should not warrant individualized inquiries.

Finally, as to the *Rooker-Feldman* doctrine, the Fifth Circuit recognizes, in conformity with the Supreme Court, that *Rooker-Feldman* is a narrow jurisdictional bar. *See Truong v. Bank of America, N.A.*, 717 F.3d 377, 381-82 (5th Cir. 2013) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The doctrine applies only "where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Lance v. Dennis*, 546 U.S. 459, 466 (2006). Here, this doctrine has no bearing on the alleged FLSA claims. Appellees are not "state court losers" who are challenging state court decisions that require them to attend Cenikor's rehabilitation treatment center in lieu of serving jailtime. Rather, they are challenging Cenikor's decision not to pay them for their labor in violation of federal law.

Here, the claims and defenses largely turn on the same question: whether the rehabilitation patients are employees under the FLSA. The district court applied the correct legal standard to determine if plaintiffs were similarly situated in applying *Swales*. Furthermore, the district court did not abuse its discretion in considering Cenikor's defenses and determining that merits determinations could be considered collectively.

**D.**

Finally, Cenikor argues that the district court erred in requiring it to provide the contact information of patients to provide notice of the lawsuit because federal privacy laws strictly forbid such disclosure without good cause. Appellees counter that they have satisfied the good cause standard required to permit disclosure of patients' names and contact information.

No. 22-20434

Disclosure of patient records in federally funded drug and alcohol abuse treatment programs is governed by the Substance Abuse and Mental Health Services Act ("SAMHSA"). Cenikor is correct that federal law prevents disclosure of records containing the identity of patients maintained in connection with the performance of any program or activity relating to substance abuse treatment. *See* 42 U.S.C. § 290dd-2(a); 42 C.F.R. §§ 2.11-13. However, § 290dd-2 permits disclosure of patient identifying information if authorized by "an appropriate order of a court." 42 U.S.C. § 290dd-2(b)(2)(C). A party seeking disclosure must establish good cause by showing that: (1) other ways of obtaining the information are not available or would not be effective; and (2) the public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship, and the treatment services. 42 C.F.R. § 2.64(d).

Good cause for notice is satisfied here. As the district court found, although Cenikor points to "publicized news articles and social media posts" as alternatives to obtain the names and contact information, these attempts previously only yielded 226 out of 2,736 individuals who participated in the Program, and thus have not been particularly effective. Additionally, the public interest in enforcing federal labor laws against employers who violate them outweighs potential injury to the patient and/or physician-patient relationship, especially where the Program no longer exists as of 2021 for such relationships to exist. The district court also imposed appropriate safeguards to protect against unauthorized disclosures by entering a protective order. Accordingly, the district court did not err in requiring Cenikor to send notice to potential opt-in plaintiffs.

## IV.

Here, the district court applied the correct legal standards to this case in its reliance on *Alamo* and *Swales* and appropriately concluded that it could

No. 22-20434

decide the central question of whether the Program participants were employees under the FLSA who were entitled to compensation collectively. We find no abuse of discretion.

AFFIRMED.