Nos. 22-20434

# United States Court of Appeals for the Fifth Circuit

---

**TIMOTHY KLICK, et al.,**

*Plaintiffs-Appellees*,

v.

**CENIKOR FOUNDATION,**

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Southern District of Texas—No. 4:19-CV-1583

---

## BRIEF OF AMICI CURIAE CAAIR, INC., SIMMONS FOODS, INC., AND SIMMONS PET FOOD, INC. IN SUPPORT OF APPELLANT AND REHEARING EN BANC

---

| | |
|---|---|
| Randall E. Long | Christopher S. Thrutchley |
| Rhodes Hieronymus Jones Tucker & Gable, PLLC | Amelia A. Fogleman |
| | Justin A. Lollman |
| P.O. Box 21100 | GableGotwals |
| Tulsa, Oklahoma 74121-1100 | 110 N. Elgin Ave., Suite 200 |
| (918) 582-1173 | Tulsa, Oklahoma 74120-1495 |
| | (918) 595-4800 |
| *Counsel for CAAIR, Inc.* | *Counsel for Simmons Foods, Inc. and Simmons Pet Food, Inc.* |

{2758601;}

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

CORPORate DISCLOSURE STATEMENT ................................................v

IDENTITY, INTEREST, AND AUTHORITY TO FILE............................1

ARGUMENT..........................................................................................................1

    A. The panel misconstrued *Alamo*'s holding, treating a factual finding from the case as entitled to precedential effect. ....................................3

    B. The panel applied an incorrect definition of "compensation." .......... 6

    C. The panel erred in failing to consider the rehabilitative purpose of the work Plaintiffs performed in the Cenikor program. ..............................7

    D. The panel overlooked relevant evidence bearing on the rehabilitative purpose of Plaintiffs' work in the Cenikor program...........................10

CONCLUSION .................................................................................... 11

CERTIFICATE OF COMPLIANCE ..................................... 12

CERTIFICATE OF SERVICE ............................................ 12

# TABLE OF AUTHORITIES

*Cases:*

*Acosta v. Cathedral Buffet, Inc.*,
   887 F.3d 761 (6th Cir. 2018).................................................................2

*Ark. Lighthouse for the Blind v. N.L.R.B.*,
   851 F.2d 180 (8th Cir. 1988).................................................................9

*Armento v. Asheville Buncombe Cmty. Christian Ministry, Inc*,
   856 F. App'x 445 (4th Cir. 2021).........................................................6

*Blair v. Wills*,
   420 F.3d 823 (8th Cir. 2005).................................................................7

*Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*,
   508 U.S. 602 (1993) ..............................................................................5

*Donovan v. Tony & Susan Alamo Found.*,
   567 F. Supp. 556 (W.D. Ark. 1982) .....................................................4

*Fochtman v. Hendren Plastics, Inc.*,
   47 F.4th 638 (8th Cir. 2022) ..................................................... 6, 7, 8, 9

*Graves v. Women's Prof'l Rodeo Ass'n, Inc.*,
   907 F.2d 71 (8th Cir. 1990) ..................................................................2

*Henson v. HOW Found.-State Ins. Fund*,
   970 P.2d 604 (Okla. 1998) ....................................................................9

*Juino v. Livingston Par. Fire Dist. No. 5*,
   717 F.3d 431 (5th Cir. 2013)............................................................2, 6

*Kerrivan v. R.J. Reynolds Tobacco Co.*,
   953 F.3d 1196 (11th Cir. 2020).............................................................5

*Rutland v. Pepper*,
   404 F.3d 921 (5th Cir. 2005).................................................................2

*Serapion v. Martinez*,
   119 F.3d 982 (1st Cir. 1997).................................................................2

*Tony & Susan Alamo Found. v. Sec'y of Labor*,
    471 U.S. 290 (1985) .......................................................................... *passim*

*United States v. Heald*,
    165 F. Supp. 3d 765 (W.D. Ark. 2016) ................................................ 4

*Vanskike v. Peters*,
    974 F.2d 806 (7th Cir. 1992) ............................................................... 1

*Vaughn v. Phoenix House Found., Inc.*,
    2019 WL 568012 (S.D.N.Y. Feb. 12, 2019) ................................. 6, 7, 8

*Vaughn v. Phoenix House New York Inc.*,
    957 F.3d 141 (2d Cir. 2020) ......................................................... 6, 8, 9

*Walling v. Portland Terminal Co.*,
    330 U.S. 148 (1947) ............................................................................. 2

*Walling v. Jacksonville Terminal Co.*,
    148 F.2d 768, 769 (5th Cir. 1945) ....................................................... 2

*Williams v. Strickland*,
    87 F.3d 1064 (9th Cir. 1996) ..................................................... 6, 8, 9, 10

**Statutes & Rules**

Fed. R. App. P. 29 ..................................................................................... 1

**Other Authorities:**

Bryan Garner, et al., *The Law of Judicial Precedent* 382 (2016) ............... 5

Donald Shepard et al., *The Value of Vocational Rehabilitation in Substance Abuse Treatment: A Cost-Effective Framework*, 39 Substance Use & Misuse 2581 (2004) ................................................................................................. 9

Harry Stern, *Employment Training for Disadvantaged or Dependent Populations*, 17 Int'l J. Addictions 51 (1982) ........................................................... 10

Jonathan Masur, et al., *Deference Mistakes*, 82 U. Chi. L. Rev. 643 (2015) ....... 6

Kathleen Kemp, et al., *Developing Employment Services for Criminal Justice Clients Enrolled in Drug User Treatment Programs*, 29 Substance Use & Misuse 2491 (2004) ...................................................................................8

Substance Abuse and Mental Health Services Administration, *Integrating Substance Abuse Treatment and Vocational Services* (2014).................. 8, 9, 10

## CORPORATE DISCLOSURE STATEMENT

In compliance with Fed. R. App. P. 26.1 and 29(b)(4), Simmons Foods, Inc. and Simmons Pet Food, Inc. are both Arkansas corporations with no parent corporations. CAAIR, Inc. is an Oklahoma non-profit corporation with no parent corporations. No publicly held company owns 10 percent or more of any amicus's stock.

# IDENTITY, INTEREST, AND AUTHORITY TO FILE

CAAIR is a non-profit organization dedicated to providing recovery services for men struggling with drug and alcohol addiction. CAAIR is a work-based program, operating on a similar model to Defendant-Appellant Cenikor Foundation. Simmons Foods and Simmons Pet Food have a history of partnering with CAAIR to provide vocational opportunities for CAAIR participants.

Amici have an interest in the issues before this Court, particularly its review of the panel's holding that Cenikor participants are "employees" of the organization as a matter of law. Amici are defendants in a similar lawsuit, involving claims under the Fair Labor Standards Act ("FLSA"), pending before the Northern District of Oklahoma.

Simmons Foods and Simmons Pet Food funded the preparation and submission of this brief, which was authored by their counsel. Amici seek leave of the Court to file this brief under Fed. R. App. P. 29(b)(2).

# ARGUMENT

The one threshold requirement of any employment relationship under the FLSA is a bargained-for exchange of labor for compensation—in short, a "remunerative relationship." *Vanskike v. Peters*, 974 F.2d 806, 809 (7th Cir. 1992). Those who perform work "without promise or expectation of compensation" are "outside the sweep of the Act." *Tony & Susan Alamo Found. v. Sec'y of Lab*, 471 U.S. 290, 295 (1985). Only if this threshold requirement is met is it then necessary to analyze the broader totality of the circumstances to determine

whether a worker is an "employee" under the more fact-intensive economic realities test. *Acosta v. Cathedral Buffet, Inc.*, 887 F.3d 761, 766 (6th Cir. 2018).

The remuneration requirement is meant to ensure that the FLSA *regulates* employment relationships rather than *creating* them. As this Court has noted, "the idea of compensation in exchange for services" is "[c]entral to the meaning" of employment. *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 436, 439 (5th Cir. 2013) (quoting *Graves v. Women's Prof'l Rodeo Ass'n, Inc.*, 907 F.2d 71, 73 (8th Cir. 1990)).[1] The FLSA does not change that. The Act was "not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947). Rather, "[t]he Act's purpose as to wages was to insure that every person whose work contemplated compensation should not be compelled to sell his services for less than the prescribed minimum wage." *Id.* In short, "the purpose of the [FLSA] was not to create new wage liabilities, but where a wage liability exists, to measure it by the standards fixed by law." *Walling v. Jacksonville Terminal Co.*, 148 F.2d 768, 769 (5th Cir. 1945).

Here, relying exclusively on the Supreme Court's *Alamo* decision, the panel held, as a matter of law, that Plaintiffs expected compensation in return for their

---

[1] *Juino* and *Graves* are Title VII cases. Because the FLSA and Title VII contain near-identical definitions of "employee," courts have "endorse[d] the practice of treating judicial precedents interpreting one such statute as instructive in decisions involving another." *Serapion v. Martinez*, 119 F.3d 982, 985 (1st Cir. 1997); *accord Rutland v. Pepper*, 404 F.3d 921, 924 n.2 (5th Cir. 2005).

labor. In doing so, the panel distorted *Alamo*'s holding, applied an incorrect definition of "compensation," and ignored relevant evidence. Amici address these errors in turn.

### A. The panel misconstrued *Alamo*'s holding, treating a factual finding from the case as entitled to precedential effect.

The panel first erred in treating a factual finding from *Alamo* as entitled to precedential effect. *Alamo* involved an FLSA action brought by the Secretary of Labor against the Alamo Foundation, a nonprofit, religious organization. *Id.* at 292–93. The Foundation operated a number of commercial businesses, staffed by its religious converts, referred to as "associates." *Id.* at 292. Associates received no monetary wages for their labor, but were provided food, clothing, shelter, and other benefits. *Id.* The central dispute in the case was whether the associates qualified as "employees"—in particular, whether they performed work in expectation of compensation. *Id.* at 292–93. At trial, the parties presented conflicting evidence on the issue. *Id.* at 293, 301. On one side, the Foundation presented testimony from associates who "considered themselves volunteers who were working only for religious and evangelical reasons." *Id.* at 293. On the other, the Secretary offered testimony from former associates who "testified that they had been 'fined' heavily for poor job performance, worked on a 'commission' basis, and were prohibited from obtaining food from the cafeteria if they were absent from work." *Id.* at 301 n.22.

The district court, acting as the trier of fact, resolved this conflicting evidence in favor of the Secretary. *Id.* at 293, 301; *Donovan v. Tony & Susan Alamo Found.*, 567 F. Supp. 556, 562 (W.D. Ark. 1982). In doing so, the court made a *factual finding* that the Foundation's associates expected in-kind benefits, namely food and shelter, in exchange for their labor and that those benefits were simply "wages in another form." *Alamo*, 471 U.S. at 301; *Alamo*, 567 F. Supp. at 574. The Supreme Court later affirmed this finding on appeal, holding "the district court's finding that the associates must have expected to receive in-kind benefits—and expected them in exchange for their services—was … not clearly erroneous." *Alamo*, 471 U.S. at 301.

Here, relying exclusively on *Alamo*, the panel held, as a matter of law, that Plaintiffs performed work in expectation of compensation. In doing so, the panel noted that while the Plaintiffs knew that "they would not be monetarily compensated during the Program, they nonetheless understood they would be provided with in-kind benefits," like "housing, food, medical care, and clothing." Slip op. at 8–9. Based on these facts, the panel affirmed the district court's holding that Plaintiffs "worked 'in exchange' for in-kind benefits" as a matter of law and thus "constitute 'employees' under the Act." *Id.* In short, the panel treated *Alamo* as dispositive of the classification issue.

The panel's reliance on *Alamo* was misplaced. "While often overlooked, the standard of review employed by an appellate court is a crucial factor in determining the breadth of its holding." *United States v. Heald*, 165 F. Supp. 3d

765, 778 n.18 (W.D. Ark. 2016). That is true with *Alamo*. The Court in *Alamo* merely held that the trial court's factual finding that the Foundation's associates "expected in-kind benefits—and expected them in exchange for their services—was … not clearly erroneous." Notably, the Court did not hold—as the panel here concluded—that no reasonable jury could have reached an opposite conclusion based on the evidence presented.

This is a significant distinction. In our system of justice, the trier of fact is given wide latitude to weigh the evidence. Just because a jury (or in *Alamo*'s case, a judge) made a factual finding based on certain evidence in one case does *not* mean a later jury or court is required to make the same finding based on the same or similar evidence in another. *Kerrivan v. R.J. Reynolds Tobacco Co.*, 953 F.3d 1196, 1207 (11th Cir. 2020). "Stare decisis does not apply to findings of fact." Bryan Garner, et al., *The Law of Judicial Precedent* 382 (2016). Rather, a trial court's factual findings are conclusive on appeal unless "clearly erroneous"—a "significantly deferential" standard of review, "requiring a definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 623 (1993).

Here, the panel overlooked the deferential standard of review under which *Alamo* was decided, effectively treating the case as a summary judgment decision. But *Alamo* did not affirm a grant of summary judgment—it affirmed a factual finding made based on conflicting evidence, following a full-fledged trial on the merits. In overlooking this distinction, the panel committed what

commentators have referred to as a "deference mistake"—"rel[ying] on precedent without fully accounting for the [standard of review] under which that precedent was decided, thereby stripping the holding of its legal context." Jonathan Masur, et al., *Deference Mistakes*, 82 U. Chi. L. Rev. 643, 645 (2015). Such errors can have far-ranging consequences, "effectively produc[ing] a change in the law." *Id.* at 646. That is what happened here.

### B. The panel applied an incorrect definition of "compensation."

The panel next erred in applying an incorrect definition of compensation. While "compensation" for FLSA purposes is not limited to monetary wages, *Alamo*, 471 U.S. at 301, it also does not encompass "indirect benefits … merely incidental to the activity performed." *Juino*, 717 F.3d at 435. A benefit received not as part of a bargained-for exchange of labor for compensation, but instead merely to facilitate one's participation in a rehabilitative, vocational, or other educational activity is not compensation for minimum wage purposes. *Fochtman v. Hendren Plastics, Inc.*, 47 F.4th 638, 646 (8th Cir. 2022); *Armento v. Asheville Buncombe Cmty. Christian Ministry, Inc.*, 856 F. App'x. 445, 454 (4th Cir. 2021); *Williams v. Strickland*, 87 F.3d 1064, 1067 (9th Cir. 1996); *Vaughn v. Phoenix House Found., Inc.*, 2019 WL 568012, at *5 (S.D.N.Y. Feb. 12, 2019), *aff'd* 957 F.3d 141 (2d Cir. 2020). Thus, the fact that a person receives room and board as part of a residential, work-based recovery program does not mean these is an implied compensation agreement between the parties. *Fochtman*, 47 F.4th at 646; *Williams*, 87 F.3d at 1067; *Vaughn*, 2019 WL 568012, at *5.

Notably, this is true even where, as here, the participant's labor serves to offset or defray the cost of the program. *Fochtman*, 47 F.4th at 646; *Vaughn*, 2019 WL 568012, at *8; *see also Blair v. Wills*, 420 F.3d 823, 829 (8th Cir. 2005) (same for work performed by juvenile offenders in a private reform school).

Here, the panel held, as a matter of law, that the services Cenikor provides its residents—"housing, food, medical care, and clothing"—are all "in-kind benefits" provided "in exchange" for their labor. Slip op. 8–9. In doing so, the panel did not consider whether these services, rather than being compensation, were instead merely indirect benefits meant to facilitate residents' participation in the Cenikor program. The panel did not even recognize this distinction.

This was error. The services at issue were not intended to compensate residents for their labor, but rather to facilitate their participation in Cenikor's residential, work-based recovery program. Cenikor cannot operate a *residential* recovery program without offering room and board. Nor can it operate a *work-based* recovery program without providing vocational opportunities. That Plaintiffs' labor served to offset Cenikor's operating expenses, allowing it to provide these services free of charge, does not transform them into "compensation"— and certainly does not do so as a matter of law.

C.  **The panel erred in failing to consider the rehabilitative purpose of the work Plaintiffs performed in the Cenikor program.**

The panel next erred in failing to consider the rehabilitative purpose of Plaintiffs' work in the Cenikor program. Work is a recognized form of

rehabilitation. *Williams*, 87 F.3d at 1067; *Fochtman*, 47 F.4th at 646; *Vaughn*, 957 F.3d at 146. The work participants perform in a program like Cenikor is meant to give them a sense of self-worth and accomplishment and allow them to develop job skills in a structured, drug-free environment. *Williams*, 87 F.3d at 1067. Such opportunities are particularly important for criminal offenders, helping them to "acquir[e] skills for daily living, easing [their] transition to the world outside, and equipping [them] with skills and habits that will make [them] less likely to return to crime." *Vaughn*, 2019 WL 568012, at *7.

The importance of work in the recovery process is widely recognized by experts in the field. For those struggling with addiction, particularly ex-offenders, the barriers to gainful employment are often insurmountable. *See* Substance Abuse and Mental Health Services Administration ("SAMHSA"), *Integrating Substance Abuse Treatment and Vocational Services* at xv, 3, 160 (2014). Such individuals, if not chronically unemployed, usually have large gaps in their employment histories, leaving them "deficient in the basic skills needed to function within an organizational culture," including knowing "how to talk to persons in authority, manage anger, and raise issues effectively." *Id.* at 60; *see also* Kathleen Kemp, et al., *Developing Employment Services for Criminal Justice Clients Enrolled in Drug User Treatment Programs*, 29 Substance Use & Misuse 2491, 2493 (2004). These barriers often reinforce the same negative behaviors that give rise to them, leading to "depression, poor self-image and self-esteem, and relapse." SAMHSA, *supra*, at 17.

Work-based recovery programs help to break this cycle of addiction. For addicts in recovery, work in a real-work environment offers "a means of social integration"—a way "of reintroducing them to the 'real world.'" Donald Shepard et al., *The Value of Vocational Rehabilitation in Substance Abuse Treatment: A Cost-Effective Framework*, 39 Substance Use & Misuse 2581, 2582 (2004). In particular, it gives them an opportunity "to apply recovery skills, such as building supportive relationships, learning to work within an authority structure, accepting responsibility, managing anger, and recognizing boundaries." SAMHSA, *supra*, at 47. It is for this reason that addiction specialists now recognize "that productive activity (work) is crucial to the health and long-term recovery of clients." *Id.* at 75.

Work performed for rehabilitative reasons, rather than compensation, does not constitute "employment." *Williams*, 87 F.3d at 1067; *Vaughn*, 957 F.3d at 146. That Plaintiffs performed work in a real-world environment—rather than in an artificial, clinical setting—does not detract from its rehabilitative function. *See Fochtman*, 47 F.4th at 646; *Henson v. HOW Found.-State Ins. Fund*, 970 P.2d 604, 607 (Okla. 1998). As courts have acknowledged, "[o]ne need not coddle in order to rehabilitate." *Ark. Lighthouse for the Blind v. N.L.R.B.*, 851 F.2d 180, 183 (8th Cir. 1988). Work in a real-world setting "prepares [participants] for the private sector by acclimating them to the conditions they will face outside the [program]." *Id.* at 184 This is in contrast to programs that rely on "simulated work environment[s]," which have often "been criticized for [their]

frequent failure to lead to competitive employment." SAMHSA, *supra*, at 29–30; *accord* Harry Stern, *Employment Training for Disadvantaged or Dependent Populations*, 17 Int'l J. Addictions 51, 52 (1982) ("real-world" work dynamics "cannot be adequately replicated in a simulated work setting").

### D. The panel overlooked relevant evidence bearing on the rehabilitative purpose of Plaintiffs' work in the Cenikor program.

As noted in Cenikor's opening brief (at 21–23), as part of their onboarding, Cenikor residents sign paperwork acknowledging their understanding of the program, including that work performed in the treatment phase of the program is for rehabilitative purposes, not employment, and that they will receive "no compensation" for any work performed. Like the district court below, the panel ignored this evidence, holding that "rights under the FLSA cannot be waived" and that "any forms patients sign[ed] indicating that they are beneficiaries and not employees do not control [the] analysis." Slip op. at 9.

But the panel's reasoning misses the point. Cenikor has never argued that Plaintiffs "waived" their FLSA rights, that the forms they signed constitute "waivers," or that the forms "control" the analysis. Rather, Cenikor has argued—consistent with *Williams*, 87 F.3d at 1067—that such forms are relevant evidence from which a jury could infer that there is no threshold remunerative relationship between Cenikor and its residents, as necessary to establish an FLSA claim. In short, while the forms may not *control* the analysis, they are *relevant* to the analysis. The panel erred in disregarding this evidence.

# CONCLUSION

The Court should grant en banc review and reverse.

Dated: September 6, 2023

Respectfully submitted,

/s/ Amelia A. Fogleman
Christopher S. Thrutchley
Amelia A. Fogleman
Justin A. Lollman
GableGotwals
110 N. Elgin Ave., Suite 200
Tulsa, Oklahoma 74120-1495
(918) 595-4800

*Counsel for Amici Curiae Simmons Foods, Inc. and Simmons Pet Food, Inc.*

Randall E. Long
Rhodes Hieronymus Jones
  Tucker & Gable, PLLC
P.O. Box 21100
Tulsa, Oklahoma 74121-1100
(918) 582-1173

*Counsel for Amicus Curiae CAAIR, Inc.*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4) because it contains 2,598 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Equity Text A style font.

> */s/ Amelia A. Fogleman*
> Amelia A. Fogleman

# CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2023, I electronically filed the foregoing with the Clerk of Court for the United State Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

> */s/ Amelia A. Fogleman*
> Amelia A. Fogleman