

2800 JPMorgan Chase Tower, 600 Travis
Houston, TX 77002
Telephone:  713-226-1200
Fax:  713-223-3717
www.lockelord.com

Chris Dove
Direct Telephone:  713-226-1314
Direct Fax:  713-229-2613
cdove@lockelord.com

October 10, 2023

Lyle W. Cayce
Office of the Clerk
United States Court of Appeals for the Fifth Circuit
600 S. Maestri Place
New Orleans, LA  70130
*via electronic filing*

Re:    No. 22-20434, *Klick v. Cenikor Foundation*, Petition for Rehearing En Banc

Dear Mr. Cayce:

In support of rehearing en banc, Cenikor files this letter to address a new opinion. Fed. R. App. P. 28(j). The first court to analyze the panel's opinion rejected it as an unpersuasive outlier.

In *Spilman v. The Salvation Army*, No. CGC-21-591364 (Sept. 28, 2023) (attached), a California trial court granted summary judgment to The Salvation Army ("TSA") against a class action filed by TSA's residential drug-rehab patients who performed work therapy. (*Id.* at 26.) Federal FLSA law on "employee" status was persuasive authority. (*Id.* at 18-25.)

*Spilman* noted the panel's decision created a "split of authority," but "the apparent weight of authority as well as the more persuasive cases hold" that patients are not FLSA "employees." (*Id.* at 18.) *Spilman* adopts Cenikor's authorities. (*Id.* at 18-21; Petition at 16.)

*Spilman* then noted the panel in this case "reached the opposite conclusion"[1] (*id.* at 21), and rejected its reasoning:

- Written denials of "employee" status indicate no expectation of compensation. (*Id.* at 19-21; Petition at 11-12.)

---

[1]  The court also cited one district court that denied dismissal on the *pleadings* while noting the *evidence* might support summary judgment. (*Slip op.* at 21 & n.26.)

- Because in-kind benefits were "part and parcel of Plaintiffs' rehabilitation programs," they were not compensation in exchange for the patients' labor. (*Id.* at 24; *cf.* Panel Opinion at 8-9; Petition at 16.)

- To protest that patients cannot waive their FLSA rights is "circular" because the threshold question is whether "Plaintiffs *have* any rights," not whether they waived them. (*Id.* at 24 n.29 (emphasis added); *cf.* Panel Opinion at 9; Petition at 17.)

- "If Plaintiffs' approach were accepted, unpaid volunteers, student interns, and prisoners—all of whom organizations arguably 'suffer or permit to work'—would be considered 'employees' under the Labor Code. That is plainly not the law." (*Id.* at 25 n.30; Petition at 16.)

Here, the panel improperly rejected these arguments.

While *Spilman* distinguished some facts of this case (*id.* at 21 n.25), Cenikor's program nevertheless resembles *Vaughn* and *Armento*—opinions followed by *Spilman*. (Petition at 18.)

This Court should review *Spilman* and grant rehearing en banc.

Chris Dove

cc: Josh Borsellino, Charles Stiegler, James R. Bullman, and Josh Sanford *via electronic filing*

**FILED**

San Francisco County Superior Court

E-SERVICE
70979160
Sep 28 2023
09:50AM
File & ServeXpress

SEP 2 8 2023

CLERK OF THE COURT

BY: _Claudia Zuur_

Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 304

| | |
|---|---|
| JUSTIN SPILMAN, TERESA CHASE, NICHOL VAN STRALEN, and JACOB TYLER, on behalf of themselves and all others similarly situated, | Case No. CGC-21-591364 |
| Plaintiffs, | ORDER ON CROSS-MOTIONS FOR SUMMARY ADJUDICATION REGARDING EMPLOYMENT STATUS |
| v. | |
| THE SALVATION ARMY, a California nonprofit corporation; and DOES 1 THROUGH 25, inclusive, | |
| Defendants. | |

   Plaintiffs' motion for summary adjudication regarding employment status and Defendant's cross-motion for summary adjudication that the Plaintiffs were not Defendant's employees under California law came on for hearing on September 14, 2023 at 9:00 a.m. Having considered the pleadings and papers on file in the action, and the arguments of counsel presented at the hearing, the Court hereby grants Defendant's cross-motion for summary adjudication.

## **PROCEDURAL BACKGROUND**

   On May 7, 2021, Plaintiffs Justin Spilman, Devin Gerardy, Teresa Chase, Tracy Woodmancy, and Sye Smallwood filed this putative class action against Defendant The Salvation Army alleging violations of the California Labor Code. On July 12, 2021, Plaintiffs filed a First Amended Complaint adding Private Attorneys General Act ("PAGA") allegations. On May 24, 2022, Plaintiffs filed a Second

1   Amended Complaint substituting Nichol Van Stralen for Tracy Woodmancy as a named Plaintiff. On

2   October 27, 2022, Plaintiffs filed the operative Third Amended Complaint ("TAC") substituting Jacob

3   Tyler for Devin Gerardy and Sye Smallwood as a named Plaintiff.[1] Plaintiffs allege six causes of action

4   against Defendant: (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to

5   authorize and permit rest periods; (4) failure to furnish accurate wage statements; (5) waiting time

6   penalties; and (6) violations of the UCL.  (TAC ¶¶ 35-80.)

7       Plaintiffs' putative class and representative action is brought on behalf of participants in Salvation

8   Army Adult Rehabilitation Centers or Programs ("ARCs" and "ARPs," together, "ARCs") in California

9   in the past four years.  Plaintiffs allege that they and the members of the putative class, participants in

10  Defendant's residential drug and alcohol residential programs, are Defendant's employees under

11  California law; Defendant disagrees.  Pursuant to Code of Civil Procedure section 437c(t), the parties

12  stipulated to request the Court address that threshold issue by means of cross-motions for summary

13  adjudication, and the Court agreed to do so.  (Apr. 1, 2022 Stip. and Order.)[2]

14                          **FACTUAL BACKGROUND**

15      The parties' cross-motions are accompanied by voluminous factual showings consisting of

16  documentary exhibits, declarations, and deposition excerpts, as well as lengthy separate statements and

17  responses and evidentiary objections.  In the Court's view, a number of the purported "material" facts

18  asserted in those statements are, in fact, not material to its resolution of the issue before it, with the result

19  that many of the parties' evidentiary objections and factual disputes are beside the point.  The Court

20  summarizes below certain key undisputed facts on which its analysis turns.[3]

21      Defendant The Salvation Army ("TSA") is a California non-profit corporation.  (Joint Stip. ¶ 1.)[4]

22  TSA owns and operates fourteen ARCs in California.  (*Id.* ¶ 2.)[5]  TSA also owns and operates an ARP in

23

---

[1] On April 1, 2022, the Court dismissed Plaintiff Tracy Woodmancy without prejudice pursuant to
24  stipulation of the parties.  On October 24, 2022, the Court dismissed Plaintiffs Devin Gerardy and Sye
    Smallwood without prejudice pursuant to stipulation of the parties.  Thus, there are three remaining
25  named Plaintiffs: Justin Spilman, Teresa Chase, and Jacob Tyler.
    [2] TSA entered into a limited waiver of its right against one-way intervention with respect to this issue.
26  [3] Any objections to the evidence referred to in this order are overruled.  The Court does not rule upon
    other objections, which are not material to its disposition of the cross-motions.  (See Code Civ. Proc. §
27  437c(q).)
    [4] "Joint Stip." refers to the parties' Joint Statement of Stipulated Facts filed June 16, 2023.
28  [5] Defendant refers to itself as "TSA-West" because each of the ARCs at issue here is located in
    Defendant's Western Territory, which operates through a separate religious and charitable nonprofit

Chico, California. (*Id.* ¶ 3.) The ARCs and ARP offer six-month residential drug and alcohol rehabilitation programs. (*Id.* ¶¶ 5-6.)

TSA's programs provide participants with a restructured recovery plan, counseling, and a variety of religious activities including chapel services, daily devotions, Bible study, and activities at the corps community center (TSA-West's place of worship). (UMF 18, 24.)[6] The Program also incorporates a 12-step program, and 12-step oriented meetings and classes are held on a frequent basis at the ARCs. (UMF 25-26.)

TSA's ARCs receive both monetary donations and donated goods from the public. (UMF 136.) At each ARC, there is typically a residence where the beneficiaries live, eat, and attend classes and meetings, and a warehouse where donated goods are collected and processed. (UMF 138.) Each ARC operates thrift stores in its geographical region. (UMF 139.) All revenue generated by the sale of donated goods is used to fund the ARCs' operation, or to support other charitable purposes. (UMF 140, 146 ["Every dollar generated by the ARC or ARP is used to support the charitable purpose of the ARC, ARP, and TSA-West."]; C. Fowler Decl. ¶ 41.)

The dispute here turns on Plaintiffs' participation in what TSA refers to as the "work therapy" component of the Program, in which beneficiaries are generally scheduled to work forty hours per week in TSA's thrift stores and other locations. (UMF 27-28.) Work therapy assignments includes sorting and hanging goods in the warehouse, cleaning the dormitories, janitorial duties, kitchen duties, and clerical work, and may also include loading and unloading trucks of donated goods, picking up donations from people's homes and businesses, working the freight elevators and balers in the warehouse, and selling donated items online and in-person, among other jobs. (UMF 29.)

Workers at California ARCs who are classified as employees (so-called "acknowledged employees") are paid at least the California minimum wage for each hour worked. (Joint Stip. ¶ 10.) TSA does not classify ARC or ARP participants, including Plaintiffs, as employees. (*Id.* ¶¶ 11-12.) To the contrary, as discussed below, its written materials repeatedly emphasize that participants in its drug

---

corporation. (UMF 7; S. Fowler Decl. ¶¶ 3, 13; C. Fowler Decl. ¶¶ 3, 5, 21-24, 78.) For ease of reference, this Order refers to Defendant as TSA.

[6] Unless otherwise indicated, all references to "UMF" are to Defendant's statement of undisputed material facts.

and alcohol rehabilitation programs are *not* employees, and it is undisputed that each Plaintiff executed written agreements acknowledging that status and received handbooks and other materials that made the same point.

Plaintiff Spilman participated in Phase I of the San Francisco ARC from October 5, 2017 to December 10, 2017, and February 1, 2018 to August 8, 2018. (*Id.* ¶ 7; see *id.* ¶¶ 28-29.) Plaintiff Chase participated in Phase I of the Chico ARP from May 22, 2015 to December 2, 2015, March 21, 2017 to September 13, 2017, and June 10, 2020 to September 28, 2020. (*Id.* ¶ 8; see *id.* ¶ 31.)[7] Plaintiff Tyler attended the Stockton ARC from February 25, 2019 to May 15, 2019. (*Id.* ¶ 19; see *id.* ¶ 30.)

When ARC or ARP participants, including Plaintiffs, are enrolled, TSA provides the participants with dormitory-style housing, three meals per day, and clothing. (*Id.* ¶¶ 13-18.) Participants also receive what TSA denominates "gratuities," which are small sums of money and credit (in the form of canteen cards redeemable for goods at the ARC). Thus, while in the Program, Plaintiffs received a weekly gratuity which ranged from $7, which was a combination of 4 canteen cards and $3 in cash, to $25, which was a combination of 13 canteen cards and $12 in cash. (UMF 85 [Spilman]; 103 [Chase]; 126 [Tyler].) TSA's written materials describe this gratuity as a "gift," and state,

> You have been accepted at the Rehabilitation Center as a beneficiary. As such, you are not on salary nor do you receive any other compensation. The Gratuity is not pay for work done, but money to assist you in your personal needs while at the Center.

(Def. Ex. 37 [Stockton Beneficiary Handbook], 6; see also Def. Ex. 34 [Chico ARP Beneficiary Handbook, 12 [similar].)

It is undisputed that each Plaintiff voluntarily attended their ARC or ARP program. Thus, Plaintiff Spilman admits that he "voluntarily attended the Program: on both occasions, he chose to attend the Program as part of his probation agreement with the Court." (UMF 70.) He also admits that he initialed and signed a Beneficiary Release and Waiver on October 5, 2017 and on February 1, 2018, that stated, among other things, that "he was entering the Program voluntarily." (UMF 78.) Likewise, Plaintiff Chase "voluntarily attended the Program." (UMF 92; see also UMF 106, 109 [Chase re-enrolled in Chico-ARP on two occasions].) So did Plaintiff Tyler, who enrolled in the Stockton ARC to

---

[7] TSA's programs are divided into several phases. Plaintiffs participated in Phase I, the rehabilitation/ stabilization phase. (UMF 19.) Phase II, the re-entry phase, and Phases III and IV, which are sober living environments, are not at issue here. (UMF 20-21.)

overcome his alcohol addiction.  (UMF 113-114 ["Tyler voluntarily attended the Program."].)  Tyler also executed a Beneficiary Release and Waiver in which he acknowledged, among other things, that "he was entering the Program voluntarily."  (UMF 121; see also PAMF 79 ["Plaintiffs voluntarily entered the program and agreed to abide by all ARC program rules"].)

In the admission and intake process for the ARCs, Plaintiffs signed forms in which they expressly acknowledged that they would not be employees.  The Beneficiary Release and Waiver of Liability form that must be signed by a prospective participant in an ARC provides, in pertinent part,

> [The beneficiary] agree[s] and understand[s] that [he or she is] **not an employee of [TSA-West]** while participating in the Adult Rehabilitation Program and therefore [is] aware that [he or she] would not be entitled to Workers' Compensation benefits for any personal injury, loss of earnings, permanent disability, death or property damage that may occur during or arise out of [his or her] participation in [TSA-West] Adult Rehabilitation Program.

(S. Fowler Decl. ¶ 66 (emphasis added).)  Spilman admittedly signed the Beneficiary Release and Waiver stating that he was not an employee of TSA-West on two occasions.  (UMF 78.)  So did Tyler.  (UMF 121.)  Similarly, a prospective beneficiary at the Chico-ARP must sign the Beneficiary's Admittance Statement, which provides that the applicant "understand[s] that under no circumstances can this Center be under any obligation to [him or her]; and that [he or she is] a Beneficiary and **not an employee** of this Center."  (S. Fowler Decl. ¶ 67 (emphasis added).)  Chase executed that Statement stating that she was not an employee of the ARP on three occasions.  (UMF 99.)  The same point is highlighted and discussed in detail in the TSA's "Greenbook."  (S. Fowler Decl. ¶¶ 22-25 & Ex. 1.)[8]  Likewise, the ARC Beneficiary Handbook states,

> You are a beneficiary and *not* an employee.  Work Therapy can be the means for developing skills and ethical work habits that you need in order to reenter the job market.  You are expected to maintain and develop good work ethics.

(Ex. 37 at 13); see also *id.* at 5 ["Employment, either part or full-time, is expressly forbidden during your stay at the Center.  Staff or beneficiary may not discuss employment by The Salvation Army until completion of the Reentry Program (Phase II).  **The Salvation Army ARC is not a 'jobs' program** and few beneficiaries are hired by the ARC." (emphasis added)].)  Plaintiffs executed Initial Intake Forms in

---

[8] The full title of the Greenbook is "The Salvation Army Adult Rehabilitation Centers Handbook of Standards, Principles and Policies."  (UMF 11; Ex. 1 (as of May 2015).)  It contains a lengthy section, entitled "Legal Status of Beneficiaries," which makes clear TSA's position that "beneficiaries are not employees for the purpose of the Fair Labor Standards Act and other employment laws."  (Ex. 1 at 32-36; see also *id.* at 74.)

which they confirmed having received copies of the Beneficiary Handbook, attended orientation classes in which they reviewed the Handbook, and confirmed that they read and discussed the Handbook and completed initial orientation.  (UMF 81-83 [Spilman]; 124 [Tyler].)  The Chico Beneficiary Handbook also states that that ARC workers are not employees.  (UMF 101.)

Consistent with these express written disclaimers, Plaintiffs admitted that no one at the ARCs told them that they were employees of the ARC.  (UMF 89 [Spilman]; UMF 112 [Chase]; UMF 133 ["Plaintiffs do not dispute that Plaintiff Tyler testified that no one told him that he was an ARC employee."].)  Likewise, TSA's witnesses testified that no ARC participant ever told them that they had any expectation of compensation for completing the work therapy portion of their rehabilitation programs.  For example, the former Administrator of TSA's San Francisco ARC, which Plaintiff Spilman attended, testified,

> In my experience, no beneficiary ever relayed to me that they had an expectation to be compensated for completing [Work Therapy].  I have also never witnessed a beneficiary tell me or any TSA-West employee that they had any expectation to be compensated during or after completing the program.

(Markiewicz Decl. ¶ 31; see also Setera Decl. ¶ 35 [same as to Chico-ARP]; Young Decl. ¶ 98 [Stockton-ARC].)  Although Plaintiffs have submitted their own declarations in support of their motion, none of them asserts that he or she had any expectation of receiving wages or other compensation for participating in their rehabilitation programs.

### **LEGAL STANDARD**

"[A] party may move for summary adjudication of a legal issue or a claim for damages other than punitive damages that does not completely dispose of a cause of action, affirmative defense, or issue of duty pursuant to this subdivision."  (Code Civ. Proc. § 437c(t).)  "A motion filed pursuant to this subdivision may be made by itself or as an alternative to a motion for summary judgment and shall proceed in all procedural respects as a motion for summary judgment."  (*Id.* § 437c(t)(5).)

"The question of whether an employment relationship exists is generally a question reserved for the trier of fact.  This remains true where the evidence, though not in conflict, permits conflicting inferences.  However, if neither the evidence nor inferences are in conflict, then the question of whether

1   an employment relationship exists becomes a question of law." (*Taylor v. Financial Casualty & Surety,*

2   *Inc.* (2021) 67 Cal.App.5th 966, 993-994, quoting *Aleksick v. 7-Eleven, Inc.* (2012) 205 Cal.App.4th

3   1176, 1187.)

4

5   **DISCUSSION**

6   **I.**    **Applicable Legal Standard**

7       At the outset, the parties sharply dispute the applicable standard the Court should apply to

8   determine whether Plaintiffs were employees of TSA. Because that is the pivotal issue on which the

9   resolution of the cross-motions turns, the parties' competing approaches are briefly summarized below,

10   followed by a more in-depth discussion.

11     **A.**    **Wage Order No. 7 And *Martinez***

12       Plaintiffs rely upon the IWC's wage orders and the three alternative tests for employment set forth

13   in *Martinez v. Combs* (2010) 49 Cal.4th 35. "[E]mployer status for wage-and-hour purposes . . . is

14   controlled by the Industrial Welfare Commission's wage orders." (*Medina v. Equilon Enterprises, LLC*

15   (2021) 68 Cal.App.5th 868, 874; see *Martinez*, 49 Cal.4th at 52, 66.) Plaintiffs bring this action under

16   Wage Order No. 7, which applies to "all persons employed in the mercantile industry." (Opening Brief,

17   24.) Under Wage Order No. 7, an "Employer" is defined as "any person as defined in Section 18 of the

18   Labor Code,[9] who directly or indirectly, or through an agent or any other person, employs or exercises

19   control over the wages, hours, or working conditions of any person." (Cal. Code Regs., tit. 8 § 11070,

20   subd. 2(F).) An "Employee" is defined as "any person employed by an employer." (*Id.* § 11070, subd.

21   2(E).) "Employ" is defined as "to engage, suffer, or permit to work." (*Id.* § 11070, subd. 2(D).)

22       "Wage order No. 7-2001 . . . defines employment in the same manner as wage order No. 14-2001,

23   which the Supreme Court interpreted in *Martinez*." (*Medina*, 68 Cal.App.4th at 874.) "*Martinez*

24   describes this standard as consisting of three alternatives: (1) to exercise control over wages, hours, or

25   working conditions, directly or indirectly, or through an agent or any other person; (2) to suffer or permit

26   to work; or (3) to engage." (*Id.* (cleaned up); see *Martinez*, 49 Cal.4th at 64.) "The first and third

27

28   [9] "'Person' means any person, association, organization, partnership, business trust, limited liability
company, or corporation." (Lab. Code § 18.)

standards are self-explanatory." (*Id.*) However, "the suffer or permit to work definition is extraordinarily broad, reaching *all* individual workers who can reasonably be viewed as *working in the hiring entity's business.*" (*Id.* at 875, quoting *Dynamex Operations West, Inc. v. Superior Court* (2018) 4 Cal.5th 903, 953 (cleaned up).)[10]

Plaintiffs assert "the undisputed facts establish that Plaintiffs satisfy all three tests." (Opening Brief, 25; Opposition, 10-13.) They assert that their working relationship with TSA "looked like a quintessential employer-employee relationship" because the work Plaintiffs performed was essential to the operation of TSA's business; TSA controlled all aspects of their work, including their schedules and job assignments; it retained the right to discipline or "fire" Plaintiffs; and because TSA "generated millions" from the sale of donated goods at its thrift stores. (Opening Brief, 5.) While Plaintiffs acknowledge briefly in their opening brief that one of the factors to be considered in determining the existence of an employment relationship is "the parties' beliefs about employment status," they assert that factor "is not dispositive and will be ignored where, as here, the parties' actual conduct establishes a different relationship." (*Id.* at 30, quoting *Estrada v. FedEx Ground Package System, Inc.* (2007) 154 Cal.App.4th 1, 10-11.)

**B.     Agreement For Remuneration**

TSA acknowledges that under California law, an individual who is providing services for another person is generally presumed to be an employee. (Opening Brief, 24, citing Lab. Code § 2775 and other authorities.) However, TSA asserts that the presumption is not absolute, and relies upon a broader underlying principle: that for a plaintiff to avail himself or herself of this presumption, "the plaintiff must first establish an agreement for remuneration vis-à-vis the labor provided." (*Id.*) TSA asserts that

---

[10] *Dynamex*, like much of the authority relied upon by Plaintiffs, involved the distinct issue of whether an individual worker who entered into a written agreement with the defendant should properly be classified as an employee or an independent contractor. (See 9 Cal.5th at 918 [plaintiff in underlying action entered into a written independent contractor agreement with Dynamex]; *Vazquez v. Jan-Pro Franchising International, Inc.* (2021) 10 Cal.5th 944, 948 [*Dynamex* involved "a question of first impression: What standard applies under California law in determining whether workers should be classified as employees or independent contractors for purposes of the obligations imposed by California's wage orders?"]; *Becerra v. McClatchy Co.* (2021) 69 Cal.App.5th 913, 933 [*Dynamex* "determined that the phrase 'suffer or permit to work,' . . . is the applicable standard for distinguishing employees from independent contractors for purposes of wage order claims."].) It has no direct bearing on the issue presented here, which is whether a voluntary worker who lacks any express or implied employment agreement with the defendant is protected by the California wage and hour laws.

"[a]bsent an agreement for remuneration in exchange for labor, an employment relationship cannot exist." (*Id.* at 8.)

TSA's position is supported by Labor Code section 2775, which specifically incorporates the term "remuneration" in the definition of an employee:

> For purposes of [the Labor] Code and the Unemployment Insurance Code, and for the purposes of wage orders of the Industrial Welfare Commission, **a person providing labor or services for remuneration shall be considered an employee** rather than an independent contractor unless the hiring entity demonstrates that all of the following conditions are satisfied . . . .

(Lab. Code § 2775(b)(1) (emphasis added).)[11] While that provision specifically relates to the distinction between an employee and an independent contractor, the statutory presumption is phrased much more broadly, and makes remuneration an essential element of an employment relationship "[f]or purposes of [the Labor Code] . . . "and for the purposes of the wage orders of the Industrial Welfare Commission." TSA's position is also consistent with the California Supreme Court's recognition in *Voris v. Lampert* (2019) 7 Cal.5th 1141 that the employment relationship "is fundamentally contractual, meaning it is governed in the first instance by the mutual promises made between employer and employee. The promise to pay money in return for services rendered lies at the heart of this relationship." (*Id.* at 1148; see also *Martinez*, 49 Cal.4th at 74 ["Certainly a promise to pay a person for work would be an offer of employment, as well as an exercise of control over wages and hours sufficient to bring the promisor within the wage order's definition of 'employer.'"].) "Even in the absence of an explicit promise for payment, the law will imply one, and thus authorize recovery, *when circumstances indicate that the parties understood the employee was not volunteering his or her services free of charge.*" (*Id.* (emphasis added).)

## II.    Plaintiffs Are Not "Employees" Within The Meaning Of The Labor Code.

Plaintiffs' summary of the general legal standards governing the employment relationship is accurate as far as it goes. However, it skips a key threshold step because it fails to acknowledge the fundamental contractual principles governing the formation and existence of an employment relationship under California law, which require the existence of an express or implied agreement for compensation.

---

[11] Section 2775 was enacted in 2019 as part of Assembly Bill No. 5 (AB 5), which codified the *Dynamex* ABC test. (See *People v. Uber Technologies, Inc.* (2020) 56 Cal.App.5th 266, 274-275.)

As a general rule under California law, unpaid workers who voluntarily perform services without any express or implied agreement for remuneration are not employees. That rule compels the conclusion that Plaintiffs, who voluntarily participated in TSA's alcohol and drug rehabilitation programs without any written employment contract or any reasonable expectation of receiving compensation for their labor, are not "employees" within the meaning of the Labor Code.

### A.    Uncompensated Voluntary Workers Are Not Employees Under California Law.

As a general rule, uncompensated voluntary workers are not employees under California law, whether the issue arises under the Fair Employment and Housing Act (FEHA), the Workers' Compensation Law, or, as here, the wage and hour provisions of the Labor Code. Under California law, the threshold inquiry is whether there is an agreement, express or implied, regarding remuneration. The Court discusses this general rule as it is reflected in case law under each of the principal statutory schemes.

### 1.    FEHA

In *Talley v. County of Fresno* (2020) 51 Cal.App.5th 1060, the issue presented was closely similar to that raised here: whether a participant in a county adult offender work program was a county employee for purposes of FEHA. Plaintiff pled guilty to driving without a license or insurance and was sentenced to 18 days of jail time, which was to be served in the county's adult offender work program (AOWP), a work release program that allows eligible participants to serve their sentence by performing work assignments for participating community and governmental agencies and is coordinated through the county's probation department. Plaintiff was assigned to perform manual labor for the county's parks and recreation division as a condition of his probation, was injured while doing so, and sued the county for failure to accommodate his preexisting physical disability and failure to engage in the interactive process under FEHA. The county filed a motion for summary judgment on the ground that because plaintiff received no direct or indirect remuneration for the work he performed in the adult offender work program, he could not be deemed an employee under FEHA. In opposition, Plaintiff contended that how his work was performed in the work program established he was a county employee or, at a minimum, created a material factual dispute whether he was an "employee" for purposes of FEHA:

Plaintiff pointed out his work activities were directed and supervised by the parks and recreation

division staff, and the probation department laid down specific rules and procedures for program participants. In other words, plaintiff's work participation, including but not limited to the clothing he was required to wear, which location he was assigned, the equipment used to perform tasks, and the scheduled time and days of his shift, was highly regulated and precisely directed and overseen by county. He also maintained county benefited from his AOWP work.

(*Id.* at 1067.) The trial court found it undisputed that plaintiff had received no direct or indirect financial remuneration for his participation in the AOWP. The court also found it undisputed that plaintiff's participation in the AOWP was voluntary in the sense he could have quit at any time and served his sentence in jail rather than on work release. The court concluded as a matter of law that plaintiff was not an employee of the county for purposes of FEHA, and granted summary judgment as to the FEHA claims.

On appeal, the Court of Appeal observed that the "central issue" was "whether plaintiff is an 'employee' of county within the meaning of the FEHA." (*Id.* at 1069.) After an extensive review of federal and California case law and regulatory authorities,[12] the court answered that question in the negative, holding that "an individual cannot be deemed an employee within the meaning of the FEHA absent the existence of remuneration." (*Id.* at 1083.) The court followed two California decisions holding that uncompensated volunteers were not employees under FEHA. (*Id.* at 1076-1078, discussing *Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 637 [holding that volunteer community service officer was not an employee of the town entitling him to sue for wrongful termination or employment discrimination, since there was nothing in FEHA that evinced "an intent to depart from the requirement that compensation of some sort is indispensable to the formation of an employment relationship"] and *Estrada v. City of Los Angeles* (2013) 218 Cal.App.4th 143, 154-155 [holding that uncompensated volunteer police reserve officer was not employee of city for purposes of FEHA, despite city's decision to grant reserve officers workers' compensation benefits].)

Like Plaintiffs here, the plaintiff in *Talley* contended that financial remuneration is merely one factor to be considered in determining the employment relationship. The Court disagreed, holding that it

---

[12] In particular, the court looked to federal courts' interpretation of similar terms in federal antidiscrimination statutes, such as Title VII of the Civil Rights Act of 1964. (*Id.* at 1074-1076.) It also looked to the regulatory definition of "employee" promulgated by the Fair Employment and Housing Commission [now the California Civil Rights Agency]. (*Id.* at 1079.) That regulation defines "employee" as "[a]ny individual under the direction and control of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written." (*Id.*, quoting Cal. Code Regs., tit. 2, § 11008(c).) Significantly, the "direction and control" language of that regulation overlaps substantially with one of the three alternative tests upon which Plaintiffs rely. (See Cal. Code Regs., tit. 8, § 11070(2)(F) ["any person . . . who directly or indirectly . . . employs or exercises control over the wages, hours, or working conditions of any person."].)

comprises "the threshold-remuneration test," which applies in all cases "where the association or work performed does not involve a salary or wage." (*Id.* at 1080.) In such cases, remuneration is "a dispositive threshold factor to determine whether an individual *may* qualify as an employee." (*Id.* at 1083.) As the court explained,

> The touchstone of an employment relationship is remuneration, and there is no indication the Legislature intended for an employment relationship to exist in the absence of sufficient remuneration. While remuneration alone is not a sufficient condition to establish an individual is an employee under the statute, it is an essential one. To be an employee within the meaning of the FEHA, a plaintiff must receive financial remuneration, either direct or indirect.

(*Id.* at 1091 (citations omitted).) Further, the court held that to qualify as remuneration, "the benefit must be of a quantifiable, financial nature that is significant and not merely incidental to the work activities performed." (*Id.* at 1084.)

Based on these factors, the court held that the plaintiff was not a county employee for purposes of FEHA because none of the benefits he claimed to have received, such as staying out of jail, were financially significant and quantifiable, and the benefits he received were incidental to participation in the program. (*Id.* at 1086-1087.) Workers' compensation benefits could not be considered remuneration for work performed, and the fact that plaintiff was covered under workers' compensation was not incongruent with the determination he was not a county employee for purposes of FEHA. (*Id.* at 1087-1088.) Finally, plaintiff's declaration regarding his subjective belief about whether his participation in the AOWP was voluntary or forced was not sufficient to raise a triable issue of fact. (*Id.* at 1090.) Indeed, the court concluded, even if plaintiff was not a volunteer, that would not have been material:

> For purposes of the threshold-remuneration test, the question is whether there has been receipt of significant financial remuneration, either direct or indirect. Even to the degree there was a factual dispute over plaintiff's status as a volunteer, it is not a material dispute for purposes of whether plaintiff was precluded from being an employee within the meaning of the FEHA due to a lack of financial remuneration.

(*Id.* at 1091.)[13]

### 2.    Workers' Compensation Act

California's Workers' Compensation Act, Lab. Code §§ 3200-6149 (the "Act"), embodies similar

---

[13] Plaintiffs do not mention *Talley* in their opening brief, and refer to it only in passing in their opposition. (Opposition, 26.)

principles. Section 3351 of the Act provides broadly that "Employee" means "every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written . . . ." (*Id.* § 3351.) Moreover, under section 3357, "[a]ny person rendering service for another, other than as an independent contractor, or unless expressly excluded . . . , is presumed to be an employee." (*Id.* § 3357.) However, like FEHA, the Act also provides generally that volunteers who perform work without compensation are not employees. Thus, section 3363.6 provides that "a person who performs voluntary service without pay for a private nonprofit organization" shall only be deemed to be an employee for purposes of the Act if the organization adopts a resolution to that effect. (*Id.* § 3363.6(a).) The same principle applies to persons who perform voluntary service without pay for a public agency. (*Id.* § 3363.5(a).) "Voluntary service without pay" is defined to mean "services performed by any person, who receives no remuneration other than meals, transportation, lodging, or reimbursement for incidental expenses." (*Id.* § 3363.6(c).) Thus, "[a]lthough private, nonprofit organizations are not required to provide [workers' compensation] coverage for volunteers, section 3363.6 allows them to do so if they choose. . . . [Section 3363.6] provides, in essence, that a volunteer becomes a covered employee if the board so declares in writing before any work-related injury." (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 465.)[14] "The test of whether a person was providing 'voluntary service' depends on whether the services were rendered for charitable or gratuitous purposes or for remuneration." (*Brassinga v. City of Mountain View* (1998) 66 Cal.App.4th 195, 214 [holding that reserve police officer who was receiving hourly wages was not a "volunteer"].)

The Act contains three exclusions that are particularly pertinent here. First, as used in the Act, "employer" excludes "[a]ny private, nonprofit organization while acting solely as the sponsor of a person who, as a condition of sentencing by a superior or municipal court, is performing services for the organization." (*Id.* § 3301(b).) Thus, if a person convicted of a crime is sentenced to perform services for a private, nonprofit organization in lieu of a jail sentence, the person is not an employee of the sponsoring private nonprofit organization. (*Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, 1065-1066.)[15]

---

[14] Similar provisions apply to volunteer, unsalaried members of county sheriff's reserve departments (*id.* § 3364) and volunteer, unsalaried persons providing volunteer services to school districts. (*Id.* § 3364.5).
[15] See *Dominguez v. County of Orange* (Cal.W.C.A.B. Apr. 8, 2016) 2016 WL 1551445, *3 [holding that the Salvation Army was excluded as an employer under § 3301 because it acted as a sponsor to claimant during his court-sentenced probation agreement to attend drug rehabilitation].)

Second, the Act expressly excludes from the definition of employee "[a] person performing services in return for aid or sustenance only, received from any religious, charitable, or relief organization." (*Id.* § 3352(a)(2).)[16] Third, it also excludes from the definition of employee "[a] person performing voluntary service for a public agency or a private, nonprofit organization who does not receive remuneration for the services, other than meals, transportation, lodging, or reimbursement for incidental expenses." (*Id.* § 3352(a)(9).)[17]

In short, unpaid volunteers and persons who perform voluntary service in return for aid or sustenance are not employees for purposes of workers' compensation. (Compare *Munoz v. City of Palmdale* (1999) 75 Cal.App.4th 367, 370-372 [an uncompensated volunteer who helped serve coffee at a municipal senior center function was not an employee of the city, even if it had the right to direct and control volunteer's activities] with *Barragan v. Workers' Comp. Appeals Board* (1987) 195 Cal.App.3d 637, 649 [student medical assistant who was providing services to a hospital as part of a required externship program was not a volunteer, since the program was mandatory].) Thus, if the issue before the Court were whether Plaintiffs were entitled to workers' compensation benefits for on-the-job injuries as employees of TSA, the answer would be no.[18]

---

[16] It is undisputed that TSA is a nonprofit religious organization. (UMF 1-3, 7; see, e.g., *Garcia v. Salvation Army* (9th Cir. 2019) 918 F.3d 997, 1001-1002 [summarizing history of organization]; *id.* at 1003-1004 [holding that Title VII's religious organization exemption applies to the Salvation Army]; *Schleicher v. Salvation Army* (7th Cir. 2008) 518 F.3d 472, 478.)

[17] Moreover, the Act explicitly provides that a ward of the juvenile court "engaged in rehabilitative work without pay, under an assignment by order of the juvenile court to a work project on public property" may be deemed an employee entitled to workers' compensation benefits upon adoption of a resolution to that effect. (Lab. Code § 3364.55.) However, the Act does not contain any comparable provision governing adults engaged in rehabilitative work without pay, such as Plaintiffs here, which further supports the conclusion the Legislature intended to exclude such persons from the definition of employee for purposes of workers' compensation. (See, e.g., *Bearden v. U.S. Borax, Inc.* (2006) 138 Cal.App.4th 429, 437 ["Under the maxim of statutory construction, *expressio unius est exclusio alterius*, if exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary." (cleaned up)].)

[18] TSA's board did not adopt any resolution granting Plaintiffs the right to workers' compensation coverage. To the contrary, as discussed above, its Beneficiary and Waiver of Liability forms, which each Plaintiff signed, explicitly provides that each beneficiary "agree[s] and understand[s] that [he or she is] not an employee of [TSA-West] while participating in the Adult Rehabilitation Program and therefore [is] aware that [he or she] *would not be entitled to Workers' Compensation benefits* for any personal injury, loss of earnings, permanent disability, death or property damage that may occur during or arise out of [his or her] participation in [TSA-West] Adult Rehabilitation Program." (S. Fowler Decl. ¶ 66 (emphasis added).)

1

### 3.    Labor Code

2    The same overriding principle—that an express or implied agreement regarding remuneration is

3    essential to an employment relationship—applies to wage claims under the Labor Code, such as those

4    asserted here. In *Woods v. American Film Institute* (2021) 72 Cal.App.5th 1022, plaintiff brought a

5    putative class action on behalf of unpaid volunteers at an annual film festival. Plaintiff alleged that she

6    worked between 12 and 14 hours on each of the days she worked as a volunteer at the festival, and that

7    members of the putative class regularly worked more than eight hours per day and more than 40 hours per

8    week. (*Id.* at 1026.) Plaintiff alleged that the volunteers' hours were controlled by defendant, American

9    Film Institute (AFI), that AFI imposed requirements such as a mandatory orientation and a minimum

10   number of shifts that volunteers must work, and that volunteers spent the vast majority of their time

11   performing job duties under AFI's direction, supervision and control. (*Id.*) The complaint asserted

12   claims for unpaid wages, unpaid overtime, missed meal and rest periods, failure to reimburse expenses,

13   and failure to provide wage statements. In support of the motion for class certification, plaintiff submitted

14   declarations from a number of volunteer workers, several of whom testified that they worked longer than

15   eight hours per day on occasion. None of the volunteers were paid, and none testified that they expected

16   payment. (*Id.* at 1027.) Evidence in support of the motion showed that AFI received tens of thousands of

17   dollars each from movie studios and film producers as well as sponsorship contributions from corporate

18   sponsors. Plaintiffs claimed that AFI is not a charitable organization that is permitted to use volunteers

19   under California law. In response, AFI provided evidence that it is a tax-exempt, nonprofit organization

20   dedicated to the film industry. It argued that, as such, it is permitted to use volunteers under California

21   law, and that individual members of the class would therefore have a claim only if they expected to be

22   paid as employees. (*Id.*)

23   The trial court denied class certification on the ground that common issues would not predominate

24   over individual ones, reasoning that "a worker cannot be classified as an employee unless the worker

25   expects some compensation." (*Id.* at 1025-1026.) The trial court reasoned that "both employment and

26   independent contractor relationships always contemplate an expectation of monetary compensation in

27   exchange for services rendered." (*Id.* at 1028 (cleaned up).) And it concluded that under plaintiff's

28   interpretation of the law, "volunteerism in California would grind to a halt overnight." (*Id.* (cleaned up).)

The Court of Appeal affirmed, holding that the trial court correctly decided that "putative class members who expected no compensation were not employees under California law." (*Id.* at 1025.)

The court began its analysis by observing that there is "some support in the cases" for the trial court's broad conclusion that employment always contemplates an expectation of monetary compensation in exchange for services rendered, including the Supreme Court's recognition that the heart of the contractual employment relationship is the "promise to pay money in return for services rendered" (*Voris*, 7 Cal.5th at 1148) and the decisions holding that "the receipt of compensation is a threshold requirement for a person to be considered an employee" under FEHA. (*Id.* at 1034.) It went on to hold that volunteers for nonprofit employers are not employees subject to the wage laws under the Labor Code. (*Id.* at 1035-1039.) Although the court recognized that the Labor Code "does not provide a direct answer to the question whether the minimum standards that protect employees under California law must be extended to those who volunteer their time for nonprofit organizations," it found several analogous provisions in the Code supporting the conclusion that volunteers for nonprofit entities are not employees for purposes of the wage and hour rules. (*Id.* at 1035-1036, citing Lab. Code §§ 1720.4(a) [prevailing wage does not apply to "[a]ny work performed by a volunteer"] and 3352 [excluding volunteers from the scope of the workers' compensation law].) Further, it concluded that "the language, history, and purpose of the IWC wage orders also support the conclusion that persons may volunteer for nonprofit entities without becoming employees." (*Id.* at 1036.) The court concluded that the history of the definitions of "employ," "employee," and "employer" in the IWC's Wage Orders suggests they were "meant to apply to persons who are working for pay in commercial businesses":

> The "suffer or permit to work" and "exercises control" standards extend responsibility to businesses who benefit from and have the power to prevent exploitation of workers who are working for compensation. And the term "engage" reaches businesses that form an express or implied contractual relationship to compensate persons whom they hire.

(*Id.* at 1037.) Likewise, "[t]he purpose of the work standards in the IWC wage orders also suggests that those standards apply to businesses who employ workers for pay." (*Id.*) "In addition to protecting workers, the wage orders help to ensure a level playing field among competitors." (*Id.* at 1038.) "All three of these factors—protecting workers from exploitation; protecting businesses from unfair competition; and protecting the public from the need to assist workers who were compelled to labor for

1   substandard pay or in substandard conditions—apply to businesses that employ *paid* labor. They do not

2   apply to persons who intend to volunteer their time to nonprofit entities." (*Id.*)

3       The language of the specific Wage Order at issue in *Woods* also supported the interpretation that it

4   applies to persons who work for compensation, since it referred to the mode of payment (e.g., "whether

5   paid on a time, piece rate, commission, or other basis"). (*Id.*)[19] "The same language appears in the

6   section defining the scope of the Labor Code chapter governing wages and working conditions." (*Id.*,

7   citing Lab. Code § 1171 ["The provisions of this chapter shall apply to and include men, women and

8   minors employed in any occupation, trade, or industry, *whether compensation is measured by time, piece*

9   *or otherwise*"].) Further, the Division of Labor Standards Enforcement (DLSE) has also concluded that

10  the IWC wage orders do not apply to volunteers who work for nonprofits. (*Id.*)[20] Finally, plaintiff did not

11  dispute that defendant AFI is qualified as a tax-exempt nonprofit; evidence that it receives money for its

12  festival from corporate sponsors and from companies who produce the films that it screens "is not

13  sufficient to show that AFI is a commercial promotional entity rather than a qualifying nonprofit." (*Id.* at

14  1039-1040.)

15      Although *Woods* is the California case that is most closely pertinent to the issue presented here,

16  Plaintiffs do not mention it in their opening brief. Their lengthy attempt to distinguish it on various

17  factual grounds (Opposition, 18-22) is unconvincing. While Plaintiffs contend that TSA's thrift stores

18  constitute a "commercial enterprise," it is undisputed that all revenue generated by the sale of donated

19  goods is used to fund the ARCs and TSA's other charitable purposes. The two-page 1988 DLSE Opinion

20  Letter upon which Plaintiffs place such heavy reliance (Opposition, 19-22), concerned employees of

21  church offices and attendants in Christian Science Reading Rooms, and held only that "when religious,

22

23  [19] Wage Order 7, under which Plaintiffs bring suit here, contains identical language. (Cal. Code Regs., tit.

24  8 § 11070(1) ["This order shall apply to all persons employed in the mercantile industry whether paid on a time, piece rate, commission, or other basis"].)
    [20] The court quoted a 1988 DLSE Opinion Letter "explaining that, for purposes of the IWC work orders, a

25  person who works for a 'religious, charitable, or similar nonprofit corporation' is not an employee if he or she 'intends to volunteer his or her services for public service, religious, or humanitarian objectives, not

26  as an employee and without contemplation of pay. However, if a person works for a *commercial* enterprise operated by such a religious, charitable, or nonprofit corporation (such as a restaurant or thrift

27  store), the DLSE considers that person to be an employee." (*Id.* at 1038-1039 (cleaned up).) The court surmised that the latter interpretation "reflects a concern that commercial employers could take advantage

28  of workers who agree to forgo pay in the hope of securing future paid employment or other career benefits." (*Id.* at 1040.) No such concern is raised here.

- 17 -

*Spillman, et al. v. The Salvation Army, et al.* CGC-21-591364 Order On Cross-Motions for Summary Adjudication

charitable or nonprofit organizations operate commercial enterprises which serve the general public, such as restaurants or thrift stores, . . . such enterprises are subject to the [IWC] Orders and volunteers may not be utilized." Thus, "If the person performing the service is an employee, that person must be paid pursuant to the IWC Orders." The DLSE did not address whether persons such as Plaintiffs who enroll in a rehabilitation program are "volunteers" or should be considered "employees." In any event, "DLSE opinion letters are not controlling, and need not be followed if they do not contain persuasive logic or if they unreasonably interpret a wage order." (*Cash v. Winn* (2012) 205 Cal.App.4th 1285, 1302.)

### 4.    Federal Authority Under the FLSA

A number of federal courts have addressed a closely related issue: whether voluntary participants in residential alcohol and drug rehabilitation programs should be deemed "employees" for purposes of the minimum wage and overtime provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 ("FLSA"). While there is a split of authority, the apparent weight of authority as well as the more persuasive cases hold that participants in such programs who engage in work as part of their rehabilitation programs are not employees entitled to the protections of FLSA.

Thus, in *Williams v. Strickland* (9th Cir. 1996) 87 F.3d 1064, the Ninth Circuit held that a participant in a six-month work therapy program at a Salvation Army alcoholism rehabilitation center was not an "employee" under the FLSA. The court provided the following summary of the facts, which are materially identical to those presented here:

> The Salvation Army is a nonprofit religious and charitable organization which runs both Adult Rehabilitation Centers and thrift stores. At the Rehabilitation Centers, the Salvation Army offers beneficiaries room, board, work therapy, and spiritual and religious counseling for periods up to six months. Beneficiaries are required to apply for general assistance and food stamps and turn those benefits over to the Army to offset the cost of their room and board.

(*Id.* at 1065.) Plaintiff applied for admission to the San Francisco Rehabilitation Center, and signed a "Beneficiary's Admittance Statement" which specified:

> I further understand that under no circumstances can this Center be under any obligation to me; and that I am a beneficiary and not an employee of this Center.

> I understand that my admission and continued residence is dependent upon my needing such assistance and my willingness to help myself and others so situated, including the voluntary performance of such duties as may be assigned to me.

(*Id.*) Plaintiff was admitted and participated in the rehabilitation program for approximately six months,

during which a treatment plan was developed for him and he attended in-house counseling, an alcohol-abuse program, and church services. As part of his treatment, he engaged in work therapy on a full-time basis, including refinishing furniture that was sold through one of TSA's thrift stores and sorting food and clothing donations at the Center's loading dock. (*Id.*) He received food, clothing, shelter, and a small stipend of seven to twenty dollars per week. (*Id.*) He was ultimately dismissed from the Center for drinking. (*Id.*) He sued the Salvation Army alleging that he was an employee under the FLSA, and therefore entitled to minimum wage and overtime pay. On cross-motions for summary judgment, the district court granted summary judgment for the Salvation Army, holding that plaintiff was not an employee. (*Id.*)

The Ninth Circuit affirmed, applying U.S. Supreme Court cases which formulated an "economic reality" test for employment under the FLSA. (*Id.* at 1066-1067, discussing *Walling v. Portland Terminal Co.* (1947) 330 U.S. 148 and *Tony & Susan Alamo Found. v. Secretary of Labor* (1985) 471 U.S. 290.) Under that test, "[a]n individual who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit is outside the sweep of the Act." (*Tony & Susan*, 471 U.S. at 295, quoting *Walling*, 330 U.S. at 152.) Thus, the test is whether the individual works either express or impliedly "in contemplation of compensation." (*Id.* at 302, 306.) The court held that plaintiff was not an "employee" entitled to a minimum wage under the FLSA because he "had neither an express nor an implied agreement for compensation with the Salvation Army and thus was not an employee." (*Id.* at 1067.) The Beneficiary's Admittance Statement stating that plaintiff was "a beneficiary and not an employee of this Center" indicated that "there was no express agreement for compensation." (*Id.*) Nor was there an implied agreement for compensation, since plaintiff was admitted to TSA's rehabilitation program for treatment for his alcoholism; thus, his "relationship with the Salvation Army was solely rehabilitative." (*Id.*) "[Plaintiff's] work therapy was not performed in exchange for in-kind benefits, but rather was performed to give him a sense of self-worth, accomplishment, and enabled him to overcome his drinking problems and reenter the economic marketplace." (*Id.*)[21] Likewise, evidence that plaintiff turned over government

---

[21] While plaintiff later stated during discovery that he believed that he was in an employment relationship, the majority held that this statement, "which was not expressed to anyone at the time of his admittance," was not sufficient to create a genuine issue of fact. (*Id.* at 1067 (cleaned up).) Circuit Judge Poole

1    benefits such as general assistance and food stamps to the Salvation Army to offset the cost of his room,

2    board, and clothing "strongly counsel[ed] against a holding that [plaintiff] received the in-kind benefits in

3    exchange for his work. Rather, these benefits were given to [plaintiff] to enable him to pursue his

4    rehabilitation and [he] was required to help offset their cost." (*Id.*) Thus, "there was no bargained-for

5    compensation" because "the rehabilitation participants had no expectation of compensation other than

6    treatment." (*Benjamin v. B & H Education, Inc.* (9th Cir. 2017) 877 F.3d 1139, 1145.)[22]

7        Other courts have reached the same conclusion under the FLSA and under other state laws

8    modeled after the FLSA. (See, e.g., *Vaughn v. Phoenix House N.Y., Inc.* (2d Cir. 2020) 957 F.3d 141,

9    144-145 [participant in residential drug and alcohol treatment facility who alleged he was required to

10   work eight hours a day, six days a week was not an "employee" under the FLSA where there was "no

11   expectation of compensation" and where participant "received significant benefits from staying at

12   Phoenix House, in large part because he was permitted to receive rehabilitation treatment there in lieu of a

13   jail sentence, and was provided with food, a place to live, therapy, vocational training, and jobs that kept

14   him busy and off drugs" (cleaned up)]; *Fochtman v. Hendren Plastics, Inc.* (8th Cir. 2022) 47 F.4th 638,

15   644-647 [participants in court-ordered drug and alcohol recovery program who received room and board,

16   clothing, and other necessities and worked for local for-profit businesses as part of the program were not

17   "employees" where participants undertook the recovery program for their own purposes to avoid

18   imprisonment, and they had no reason to expect compensation (applying Arkansas law)];[23] *Armento v.*

19   *Asheville Buncombe Community Christian Ministry, Inc.* (4th Cir. 2021) 856 Fed.Appx. 445, 451-454 (per

20   curiam) [resident of homeless shelter who participated in unpaid work rehabilitation program designed to

21

---

22   dissented on the ground that plaintiff's statement in his declaration that he expected to be compensated for
23   his labor, among other things, gave rise to material disputes of fact regarding plaintiff's employment
     status with the Salvation Army. (*Id.* at 1068 (Poole, C.J., dissenting).)
     [22] See also, e.g., *Hale v. State of Arizona* (9th Cir. 1993) 993 F.2d 1387, 1394-1395 (en banc) [prison
24   inmates who worked for state prison industries programs were not "employees" of the prison entitled to
     be paid the federal minimum wage under the FLSA because, although prison allowed or disallowed them
25   to work, controlled the time and conditions under which they worked, determined the rate of pay, and kept
     records, the prison's control over the prisoners did not stem from any remunerative relationship or
26   bargained-for exchange of labor for consideration; the relationship was "penological, not pecuniary"].)
     Likewise, here, TSA's relationship with Plaintiffs was rehabilitative, not pecuniary or remunerative.
27   [23] Notably, although the participants in the program involved in *Fochtman* worked for a for-profit
     business that received an immediate advantage from their work, the court found that the participants "had
28   no reason to expect compensation from [the business]," and noted that it provided funding to the recovery
     facility that enabled it to maintain the program. (47 F.4th at 636.)

help residents build basic job skills by working as front desk manager was not employee of nonprofit that operated the shelter (North Carolina law)].)[24] These cases typically apply the "primary beneficiary" test, a version of the "economic reality" test, which calls upon courts to evaluate a non-exhaustive set of factors. (See, e.g., *Vaughn*, 957 F.3d at 145-146; *Harker v. State Use Industries* (4th Cir. 1993) 990 F.2d 131, 133 [prisoners participating in work program were not employees because they performed work "not to turn profits for their supposed employer, but rather as a means of rehabilitation and job training."].)

        In contrast, a handful of other courts have reached the opposite conclusion. (Compare, e.g., *Klick v. Cenikor Foundation* (5th Cir. Aug. 16, 2023) 2023 WL 5274418, *5 [district court properly certified collective action to determine whether drug rehabilitation participants were employees under FLSA after making threshold determination that participants were employees "because they worked in expectation of compensation"];[25] *Alvear v. Salvation Army* (N.D. Ga. Mar. 8, 2023) 2023 WL 2711544, *3-*8 [for purposes of motion to dismiss, participants in TSA's ARCs plausibly alleged they were employed for purposes of FLSA].)[26]

        To be sure, as Plaintiffs correctly point out, authority under the FLSA is not controlling.[27] The California Supreme Court has made clear that the provisions in the IWC's wage orders defining the

---

[24] The *Armento* court held, among other things, that the primary beneficiary of the unpaid work rehabilitation program was the residents themselves. "The objective of the Service Hours Program . . . is to transition homeless veterans back into gainful employment by reintegrating them into a community, habituating them to structure, building their confidence, teaching them basic job skills, and limiting their idle time." (856 Fed.Appx. at 453-454.) TSA claims similar goals for the Work Therapy component of its Program.

[25] In *Klick*, plaintiffs were enrolled in an adult long-term patient treatment program in which they were assigned jobs and required to work. The primary treatment phase lasted 16 to 18 months, and the "vocational therapy" (work) took place either in the defendant nonprofit's own facility or with one of the community businesses that partnered with the defendant. (2023 WL 5274418 at *1.) The defendant billed the outside businesses for the hours worked by the program participants, including charging them for overtime when participants worked more than 40 hours a week, and was paid directly by the businesses for the labor provided by the program participants at contractually agreed upon rates. (*Id.* at *2.) The defendant collected nearly $14 million from outside businesses for the labor of its program participants within two years. (*Id.* at *4.) All those factors distinguish *Klick* from the instant case, where Plaintiffs were short-term program participants (six months) who worked directly for TSA, not for outside for-profit businesses.

[26] The district court in *Alvear* emphasized that its ruling on TSA's motion to dismiss was "grounded solely in Plaintiffs' well-pled allegations. It may turn out that discovery gives rise to a different picture of the Salvation Army's ARCs than that offered by Plaintiffs' complaint. But that is a question for a later day." (*Id.* at *11.)

[27] Plaintiffs assert that the federal cases "address irrelevant tests for employment . . . under the Fair Labor Standards Act . . . or other states' laws that mirror the FLSA." (Opposition, 15.) At the same time, Plaintiffs inconsistently rely upon cases decided under FLSA. (E.g., *id.* at 24-25.)

1  employment relationship do not incorporate federal law. (*Martinez*, 49 Cal.4th at 66.)  Nevertheless,

2  California courts may look to the FLSA as persuasive authority in interpreting California's wage laws.

3  (See, e.g., *Troester v. Starbucks Corp.* (2018) 5 Cal.5th 829, 845 ["FLSA case law can be persuasive

4  authority in interpreting our own wage laws"]; *Bell v. Farmers Ins. Exchg.* (2001) 87 Cal.App.4th 805,

5  817 ["California courts have recognized that California's wage laws are patterned on federal statutes and

6  that the authorities construing those federal statutes provide persuasive guidance to state courts."].)

7  Because *Strickland* and similar cases appear to constitute the weight of authority under the FLSA, and are

8  generally consistent with the principles of California law discussed above, the Court finds them

9  persuasive here.

10

11  **B.    Plaintiffs Voluntarily Participated In TSA's Residential Alcohol and Drug**
12  **Rehabilitation Programs Without Any Express Or Implied Agreement For**
      **Remuneration and Without Any Reasonable Expectation Of Compensation.**

13        In short, whether a person is an employee under California law raises similar issues, whether the

14  question arises under the FEHA, the Workers' Compensation Act, or the wage and hour laws.  While the

15  specific statutory and regulatory language varies somewhat, all three statutory schemes reflect the same

16  overarching principles: that the employment relationship under California law is fundamentally

17  contractual, and that an expectation of compensation is essential to such a relationship, such that

18  voluntary unpaid workers are not employees.  Those principles are dispositive here.  The undisputed

19  record establishes that Plaintiffs voluntarily participated in TSA's residential alcohol and drug

20  rehabilitation programs without any written or implied employment contract providing for

21  remuneration—indeed, pursuant to written agreements that specifically *disclaimed* any employment

22  status—and without any reasonable expectation of receiving compensation for their work.  The meals,

23  lodging, and minor "gratuities" that Plaintiffs received do not constitute wages or significant

24  remuneration, but rather are merely incidental to their rehabilitation programs.  It follows that Plaintiffs

25  are not employees within the meaning of the wage and hour provisions of the Labor Code.

26        Plaintiffs insist that the *Martinez* and Wage Order tests control, and that they need not show either

27  that they entered into a bargained-for agreement to exchange their labor for pay or that they had any

28  expectation of compensation.  (Opposition, 14-22.)  Plaintiffs' arguments are unpersuasive, for several

1 reasons.

2  First, the Court disagrees with Plaintiffs' contention that the requirement of an express or implied

3 contract providing for compensation "has no basis in California law." (Opposition, 14.) To the contrary,

4 California law recognizes that "the employment relationship is fundamentally contractual, meaning it is

5 governed in the first instance by the mutual promises made between employer and employee. The

6 promise to pay money in return for services rendered lies at the heart of this relationship." (*Voris*, 7

7 Cal.5th at 1148; accord, *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 335, quoting *Foley v.*

8 *Interactive Data Corp.* (1988) 47 Cal.3d 654, 696.) Indeed, as the *Woods* court observed, the same basic

9 understanding is reflected in the IWC's wage orders, whose reference to the mode of payment "suggests

10 an assumption that the workers subject to the Wage Orders are working for pay," as does the same

11 language in the Labor Code itself. (*Woods*, 72 Cal.App.5th at 1038.)[28] Here, not only is it undisputed

12 that Plaintiffs had no written employment agreement with TSA, they agreed in writing that *they were not*

13 *employees of TSA at all*, that they were not entitled to receive wages or other compensation, and that the

14 minor gratuities they might receive in addition to room and board were "*not* pay for work done." While

15 parties may enter into an implied-in-fact contractual understanding, the nature of which must be

16 determined from the totality of the circumstances, "where the undisputed facts negate the existence or the

17 breach of the contract claimed, summary judgment is proper." (*Guz*, 24 Cal.4th at 337; see, e.g., *Dore v.*

18 *Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 389 [an express at-will agreement precludes the existence

19 of an implied contract requiring good cause for termination].)[29]

20

---

[28] Thus, that these cases arose in the context of tort and contract claims (in *Voris*, a claim for conversion

21 for unpaid contractual wages; in *Guz*, for breach of an implied contract to be terminated only for good
cause) does not somehow render the overarching principle irrelevant. Plaintiffs do not cite a single case

22 in which a court applied the wage and hour provisions of the Labor Code in the absence of an express or
implied employment contract. The only example they offered at the hearing was a joint employer case in

23 which the opinion makes clear that the employee did have an express employment contract with his
primary employer, the MSO operator of a gas station, which was owned by the putative joint employer, a

24 subsidiary of Shell Oil Company. (*Medina v. Equilon Enterprises, Inc.* (2021) 68 Cal.App.5th 868, 873
["Plaintiff entered a written at-will employment agreement with R&M," the MSO operator].) The court

25 reversed summary judgment for Shell on the ground that it both indirectly controlled plaintiff's wages and
working conditions and suffered or permitted plaintiff to work at Shell's stations, either of which was

26 enough to make Shell plaintiff's joint employer. (*Id.* at 879.) That a defendant may be deemed the joint
employer of a plaintiff who has an express employment contract with another entity over which it

27 exercises indirect control is very different than what Plaintiffs suggest here, which is that TSA may be
found to be their sole employer even though they had no express or implied employment agreement with

28 TSA or any other entity.
[29] In their opposition, Plaintiffs belatedly suggest that to the extent TSA argues that the express

Second, Plaintiffs contend Defendants have not cited a single wage-and-hour case requiring an agreement for remuneration. (Opposition, 14, 17-18.) Not so. As discussed above, *Fox* is just such a case: it held that volunteers for nonprofit employers are not employees subject to the wage laws under the Labor Code, affirming the trial court's ruling that "putative class members who expected no compensation were not employees under California law." Here, while Plaintiffs may not have been "volunteers" in the usual sense of that term, they admit they voluntarily enrolled in their rehabilitation programs to address their problems with drug or alcohol abuse. There is no evidence that Plaintiffs had any reasonable expectation of receiving compensation in the form of wages for the work therapy they performed during their rehabilitation programs. Plaintiffs do not contend they had any such expectation, they admitted in deposition that no one told them that they were employees, and all of the documentation relating to their participation in the ARCs was to the contrary. Plaintiffs do not cite a single case in which a court applied the wage and hour laws to an uncompensated volunteer who lacked any reasonable expectation of receiving compensation.

Plaintiffs' fallback contention that they did, in fact, have an implied-in-fact agreement with TSA to work for pay (Opposition, 22-26) is unpersuasive. In-kind benefits such as food, lodging, and rehabilitation services were part and parcel of Plaintiffs' rehabilitation programs, not wages or other "remuneration." (See Lab. Code § 1720.4(a)(2) [in context of work performed by volunteers, "[a]n individual may receive reasonable meals, lodging, transportation, and incidental expenses or nominal nonmonetary awards without losing volunteer status if, in the entire context of the situation, those benefits and payments are not a substitute form of compensation for work performed."].) Even if those benefits were deemed to constitute "wages" or "remuneration," Plaintiffs do not contend, nor could they, that they entered into any implied agreement that TSA would pay them minimum wage, overtime, or any form of cash salary or wages. The only "cash" TSA agreed to pay Plaintiffs were "gratuities" in the form of exceedingly modest payments and canteen cards as incentives to remain in their programs. Those were

---

agreements signed by Plaintiffs result in their waiving their rights under the Labor Code, those agreements are void. (Opposition, 25-26.) The Court does not understand TSA to be making any such waiver argument. In any event, the argument is circular: the issue before the Court is *whether* Plaintiffs have any rights under the Labor Code as employees, not whether they waived such rights. Likewise, the Court need not reach the "public policy" arguments debated by the parties or the meaning and effect of Proposition 36 to decide their cross-motions. (Def. Opening Brief, 34-36; Pl. Opposition, 28-32.)

1  merely benefits incidental to their voluntary participation in the programs, not remuneration. (See *Talley*,

2  51 Cal.App.5th at 1087, citing *Juino v. Livingston Parish Fire Dist. No. 5* (5th Cir. 2013) 717 F.3d 431,

3  439-440 ["volunteer firefighter received $2 per fire/emergency call, life insurance, a uniform and badge,

4  and firefighting and emergency response gear deemed benefits merely incidental to volunteer service and

5  not remuneration"].)  Put simply, Plaintiffs received exactly what they signed up for, and cannot now

6  claim that TSA entered into an implied agreement to also pay them hourly wages.  It did not.

7      Third, Plaintiffs argue that FEHA cases such as *Mendoza* and *Estrada* are inapposite because the

8  definition of employee under FEHA is narrower than the *Martinez* alternative tests for their wage and

9  hour claims.  (Opposition, 17.)  However, Plaintiffs fail to acknowledge a key principle of statutory

10  construction: "Statutes relating to the same subject matter must be harmonized insofar as possible."

11  (*Shephard v. Loyola Marymount Univ.* (2002) 102 Cal.App.4th 837, 845-846 [holding that a student

12  athlete was not a school employee for FEHA purposes].)  Thus, as one court observed in holding that the

13  definition of "employee" should be the same under FEHA as under the Workers' Compensation Act,

14  "Common sense suggests these statutes . . . , both of which were designed to provide workplace

15  protection for employees should be construed together in a harmonious fashion." (*Id.* at 846.)  Indeed,

16  any other result would make little sense and lead to anomalous results, which contradicts yet another tenet

17  of statutory construction: "Statutes are to be construed so as to avoid absurd or unreasonable results." (*Id.*

18  at 846.)[30]  As a second court observed, "it would be incongruous to determine that [plaintiff] is an

19  employee under the FEHA, but not an employee for workers' compensation purposes." (*Mendoza*, 128

20  Cal.App.4th at 635.)  Likewise, it would be anomalous if Plaintiffs were considered employees for

21  purposes of the wage and hour laws, but not for purposes of California's employment discrimination or

22  workers' compensation laws (or for purposes of contract law).  Exactly as in *Shepard*, "Plaintiff[s] ha[ve]

23  pointed to no legislative history materials nor any valid public policy which would support such an

24  unreasonably divergent construction of California law."  (102 Cal.App.4th at 847.)

25      For all of the foregoing reasons, the Court concludes that Plaintiffs are not TSA's employees for

26  purposes of California's wage and hour laws in the Labor Code.

27

28  [30] If Plaintiffs' approach were to be accepted, unpaid volunteers, student interns, and prisoners—all of whom organizations arguably "suffer or permit to work"—would be considered "employees" under the Labor Code.  That is plainly not the law.

1

## **CONCLUSION**

2      For the foregoing reasons, Plaintiffs' motion for summary adjudication regarding employment

3  status is denied, and Defendant's cross-motion for summary adjudication that Plaintiffs were not

4  Defendant's employees under California law is granted.  Pursuant to Section 166.1 of the Code of Civil

5  Procedure, the Court finds that the issue presented by the parties' cross-motions—whether Plaintiffs, who

6  voluntarily participated in TSA's six-month residential alcohol and drug rehabilitation program are TSA's

7  "employees" within the meaning of the Labor Code—presents a controlling question of law as to which

8  there are substantial grounds for difference of opinion, appellate resolution of which may materially

9  advance the conclusion of the litigation.[31]

10     IT IS SO ORDERED.

11

12  Dated: September 28, 2023

13                                                                    Ethan P. Schulman
                                                                  Judge of the Superior Court
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
_____

[31] Both parties agreed at the hearing that the standard set forth in section 166.1 is met.

*Spillman, et al. v. The Salvation Army, et al.* CGC-21-591364 Order On Cross-Motions for Summary Adjudication

**CERTIFICATE OF ELECTRONIC SERVICE**
(CCP 1010.6(6) & CRC 2.260(g))

I, Felicia Green, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On September 28, 2023, I electronically served ORDER ON CROSS-MOTIONS FOR SUMMARY ADJUDICATION REGARDING EMPLOYMENT STATUS via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated:   SEP 2 8 2023

Brandon E. Riley, Court Executive Officer

By:   _Felicia Green_____

Felicia Green, Deputy Clerk