**Case No. 22-20434**

---

In the United States Court of Appeals for the Fifth Circuit

---

TIMOTHY KLICK; WILTON CHAMBERS; MALIK ALEEM;
JOHN POTTER; ANTHONY D. WOODS,
Plaintiffs – Appellees
v.
CENIKOR FOUNDATION,
Defendant – Appellant

---

On Appeal from the United States District Court
For the Southern District of Texas, Houston Division

---

**APPELLEES' RESPONSE TO APPELLANT'S
PETITION FOR REHEARING EN BANC**

---

Josh Borsellino
Borsellino, P.C.
3267 Bee Cave Rd.,
Ste. 107, Box # 201
Austin, TX 78746
Tel: (817) 908-9861
**ATTORNEY FOR TIMOTHY
KLICK AND WILTON CHAMBERS**

Charles J. Stiegler
Stiegler Law Firm
318 Harrison Ave., Ste. 104
New Orleans, LA 70214
Tel: (504) 267-0777
**ATTORNEY FOR MALIK
ALEEM**

Josh Sanford
Sanford Law Firm, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Ste. 510
Little Rock, Arkansas 72211
Tel: (800) 615-4946
**ATTORNEY FOR ANTHONY WOODS**

James R. Bullman
Blackwell & Bullman, LLC
8322 One Calais Ave.,
Baton Rouge, LA 70809
Tel: (225) 769-2462
**ATTORNEY FOR JOHN POTTER**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.

1.    Appellant is:

Cenikor Foundation

2.    The original Plaintiffs/Appellees in the consolidated cases are:

Timothy Klick, Malik Aleem, John Potter, Anthony Woods, Wilton Chambers Within the consolidated cases (No. 4:19-cv-3031, 4:19-cv-3032, 4:19-cv-3033, and 4:19-cv-4569) approximately 226 individuals have filed notices of consent to join this action as putative opt-in plaintiffs. The names of these putative opt-in plaintiffs, as reflected in PACER and publicly filed documents, are listed on Exhibit A to Cenikor's Petition for Rehearing En Banc.

3.    Appellant is represented by:

David M. Gregory
Christopher Dove
Andrew W. Reed
Kathleen Grossman
Locke Lord LLP
Frank Sommerville
Weycer, Kaplan, Pulaski & Zuber, P.C.

4.    Appellees are represented by:

For Timothy Klick and Wilton Chambers:
Josh Borsellino
**Borsellino, P.C.**

Douglas Werman
**Werman Salas P.C.**

For Malik Aleem:
Charles Stiegler
**Stiegler Law Firm, LLC**

For John Potter:
John Bullman
**Blackwell & Bullman, LLC**

For Anthony Woods:
Josh Sanford
Daniel Ford
**The Sanford Law Firm**

/s/ Josh Borsellino
Josh Borsellino

# TABLE OF CONTENTS

Certificate of Interested Persons…………………………………………………ii

Table of Contents……………………………………………………………….iv

Table of Authorities…………………………………………………………...v

Statement of Issues…………………………………………………………..vii

Response to Cenikor's Statement of Facts………………………………………1

Summary of the Argument……………………………………………………3

Argument………………………………………………………………...4

     A.     None of the *en banc* factors apply…………………….…………………4

     B.     The panel correctly applied Fifth Circuit precedent and *Alamo*…..……5

     C.     The panel faithfully adheres to *Swales*……………………..….…9

          1.     The panel determines Plaintiffs may collectively litigate a merits issue, but it does not resolve that issue, consistent with *Swales*………………………………………………9

          2.     The panel applies the correct burden of proof pursuant to *Swales*……………………………………………...11

     D.     The privacy issue raised by Cenikor provides no basis for *en banc* review…………………………………………..14

Certificate of Compliance…………………………………………………17

Certificate of Service……………………………………………………...18

# TABLE OF AUTHORITIES

**Cases**

*Doe v. Meachum*,
 126 F.R.D. 444, 450 (D. Conn. 1989)…………………………………..…16

*F.D.I.C. v. Mijalis*,
 15 F.3d 1314 (5th Cir. 1994)………………………………………………13

*Ginest v. Board of County Commissioners of Carbon County*,
 306 F. Supp. 2d 1158 (D. Wy. 2004). ………………………………….…..16

*Heredia v. Tate*,
 No. 3:19-cv-00338-jdp, (W.D. Wisc., Dec. 22, 2020) ……………………16

*Hoffmann-La Roche Inc. v. Sperling*,
 493 U.S. 165 (1989)…………………………………………………….…..10

*In re Employment Records of John Does Employed By Sharpe Holding, Inc.*,
 No. 417MC238-RLW, 2017 WL 6547738 (E.D. Mo. Dec. 20, 2017)…….....16

*In re JPMorgan Chase*,
 916 F.3d 494 (5th Cir. 2019)………………………………………….…..10

*In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*,
 Civ. A. No. 16-5073 (E.D. Pa. Dec. 3, 2021)…………..……...………….16

*Johnson v. Lumpkin*,
 76 F.4th 1037 (5th Cir. 2023)…………………………………………….....4

*Maverick Recording Co. v. Harper*,
 598 F.3d 193 (5th Cir. 2010)……………………………………….……...13

*Songer v. Dillon Res., Inc.*,
 618 F.3d 467 (5th Cir. 2010)……………………………………….……...14

*Swales v. KLLM Transp. Servs., L.L.C.*,
 985 F.3d 430 (5th Cir. 2021)…………………………………….…*passim*

*Tony and Susan Alamo Found. v. Sec'y of Labor,*
    471 U.S. 290 (1985) …………………………………………..………*passim*

*Woodfield v. Bowman*,
    193 F.3d 354 (5th Cir. 1999)………………………………………………..13

## Statutes and Rules

29 C.F.R. § 782………………………….……………………………………...14

29 U.S.C. § 203(e) …………………………………….…………………...6

42 C.F.R. § 2.64………………………………………………………………...15

42 U.S.C. § 290dd-2…………………………………………….…………………15

## STATEMENT OF ISSUES

1. Whether the panel properly applied Supreme Court precedent in concluding that Plaintiffs' and potential opt-in plaintiffs' status as "employees" under the Fair Labor Standards Act was appropriate for collective adjudication.

2. Whether the panel correctly concluded that, based on evidence the parties presented to the district court, Cenikor's asserted defenses did not require denial of the motion for conditional certification.

3. Whether the panel properly determined that the privacy rights of potential opt-in plaintiffs could be addressed through a protective order.

**RESPONSE TO CENIKOR'S STATEMENT OF FACTS**

Cenikor is a drug rehabilitation program.[1] Since 2016, Cenikor has operated eight "treatment centers" in Texas, and one in Baton Rouge, Louisiana.[2] In 2019, six FLSA lawsuits were filed against Cenikor alleging that Cenikor had sent thousands of individuals in Louisiana and Texas to work without monetary compensation at major companies such as Walmart, Shell and ExxonMobil. While at Cenikor, Plaintiffs were not paid for any time worked, including time worked over 40 hours per week.[3] Cenikor calls this its "Work Program."

The three phases of Cenikor's Work Program - orientation, primary phase and reentry phase - remained unchanged from at least March 1, 2016 until Cenikor discontinued its Work Program in 2021. ROA.2221; ROA.2262-2265. All Work Program participants were assigned to work at third-party businesses or in-house at the Cenikor facility, which is "one of the components of the primary phase" of the Work Program. ROA.2223. *Swales* discovery in this case confirmed, and the district court found, that:

- Cenikor had a company-wide policy of classifying its program participants as volunteers and denying them monetary compensation during the primary phase. ROA.2257-2258.
- All program participants lived at Cenikor facilities under the same Cenikor policies. ROA.2228.

---

[1] *See* [https://www.cenikor.org/about-us/our-mission/ (last visited November 30, 2022)](https://www.cenikor.org/about-us/our-mission/).
[2] [https://www.cenikor.org/locations/](https://www.cenikor.org/locations/).
[3] *See* [https://revealnews.org/tag/cenikor/](https://revealnews.org/tag/cenikor/) *(last visited November 30, 2022)*.

- All program participants received the same in-kind benefits, *i.e.* meals, lodging and medical treatment, all of which were paid for by Cenikor. *Id*.
- All program participants signed the same intake documents, which required them to work as directed by Cenikor, allowed Cenikor to expel them at any time, and authorized Cenikor to send them notices by text or email after leaving the program. ROA.2239; ROA.2343; ROA.2246-2249.

Cenikor contracted with customers that it called "Vocational Business Partners," typically for-profit companies. ROA.2229-2230. Cenikor sent Work Program participants to work for these customers. *Id*. Cenikor billed its customers for the hours worked by the program participants. ROA.2240. In 2017, Cenikor billed its customers more than ***$7 million dollars*** for the labor of its program participants. ROA.2244; ROA.2344. In 2018, Cenikor invoiced more than ***$6.9 million dollars*** to its customers. *Id*. Cenikor's customers pay for the labor provided by the program participants at contractually agreed-upon rates. ROA.2240. Cenikor kept this money, but program participants were not paid for their work during the primary phase. ROA.2255-2256. Cenikor had a specific provision in its form contract with Vocational Business Partners regarding overtime pay, which provided that program participants were "presumed to be nonexempt," and allowed Cenikor to charge its customers a 150 percent premium for hours when program participants worked more than 40 hours per week. ROA.2371-2372. Since May of 2016, 2,736 individuals participated in the primary phase of the Work Program. ROA.2266-2267.

## SUMMARY OF THE ARGUMENT

The panel properly affirmed the district court's certification of this FLSA collective action under the *Swales* standard. Like in the controlling Supreme Court case, *Tony & Susan Alamo*, program participants may have known they would not receive money during the primary phase, but they nonetheless understood that they would be provided with food, shelter and medical care, while Cenikor was paid by third-parties for their labor. Under *Alamo*, these in-kind benefits are "wages in another form," and because of this and other "economic realities" of the parties' relationship, such as the degree of control exercised by Cenikor over the program participants, the employee status of the class members can be answered - affirmatively - on a class-wide basis.

Moreover, the panel correctly held - considering all available evidence adduced through targeted *Swales* discovery - that Cenikor's three asserted defenses do not preclude certification. With respect to both the *Rooker-Feldman* doctrine and the Motor Carrier Act exemption, the district court found that there was no evidence in the record that these defenses applied. Nor does Cenikor's offset defense - which it never raised in briefing on the motion to certify - warrant *en banc* review. Lastly, Cenikor argues that the class members should not be notified of their FLSA rights, claiming that doing so would violate their right to privacy. But Cenikor identifies no contrary circuit authority that would warrant *en banc* review of this issue, and other

courts have allowed class certification in cases involving drug treatment patients, finding that privacy concerns are outweighed by an interest in redressing violations of federal law.

## ARGUMENT

### A.    None of the *en banc* factors apply.

*En banc* review is an extraordinary remedy and should be granted sparingly. *Johnson v. Lumpkin*, 76 F.4th 1037, 1039 (5th Cir. 2023). An *en banc* petition "should be used only to bring the court's attention to an issue of 'exceptional public importance' or one that 'directly conflicts' with on-point Supreme Court or prior Fifth Circuit precedent." *Id.* Neither factor applies here.

First, this is not a matter of "exceptional public importance." The factual circumstances in this case are unique, and matter only to Cenikor. There is no hint of other "drug rehab" facilities in this Circuit[4] which, like Cenikor, operate as third-party staffing agencies requiring supposed patients to work at for-profit businesses without compensation. Moreover, after this lawsuit was filed, Cenikor stopped operating its Work Program. There would therefore be zero prospective precedential value to any *en banc* opinion; this ruling is relevant only to Cenikor , and only retrospectively. There is simply no widely applicable precedential value to the question presented here*,* and no question of exceptional public importance.

---

[4] Cenikor's purported *amici* don't operate within Louisiana, Mississippi, or Texas, and thus have no dog in this fight.

Second, the panel opinion does not conflict with any pre-existing Fifth Circuit or Supreme Court precedent. The panel faithfully applies this Court's longstanding precedent in applying the economic reality test to the FLSA employee question. It likewise faithfully applies the Supreme Court's *Alamo* decision. Cenikor explicitly asks for *en banc* review to <u>create</u> a conflict with prior Fifth Circuit and Supreme Court precedent, as discussed below. That is emphatically not the purpose of the *en banc* process.

**B.      The panel correctly applied Fifth Circuit precedent and *Alamo*.**

Cenikor seeks *en banc* review to craft a new FLSA employer test which would apply, apparently exclusively, to "volunteers, trainees, interns, and drug-rehabiliation patients." Pet., 14. But inventing such a special test and then applying it to disparate groups like "volunteers, trainees, interns, and drug-rehabiliation patients" would be both over- and under-inclusive. And even deciding whether to apply this newly invented test would requires circular analysis– to state that someone is a "volunteer," for example, requires preemptively deciding the ultimate FLSA issue, before even deciding which test applies. In short, it's a bad idea.

Fortunately, the "economic reality" test, which the panel opinion applies here, presents a time-tested and robust method for determining whether an individual is an FLSA employee. That test is informed by decades of Supreme Court and Fifth Circuit precedent, applies in a wide variety of situations, and requires no confusing

first-level analysis to determine which test to apply. It is far superior to Cenikor's proposed made-up replacement.

First, using a single "economic reality" test is in accord with the statute. Under the FLSA, one is either an employee (and entitled to the protections of the Act), or not. The term employee is defined expansively, to include "any individual employed by an employer." 29 U.S.C. § 203(e). This Circuit, applying longstanding Supreme Court precedent, has repeatedly and consistently applied the "economic reality" test to determine this question. Cenikor would have the Court toss aside that well-established test for a variety of disparate tests. Right now they are seeking a separate test for "trainees, interns, volunteers, and drug rehabilitation patients,"[5] but if Cenikor's preferred group gets its own unique test, the gates are open to reconsidering the economic realities test in all cases. It is far more sensible to maintain the "economic realities" test because it is broad enough to apply to all of the numerous, varied ways which the employer/employee relationship can pan out. Cenikor would apparently prefer unique tests, with unique balancing factors, for every potential combination of employment relationships. This would unsettle the law and create confusion within the district courts.

---

[5] One struggles to imagine what factors lie in common to those four groups of people, but are inapplicable to all others. Cenikor never really tries to explain, probably because it cannot.

Cenikor also never really explains why the economic realities test is *not* appropriate here. The best argument it musters is that factors such as "personal investment in the enterprise" or "provision of tools and equipment" are allegedly "inapposite." Pet., 16. Cenikor's true complaint is not that these well-established factors are "inapposite," but that they weigh against Cenikor in these particular circumstances. Plaintiffs here did *not* have personal investment in the business, and they did *not* provide the tools and equipment that they used to earn money for Cenikor. Cenikor, seeking to avoid this inevitable conclusion, asks this Court to upend decades of preexisting FLSA precedent and draft an entirely new test, in favor of factors more helpful to Cenikor. This results-based reasoning is not an appropriate use of the *en banc* petition.

Nor does Cenikor explain how a test that applies exclusively to "trainees, interns, volunteers, and drug rehabilitation patients" would actually work in practice, or why the preexisting "economic realities" test is inappropriate to those groups. An individual freely volunteering a day at a cancer recovery walk, or for a church fair, is clearly not an employee, and this would be reflected in applying the economic realities test. The same is true for interns – the economic realities test will either show an employment relationship or not, depending on the particular facts of the case. Cenikor's real complaint here is that the economic realities factors show that *these* plaintiffs are FLSA employees.

Cenikor's proposed test is also circular. It asks this Court to draw two separate FLSA employment tests—the economic realities test for "normal" FLSA cases, and a new test for "volunteers, interns, trainees, and drug-rehabilitation patients." But in order to determine which test to apply, a Court would have to first make a threshold determination whether a plaintiff is a "volunteer, intern, trainee, or drug-rehabilitation patient."[6] That would require the district court to put the cart before the horse; a preliminary finding that an individual is a "volunteer" or "trainee," rather than an "employee" (or *vice versa*) defeats the purpose of the test. Nor does Cenikor propose a workable standard for making this threshold determination.

Cenikor cites to several supposedly conflicting decisions from *other* Circuits, but it is not the purpose of an *en banc* call to bring this Court's precedent in line with the Second or Ninth Circuits. Its purpose is to ensure that this Court's decisions are consistent with the Supreme Court, and internally consistent with existing Fifth Circuit caselaw. The panel's opinion is both, and Cenikor's proposed "solution" would conflict with prior Fifth Circuit precedent and the Supreme Court's *Alamo* case. This is a dangerous road, and Cenikor's petition should be denied.

---

[6] Cenikor may be suggesting that its hand-selected test should apply whenever a defendant claims that a plaintiff fits one of these special categories. This would effectively allow an FLSA defendant to choose its own legal standard, at its sole discretion. That can't be right.

### C.    The panel faithfully adheres to *Swales*.

Cenikor argues the panel violates *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021) by deciding a merits issue and applying the incorrect burden of proof at the FLSA certification stage. Cenikor is wrong.

### 1.    The panel determines Plaintiffs may collectively litigate a merits issue, but it does not resolve that issue, consistent with *Swales*.

*Swales* clarifies the standard courts must apply at the FLSA certification stage. It instructs courts to "rigorously scrutinize" whether employees are similarly situated, and thus entitled to notice of a collective action, in a single determination at the "outset of the case." *Swales*, 985 F.3d at 434. In this determination, a court must avoid "endorsing the action's merits," but it may decide "whether merits questions can be answered collectively." *Id.* at 435, 442. And it can resolve "merits issue[s]" for "potentially dispositive, threshold matters." *Id.* at 431.

Consistent with *Swales*, the panel determines that Plaintiffs may collectively litigate merits questions. Panel, 8. Although Cenikor argues the panel "decide[s] a merits issue" by holding "rehabilitation patients constitute 'employees' under the [FLSA]," this argument has no basis in the panel opinion's text. Pet., 20 (quoting Panel, 9–10). The panel simply affirms certification of "a collective that seeks to *answer* that question through *ongoing* litigation." *Id.* (emphasis added).

Cenikor insists the panel at least makes a "preliminary" merits determination. Pet., 20. This also misreads the panel. In the language Cenikor cites, the panel

affirms a "*threshold* determination"—not a "preliminary" one. *Id.* (quoting Panel, 9–10) (emphasis in original). Under *Swales*, "threshold" determinations are simply those that courts must make before facilitating class notice, and they need not involve merits issues. 985 F.3d at 441–42. Here, the panel's "threshold" determination is that Plaintiffs are similarly situated enough that "the economic-realities test" for whether they are, in fact, "employees" can "be applied on a collective basis." Panel, 9–10 (quoting *Swales*, 985 F.3d at 442).

Even if the panel did determine Plaintiffs are employees on the merits, that would not violate *Swales*. *Swales* says district courts "can decide merits issues when considering the scope of a collective." 985 F.3d at 442 (emphasis added). Cenikor's contrary argument mischaracterizes precedent.

Cenikor claims that *Swales*, *In re JPMorgan Chase*, 916 F.3d 494 (5th Cir. 2019), and *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) "forbid courts to decide a merits issue at the certification stage." Pet., 20. *Swales* does no such thing. 985 F.3d at 441 ("The fact that a threshold question is intertwined with a merits question does not itself justify deferring those questions until after notice is sent out."). Neither does *JPMorgan*. It holds courts may resolve a merits issue before facilitating notice; namely, they may determine whether employees' contracts prevent them from participating in a collective action. *JPMorgan*, 916 F.3d at 501. As for *Hoffman-LaRoche*: it only cautions courts against "endorsing" a class action

to prevent the improper "solicitation of claims." 493 U.S. at 174. It does not bar merits determinations on threshold issues needed to ensure notice is sent to proper recipients. *Id.*

Finally, Cenikor's argument that the panel holds "courts *must* decide merits issues during certification" is groundless. Pet., 21 (emphasis added). The panel provides district courts with broad leeway in determining which determinations - merit-based or not - "must" be made before notice is sent to an FLSA collective. Panel, 10 ("[T]o determine if and when to send notice to potential opt-in plaintiffs, a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of employees is similarly situated.") (citing *Swales*, 985 F.3d at 441) (quotation marks removed). That is precisely what *Swales* directs courts to do. 985 F.3d at 443 ("The bottom line is that the district court has broad, litigation-management discretion here."). Cenikor's misinterpretations of the panel and *Swales* do not justify rehearing.

**2.    The panel applies the correct burden of proof pursuant to *Swales*.**

Under *Swales*, plaintiffs seeking to litigate as an FLSA collective have the "burden of establishing similarity" among their collective's members. 985 F.3d at 443. The panel recognizes this burden of proof. Panel, 10 ("As noted, plaintiffs bear the burden of proving a collective is similarly situated."). And the panel applies it.

*Id.* at 10–11 (affirming the district court's holding that Plaintiffs established they are similarly situated under the FLSA).

Cenikor argues, to the contrary, that the panel violates *Swales* by placing "the burden of proof on *Cenikor* to show the collective was *not* similarly situated on Cenikor's affirmative defenses." Pet., 21 (emphasis in original). This argument relies entirely on the following statement from the panel: "the district court properly concluded that [Cenikor's] defenses were either inapplicable or that Cenikor had not, at this stage, demonstrated they would require individualized inquiries." Panel, 11. Cenikor cherry-picks the latter half of that statement and contends it contains an incorrect burden of proof. Pet., 21.

But the snippet relied upon by Cenikor does not reflect a standard the panel actually applies. The panel's analysis of the offset defense focuses on *Plaintiffs'* showing before the district court - not Cenikor's. Panel, 11–12. As the panel puts it: "the offset defense" does "not warrant individualized inquiries" based on "plaintiffs' argument that the [relevant] calculations could be completed on a class-wide basis" by "subtracting aggregate costs from aggregate payments and dividing by the number of participants to determine an average." *Id.* The panel places no burden on Cenikor regarding the offset defense.

Cenikor complains that neither the panel nor the district court "has yet considered Cenikor's case law explaining why the court must calculate the offset in

this case person-by-person and week-by-week, meaning the collective is not 'similarly situated.'" Pet., 22. Cenikor cites nothing to support its claim that the panel failed to consider its authority. *Id.* Cenikor also waived its offset defense. It does not appear anywhere in Cenikor's brief opposing Plaintiffs' Motion for Conditional Certification. ROA.2140–2177. If a party "desires to preserve an argument for appeal, the litigant must press" the argument at the trial court level. *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1326 (5th Cir. 1994). To "press" an argument means to substantively brief it. *Maverick Recording Co. v. Harper*, 598 F.3d 193, 198 (5th Cir. 2010); *F.D.I.C*, 15 F.3d 1326. The panel had no obligation to consider—under any burden of proof—the impact of a waived offset defense.

Next, the panel does not place any burden on Cenikor regarding its *Rooker-Feldman* defense. Cenikor apparently agrees: it does not dispute the panel's holding regarding the *Rooker-Feldman* defense. Pet., 22–23.

Finally, the panel does not place an improper burden on Cenikor regarding the Motor Carrier Act ("MCA") exemption. It merely finds the exemption inapplicable because there "is no allegation" that rehabilitation patients loaded Cenikor's vehicles, as required. *Id.* Although Plaintiffs must show they are similarly situated to obtain certification, it is Cenikor's job to properly plead its affirmative defenses. *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999).

Cenikor claims the panel creates a conflict of law with *Songer v. Dillon Res., Inc.*, 618 F.3d 467 (5th Cir. 2010), which "held a staffing company can assert the MCA defense." Pet., 23. There is no conflict. This case concerns the MCA exemption for loaders. *Songer* concerns the exemption for drivers. Panel, 11 (quoting 29 C.F.R. § 782.5(a)); *Songer*, 618 F.3d at 475 (quoting 29 C.F.R. § 782.3). The MCA exemption only applies to loaders who load their *employer's* vehicles. 29 C.F.R. § 782.5(a). That is why the lack of allegations—and evidence—showing rehabilitation patients loaded *Cenikor's* vehicles defeats Cenikor's MCA exemption defense. *See* Panel, 11. The MCA exemption for drivers does not have a similar requirement, so the panel does not conflict with *Songer*. 29 C.F.R. § 782.3.

**D.**     **The privacy issue raised by Cenikor provides no basis for *en banc* review.**

Cenikor seeks review of the panel's ruling that the privacy rights of the members of the collective do not preclude FLSA certification. Cenikor cites no contrary Fifth Circuit precedent, as there is none. Nor does Cenikor even attempt to argue that the privacy issue involves a question of exceptional importance. Nor could it – Cenikor cites no contrary caselaw, much less any from this circuit. Further, the district court's order allows Cenikor ***itself*** to send the FLSA notice to class members, and thus there would be no disclosure of any alleged private information.[7]

---

[7] After certification, Plaintiffs made proposals to address Cenikor's alleged privacy concerns: (1) Cenikor could send out the notice; (2) the parties could jointly move for the Court to make additional findings and/or send out pre-notice and hold a hearing; or (3) the parties could use a third party administrator. ROA.1478-79. Cenikor rejected all of these proposals. ROA.1488.

The privacy statute and regulations upon which Cenikor relies state that drug treatment records may be released "if authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor." 42 U.S.C. § 290dd-2(b)(2)(C). Good cause exists if "(1) [o]ther ways of obtaining the information are not available or would not be effective; and (2) [t]he public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services." 42 C.F.R. § 2.64(d) (1987). These requirements are satisfied - the district court's certification order constitutes an "appropriate order," and the district court found good cause existed for the disclosure of names and other identifying information because "privacy objections were outweighed by an interest in redressing potential violations of substantive federal law." ROA.1469.

Cenikor also complains that the district court was required to give the potential class members notice and an opportunity to respond before ordering Cenikor to issue FLSA notice. Pet., 25. But a hearing is unnecessary because Cenikor will issue the notice and none of the class members' information will be disclosed unless they elect to join the suit. And Plaintiffs previously offered to jointly move for the district court to make additional findings and/or send out pre-notice and hold a hearing - Cenikor refused this offer. ROA.1478-1479.

15

Cenikor complains the district court did not expressly state in its order that other ways of obtaining the information are unavailable. Not true. The district court specifically made this finding. ROA.1470. Cenikor's other privacy arguments likewise lack merit. An unreported, out-of-circuit district court opinion regarding a DOL subpoena, *In re Employment Records of John Does Employed By Sharpe Holding, Inc.*, No. 417MC238-RLW, 2017 WL 6547738 (E.D. Mo. Dec. 20, 2017), does not warrant *en banc* review. And other courts have ordered disclosure of records containing substance abuse treatment information when faced with similar privacy objections.[8]

Neither the panel's opinion nor the district court certification ruling are contrary to existing caselaw and *en banc* review is not warranted.

Respectfully submitted,

/s/ Josh Borsellino
Josh Borsellino
TX Bar No. 24045532
**Borsellino, P.C.**
Office Address:
1020 Macon St., Suite 15
Fort Worth, Texas 76102
Mailing Address:

---

[8] *See, e.g., In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig., MDL No. 2445,* No. 13-MD-2445, Civ. A. No. 16-5073 (E.D. Pa. Dec. 3, 2021)*; see also Heredia v. Tate,* No. 3:19-cv-00338-jdp (W.D. Wisc., Dec. 22, 2020); *Doe v. Meachum,* 126 F.R.D. 444, 450 (D. Conn. 1989); *Ginest v. Board of County Commissioners of Carbon County,* 306 F. Supp. 2d 1158 (D. Wy. 2004).

16

3267 Bee Cave Rd., Ste. 107, Box # 201
Austin, TX 78746
Telephone: (817) 908-9861
Facsimile: (817) 394-2412
Email:        josh@dfwcounsel.com

Charles J. Stiegler
LA Bar No. 33456
Stiegler Law Firm
318 Harrison Ave., Ste. 104
New Orleans, LA 70214
Tel: (504) 267-0777
Fax: (504) 513-3084
Charles@StieglerLawFirm.com

Josh Sanford
Tex. Bar No. 24077858
SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Parkway, Suite 510
Little Rock, Arkansas 72211
Telephone: (800) 615-4946
Facsimile: (888) 787-2040
Tex. Bar No. 24077858
josh@sanfordlawfirm.com

James R. Bullman
Bar Roll No. 35064 –T.A.
Blackwell & Bullman, LLC
8322 One Calais Ave.,
Baton Rouge, LA 70809
Telephone: 225-769-2462
Facsimile: 225-769-2463
Email: james@blackwell-bullman.com

**ATTORNEYS FOR APPELLEES**

## CERTIFICATE OF COMPLIANCE

This Answer complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) because it contains 3,828 words, excluding the parts exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 pt. Times New Roman.

/s/ Josh Borsellino
Josh Borsellino

## CERTIFICATE OF SERVICE

I certify that on October 12, 2023, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. All counsel of record will be served by the appellate CM/ECF system, or alternatively, will be served via electronic mail.

/s/ Josh Borsellino
Josh Borsellino